## JUDGE BUCHWALD08 CIV 5841

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| METROKANE, INC., | |
| Plaintiff, | Civil Action No. _____ |
| v. | ECF CASE |
| HOUDINI, INC., | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant. | |

**JUN 27 2008**
U.S.D.C. S.D.N.Y.
U.S.C. **CASHIERS**

### NATURE OF THE ACTION

1.      Pursuant to Section 21(b) of the Lanham Act, 15 U.S.C. Section 1071(b), Plaintiff Metrokane, Inc. ("Metrokane") seeks review and reversal of the final decision of the Trademark Trial and Appeal Board (TTAB) of the United States Patent and Trademark Office (PTO), dated May 1, 2008, canceling Registration No. 2687530 for Metrokane's mark "HOUDINI" (the "Decision").

### THE PARTIES

2.      Plaintiff Metrokane is a New York corporation with its principal place of business at 150 East 58th Street, New York, New York 10155.  Metrokane is a leading manufacturer of lever-pull corkscrews and other bar accessories, and sells these products under its registered trademark RABBIT® and its trademark HOUDINI, which had been registered with the PTO since February 11, 2003, until its recent cancellation by TTAB.

3.      Defendant Houdini, Inc. ("Defendant") is a California corporation with a principal place of business at 4225 North Palm Street, Fullerton, California.  Defendant designs gift baskets for wholesaler customers (such as Costco and Sam's Club) pursuant to the customers' specifications

and for sale in the customers' warehouse type stores. The gift baskets contain assortments of name

brand items, none of which are manufactured by Defendant or individually branded as "Houdini."

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 15 U.S.C. § 1071(b) (appeal of

TTAB final decisions).

5.      This District is a proper venue pursuant to 28 U.S.C. 1391(b)(1) and (b)(2) in that a

substantial portion of the events giving rise to the claim occurred in this District, and Defendant

does business in and therefore is deemed to reside in this District, 28 U.S.C. 1391(c). Moreover,

Defendant voluntarily registered with the State of New York, Department of State, as a foreign

corporation in furtherance of its business activities within this State and District.

## FACTUAL ALLEGATIONS

6.      Metrokane filed an application to register the HOUDINI trademark on August 29,

2001, under 15 U.S.C. § 1051(b), based on an intent to use the mark in connection with

"corkscrews" in International Class 21.

7.      Metrokane's application was approved by the PTO Trademark Examining Attorney

and published for opposition on December 18, 2001. No oppositions were filed against the

application.

8.      The PTO granted Metrokane's application and issued Registration No. 2687530 (the

"'530 Registration") to Metrokane on February 11, 2003, based on first use on January 13, 2002,

and first use in commerce on April 16, 2002.

9.      Metrokane has earned substantial revenues from the sales of HOUDINI corkscrews

and related barware and wine accessory products through large retailers including Target, Kohls,

Linens 'N Things, and wine and beverage chain stores. Metrokane's sales of HOUDINI branded

barware products have increased considerably every year since its introduction.

10.     Metrokane has dedicated significant resources to advertising the HOUDINI branded products in mass-circulation print publications such as *Ladies Home Journal, Good Housekeeping* and *Redbook*. In 2003, Metrokane undertook a substantial advertising campaign on cable television, and has significantly enlarged that campaign every year since. Metrokane's growing advertising campaigns were met with a corresponding substantial rise in revenues from sales of the HOUDINI corkscrew and related barware products.

11.     On or about June 21, 2005, Defendant filed applications with the PTO to register the mark "Houdini", as used in connection with "gift baskets and gift packages containing food, beverages and/or household items, namely, corkscrews, coasters, wine glasses, mugs, dishes, cutting boards, cheese spreaders, bath brushes and bath sponges" (Application Serial No. 78655512), and "gift baskets and gift packages consisting primarily of wine." (Application Serial No. 78655517).

12.     Defendant's applications were rejected by the PTO Trademark Examining Attorney on the grounds that its claimed "Houdini" marks were likely to cause confusion with Metrokane's pre-existing '530 Registration.

13.     On or about July 13, 2005 – more than three years after Metrokane had commenced using the HOUDINI mark in commerce in connection with its corkscrews and related products – Defendant filed with the TTAB a Petition to Cancel Metrokane's '530 Registration, claiming prior use of the "Houdini" mark in connection with its gift basket design services. The Petition was assigned Cancellation No. 92044725.

14.     On May 1, 2008, TTAB issued its Decision, attached hereto as Exhibit A, granting Defendant's petition for cancellation of the '530 Registration.

3

## FIRST CLAIM FOR RELIEF

### (Reversal of TTAB Decision, 15 U.S.C. § 1071(b))

15.    Plaintiff Metrokane seeks *de novo* review of the TTAB Decision, pursuant to 15 U.S.C. § 1071(b).  The Decision was incorrect and should be reversed for the following reasons, among others:

a.    TTAB incorrectly rejected Metrokane's laches defense, finding that Defendant did not unreasonably delay asserting its rights against Metrokane, where it (1) incorrectly calculated the extent of Defendant's delay in enforcing its alleged senior rights to the mark by using the date of the '530 Registration rather than the date of the first use of Metrokane's HOUDINI mark; and (2) failed to consider the prejudice that Metrokane suffers as a result of that unreasonable delay, including the loss of good will that would result from the discontinuation of its use of the HOUDINI mark, following the expenditure of considerable sums on advertising and marketing and creation of goodwill in they eyes of the purchasing public for its reputable barware products.

b.    TTAB incorrectly accepted Defendant's unsubstantiated allegations of use of the "Houdini" mark prior to the date that Metrokane filed its intent to use trademark application for HOUDINI, i.e., August 29, 2001.

c.    TTAB incorrectly found a likelihood of confusion, where (1) Defendant's wholesale customers are sophisticated purchasers of Defendant's gift baskets, consult with Defendant's sales representatives in designing gift baskets for sale in their stores and are therefore unlikely to be confused by the source of Metrokane's HOUDINI corkscrew; (2) there is no evidence to suggest that retail customers purchasing Defendant's gift baskets in the stores of Defendant's wholesale customers would associate those baskets with Houdini, Inc., rather than with the name brand items contained in the baskets, or with the store in which they purchased them; (3) TTAB's

4

finding that Defendant's mark was "strong" was improperly based only on its similarity to Metrokane's HOUDINI mark, and did not include an analysis of the consumer public's familiarity with Defendant's mark; (4) there is no evidence of actual customer confusion between Defendant's gift basket services and Metrokane's HOUDINI corkscrews; (5) Defendant's gift baskets are sold online under the trademark "Wine Country Gift Baskets", *www.winecountrygiftbaskets.com* – not under the name "Houdini"; (6) the factual record did not support TTAB's finding that "corkscrews are a significant component of the [Defendant's] gift baskets"; and (7) the factual record lacks any proof that Defendant branded any of the products in the gift basket – such as corkscrews, wine accessories, or even wine – as opposed to merely putting a "Packed by Houdini" label on the underside of the gift basket itself.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Metrokane respectfully requests that this Court:

(a)    Reverse the TTAB Decision;

(b)    Restore the '530 Registration for Metrokane's HOUDINI mark;

(c)    Permanently enjoin and restrain Defendant from using the HOUDINI mark on or in connection with corkscrews or other barware products;

(d)    Declare Defendant's application to register the "Houdini" mark, as used in connection with corkscrews, U.S. Application Serial No. 78-655,517, to be abandoned in part; and

(e)    Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Metrokane demands a trial by jury for all claims triable by a jury.

5

Dated: June 27, 2008

Respectfully submitted,

RIKER DANZIG SCHERER HYLAND
  & PERRETTI LLP
Attorneys for Plaintiff
Metrokane, Inc.


By _____
    ROBERT J. SCHOENBERG (RS-8777)

Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 451-8604
Email: rschoenberg@riker.com

6

A

> **THIS OPINION IS NOT A**
> **PRECEDENT OF**
> **THE T.T.A.B.**

Mailed:  May 1, 2008

### UNITED STATES PATENT AND TRADEMARK OFFICE

———

### Trademark Trial and Appeal Board

———

Houdini, Inc.
v.
Metrokane, Inc.

———

Cancellation No. 92044725

———

Edward R. Schwartz of Christie, Parker & Hale, LLP for
Houdini, Inc.

Lee A. Goldberg and Nathaniel B. Buchek of Pearl Cohen Zedek
Latzer, LLP for Metrokane, Inc.

———

Before Seeherman, Cataldo and Ritchie de Larena,
Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

Houdini, Inc. ("petitioner") has petitioned to cancel

Registration No. 2687530 for the mark HOUDINI, owned by

Metrokane, Inc. ("respondent").[1]  The registration issued on

February 11, 2003 on the Principal Register.  The goods are

identified therein as "corkscrews," in International Class

21.

---

[1] Application Serial No. 78081594, which matured into the
registration at issue, was filed on August 29, 2001.

Cancellation No. 92044725

In its amended petition for cancellation, petitioner asserts that since prior to respondent's first use of its mark, petitioner has continuously used in commerce the mark HOUDINI in connection with gift baskets containing a variety of products, including corkscrews.  Petitioner further asserts that it is the owner of two trademark applications for the mark HOUDINI, respectively for:  "gift baskets and gift packages containing food, beverages and/or household items, namely, corkscrews, coasters, wine glasses, mugs, dishes, cutting boards, cheese spreaders, bath brushes and bath sponges;" and "gift baskets and gift packages consisting primarily of wine."[2]  Petitioner asserts in addition that its applications have been refused registration by the Trademark Examining Operation under Section 2(d) of the Trademark Act on the basis that petitioner's marks are likely to cause confusion with the mark in respondent's Registration No. 2687530.  Petitioner alleges that by virtue of its use of the mark HOUDINI it has built up valuable goodwill therein which would be jeopardized by the continued registration of respondent's HOUDINI mark.  Petitioner further alleges that "as stated by the Trademark Office in refusing Petitioner's '517 Application and '512 Application," (amended notice of

---

[2] Application Serial Nos. 78655512 and 78655517 were filed on June 21, 2005.

Cancellation No. 92044725

opposition, p. 2) respondent's mark so resembles petitioner's previously used mark as to be likely, when applied to the parties' respective goods, to cause confusion or to cause mistake or to deceive.

Respondent's amended answer consists of a general denial of the allegations in the petition for cancellation. In addition, respondent asserts the affirmative defense of laches.

## The Record

The record in this case consists of the pleadings and the file of the involved registration.  In addition, during its assigned testimony period, petitioner took the testimony deposition, with accompanying exhibits, of the following individuals:  its President and founder, Timothy J. Dean; its Senior Sales Manager, Joe Weschler; its Chief Financial Officer, Daniel J. Maguire; and Stacy-Ann Goodwin, a paralegal with counsel for petitioner.  In addition, petitioner submitted a notice of reliance upon the file histories of its asserted applications; the file history of application Serial No. 78552461, owned by respondent; certain of petitioner's written discovery requests to respondent; and respondent's responses thereto. During its assigned testimony period, respondent took the testimony deposition of its Chief Financial and Operations Officer, Joel Grossman; and its Marketing Director, Robert

Cancellation No. 92044725

Larimer.  In addition, respondent filed a notice of reliance
pursuant to Trademark Rule 2.122(e) upon certain of its
written discovery requests to petitioner and petitioner's
responses thereto.  Respondent also relies upon a copy of
the declaration of Daniel M. Maguire which was filed in
support of petitioner's motion for summary judgment.
However, copies of papers filed in Board proceedings are not
"official records" that may be introduced by notice of
reliance.  *See, for example, Weyerhaeuser Co. v. Katz*, 24
USPQ2d 1230, 1232 (TTAB 1992).  *See also generally* TBMP
§704.07 (2d ed. rev. 2004) and the authorities cited
therein.  Furthermore, petitioner did not treat this
evidence as being of record.  Accordingly, this exhibit is
not properly of record and will be given no further
consideration.[3]

Petitioner and respondent filed main briefs on the
case, and petitioner filed a reply brief.

The parties have designated substantial portions of the
record, as well as portions of their briefs on the case, as
"confidential."  While we will attempt to avoid divulging
truly confidential material in our opinion and will refer to
it only in general fashion, we will not be hampered in our

---

[3] We hasten to add that even if such exhibit were of record, it
would not change the result in this case.  Evidence substantially
similar to that contained therein was submitted by petitioner
through testimony and exhibits.

4

discussion by the parties' overly broad designation of
material as confidential.  We note in that regard that by
designating as confidential unduly expansive portions of the
record and briefs, the parties risk disclosure of certain of
those materials in this order.  We note in addition that it
is the policy of this tribunal that proceedings be public,
and parties to Board proceedings may not subvert that policy
by overly broad designations of materials submitted therein
as confidential.  Inasmuch as respondent's brief in
particular contains excessive designations of confidential
materials, the parties are hereby **ordered** to submit, within
thirty days from the mailing date of this decision, redacted
copies of their briefs in which only truly confidential
materials are so designated.

### Findings of Fact

Petitioner has been in the business of making gift
baskets since 1984.[4]  Petitioner designs, promotes and
delivers gift baskets to wholesale and retail customers.
Petitioner creates various themed baskets, including wine
themed gift baskets, that may contain gourmet food, cheese
plates, wine, wine accessories, wine glasses, wine chillers,
cutting boards and/or corkscrews.[5]  Petitioner markets such
baskets under the trademark HOUDINI, as well as other
trademarks including HOUDINI NORTHWEST BASKET and HOUDINI

---

[4] Dean Testimony, p. 4-5.

WALL BASKET. Petitioner initially sold its gift baskets to liquor and wine stores, and has expanded its customer base to include wineries as well as wholesale clubs and retailers, including Pace Wholesale (now Sam's Club), Costco, Cost Plus, Target, Wal-Mart, Bed, Bath & Beyond, and B-J's.[6] Petitioner's wholesale customers then resell the baskets to the general public.[7]

Petitioner markets and promotes its gift baskets at the National Association of Specialty Food Retailers trade show and over the Internet at houdiniinc.com.[8] Petitioner is the second largest gift basket company in the United States, with annual sales of approximately one million baskets generating considerable income.[9]

Respondent has been in the business of providing beverage, bar-ware accessory and house wear products since 1983.[10] In 1997, respondent developed a "lever pull" corkscrew which it first sold in 2000 under the trademark RABBIT.[11] After the success of its RABBIT corkscrew, and in order to compete with cheaper imitation products, respondent introduced the less expensive HOUDINI corkscrew in April

---

[5] Dean Testimony, p. 9; Maguire Testimony, p. 11.
[6] *Id.* at 6-7.
[7] Maguire Testimony, p. 12.
[8] Dean Testimony, p. 17-17, 64; Maguire Testimony, p. 22, Exhibit 24.
[9] Dean Testimony, p. 21-22.
[10] Larimer Testimony, p. 7.
[11] *Id.*; Grossman Testimony, p. 6.

Cancellation No. 92044725

2002.[12]  Since that time, revenue from sales of respondent's
corkscrews under the HOUDINI mark has been considerable, and
respondent has experienced substantial increases in sales
each year since the introduction thereof.  Respondent
markets its HOUDINI corkscrews primarily through large
national retailers and wine and liquor chains, including
Target, Bed, Bath & Beyond, and Beverages & More.[13]

### Petitioner's Standing

In view of the refusal to register petitioner's pleaded
applications, copies of which were made of record, based
upon a likelihood of confusion with respondent's involved
registration, petitioner's standing has been established.
*See Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d
1024, 213 USPQ 185 (CCPA 1982); *Cerveceria Modelo S.A. de
C.V. v. R.B. Marco & Sons Inc.*, 55 USPQ2d 1298 (TTAB 2000);
and *Hartwell Co. v. Shane*, 17 USPQ2d 1569 (TTAB 1990).  We
note in addition that respondent does not dispute
petitioner's standing to bring this proceeding.

### Laches

Prior to our consideration of petitioner's pleaded
claim of priority and likelihood of confusion, we must first
address respondent's affirmative defense of laches to
determine whether petitioner's claim is barred thereby.

---

[12] *Id*. at 12, 14; *Id*. at 8.
[13] Petitioner's Notice of Reliance, Exhibit 5.

Cancellation No. 92044725

It is settled that laches generally is available against a Section 2(d) claim of likelihood of confusion.[14] *See National Cable Television Association Inc. v. American Cinema Editors Inc.*, 973 F.2d 1572, 19 USPQ2d 1424 (Fed. Cir. 1991), in which the defense of laches was considered in connection with a cancellation proceeding brought under Section 2(d); and *Christian Broadcasting Network Inc. v. ABS-CBN International*, 84 USPQ2d 1560 (TTAB 2007) (because defense of laches found to apply, petition to cancel brought under Section 2(d) dismissed).

In order to prevail on the affirmative defense of laches, a defendant must establish that there was undue or unreasonable delay by the plaintiff in asserting its rights, and prejudice to the defendant resulting from the delay. *See Bridgestone/Firestone Research Inc. v. Automobile Club de l'Ouest de la France*, 245 F.3d 1359, 58 USPQ2d 1460, 1462 (Fed. Cir. 2001). "Mere delay in asserting a trademark-related right does not necessarily result in changed conditions sufficient to support the defense of laches. There must also have been some detriment due to the delay." *Id.*, 58 USPQ2d at 1463. With regard to delay, the focus is

---

[14]    The only exception is when confusion is inevitable, because any injury to the defendant caused by the plaintiff's delay is outweighed by the public's interest in preventing confusion. *See Turner v. Hops Grill & Bar Inc.*, 52 USPQ2d 1310 (TTAB 1999). That is not the situation here, since there are differences in the goods.

on reasonableness and the Board must consider any excuse offered for the delay. *See A. C. Aukerman Co. v. R. L. Chaides Construction Co.*, 960 F.2d 1020, 22 USPQ2d 1321, 1329 (Fed. Cir. 1992). With regard to prejudice, there must also have been some detriment due to the delay such as evidentiary prejudice or economic prejudice, and respondent must show that its prejudice resulted from the delay. *Id.* The mere passage of time does not constitute laches. *See Aquion Partners L.P. v. Envirogard Products, Ltd.*, 43 USPQ2d 1371, 1373, citing *Advanced Cardiovascular Systems v. SciMed Life Systems*, 988 F.2d 1157, 26 USPQ2d 1038, 1041 (Fed. Cir. 1993).

Respondent asserts that petitioner had notice of its challenged registration since its date of issuance; and that, although the registration for its HOUDINI mark issued on February 11, 2003, petitioner delayed filing its petition to cancel until July 13, 2005. Respondent has submitted evidence that in 2003 it sold considerable numbers of corkscrews under the HOUDINI mark and expended considerable sums of money on advertising therefor.[15] Respondent has further shown that the number of corkscrews sold under the HOUDINI mark essentially doubled in 2004 and again in 2005, and the advertising expenditures therefor during that time period were considerable. Respondent argues that "during

---

[15] Grossman testimony, Confidential Exhibit 26.

the period of Petitioner's delay, Metrokane has successfully established the HOUDINI brand in connection with corkscrews and it is currently one of the most successful premium wine accessory brands in the United States."[16]  Respondent further argues that cancellation of its registration "would destroy this significant investment and the goodwill that Metrokane has established in the trademark."[17]  Finally, respondent argues that petitioner is silent as to the reason for its delay in bringing this cancellation action.

In its reply brief, petitioner argues that respondent has failed either to assert or introduce any evidence that it "expended monies on advertising its HOUDINI corkscrews because Houdini delayed in seeking cancellation of Metrokane's registration."[18]  Petitioner further argues that respondent's advertising expenditures "between the date of issue of its registration and before commencement of this proceeding could not have been in reliance on Houdini's delay in seeking cancellation since Metrokane states that it was not even aware of Houdini, Inc. during this time period."[19]

In this case, we find that petitioner had constructive notice of respondent's challenged registration as of the

---

[16] Respondent's brief, p. 43.
[17] Id.
[18] Reply brief, p. 10.
[19] Id.

Cancellation No. 92044725

February 11, 2003 date of issuance thereof. *See Teledyne Technologies, Inc. v. Western Skyways, Inc.*, 78 USPQ2d 1203 (TTAB 2006), *aff'd, Teledyne Technologies, Inc. v. Western Skyways, Inc.*, 208 Fed. Appx. 886, unpublished Nos. 2006-1336, 2006-1367 (Fed. Cir. December 6, 2006). There is nothing in the record to indicate that petitioner had actual notice of the registration or respondent's use of its HOUDINI mark prior to this date. Nor does respondent so allege. Thus, the length of petitioner's delay in filing the petition to cancel is just under two and one half years.

Because petitioner offers no explanation for its delay in bringing the instant cancellation action, we are precluded from finding that petitioner has a reasonable excuse therefor. Nonetheless, we do not find that the delay of two and one half years is of such length per se as to compel a finding that petitioner unduly delayed in seeking cancellation of respondent's trademark registration. *Cf. Bridgeston/Firestone, supra*, at 1362 (the passing of twenty-seven years after registration, combined with the absence of a reasonable excuse for petitioner's inaction held to constitute undue delay). In that regard, the fact that the Trademark Act provides for cancellation of a registration under Section 2(d) until such registration is five years old suggests that petitioner's delay of two and one half years,

i.e., half of the time provided by statute therefor, is not per se unreasonable.

With regard to prejudice, respondent asserts economic detriment and has submitted evidence regarding the increases in its sales and advertising expenditures during the period of the inaction.[20]   However, respondent has not demonstrated that it expended such effort and funds promoting and advertising its goods under the HOUDINI mark as a result of petitioner's inaction.  In other words, respondent has neither asserted nor introduced evidence that it changed its position to its detriment regarding advertising and promoting its HOUDINI corkscrews in reliance upon petitioner's delay.  *See Fishking Processors, Inc. v. Fisher King Seafoods, Ltd.*, 83 USPQ2d 1762, 1766 (TTAB 2007).  *Cf. Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 23 USPQ2d 1860, 1863 (Fed. Cir. 1992) (a nexus must be shown between the patentee's delay in filing suit and the expenditures; the alleged infringer must change his position "because of and as a result of the delay.")   Indeed, respondent's own marketing director has testified that respondent had not heard of petitioner prior to institution of this cancellation action.  As such, while respondent's evidence suggests that it has enjoyed a substantial measure

---

[20] Respondent does not assert any evidentiary prejudice due the passing of time, such as loss of documents, or the unavailability or fading memory of witnesses, etc.

Cancellation No. 92044725

of success with the corkscrews marketed under its HOUDINI
mark and that it has incurred corresponding expenses in
advertising the same, such evidence does not support its
claim of detriment resulting from petitioner's relatively
brief delay in bringing this proceeding.  As a result,
respondent has failed to demonstrate a nexus between
petitioner's delay in filing its petition for cancellation
and respondent's financial expenditures to advertise and
market its corkscrews under its HOUDINI mark.

Accordingly, we find that respondent's affirmative
defense fails for lack of proof.

We turn now to petitioner's pleaded grounds.

### Priority of Use

To establish priority on a likelihood of confusion
claim brought under Trademark Act §2(d), a party must prove
that, vis-à-vis the other party, it owns "a mark or trade
name previously used in the United States … and not
abandoned…."  Trademark Act Section 2, 15 U.S.C. §1052.  A
party may establish its own prior proprietary rights in a
mark through ownership of a prior registration, actual use
or through use analogous to trademark use, such as use in
advertising brochures, trade publications, catalogues,
newspaper advertisements and Internet websites which create
a public awareness of the designation as a trademark
identifying the party as a source.  *See* Trademark Act §§2(d)

13

Cancellation No. 92044725

and 45, 15 U.S.C. §§1052(d) and 1127.  *See also T.A.B.*
*Systems v. PacTel Teletrac*, 77 F.3d 1372, 37 USPQ2d 1879
(Fed. Cir. 1996), vacating *Pactel Teletrac v. T.A.B.*
*Systems*, 32 USPQ2d 1668 (TTAB 1994).

It is well settled that in the absence of any evidence
of earlier use, the earliest date upon which a respondent
may rely is the filing date of its underlying application.
*See* Trademark Act Section 7(c), 15 U.S.C. §1057(c).  *See*
*also Larami Corp. v. Talk to Me Programs, Inc.*, 36 USPQ2d
1840 (TTAB 1995).  In this case, and as noted above, the
application that matured into the registration at issue
herein was accorded a filing date of August 29, 2001.
Inasmuch as respondent has neither alleged nor introduced
any evidence to support a finding that it made earlier use
of its mark, we find that August 29, 2001 is the earliest
date upon which respondent is entitled to rely for purposes
of priority.

Inasmuch as petitioner has not pleaded ownership of any
registered trademark, and further because its pleaded
applications were filed subsequent to the filing date of the
application that matured into respondent's registration,
petitioner must rely on its common law use of HOUDINI, as
well as HOUDINI NORTHWEST BASKET and HOUDINI WALL BASKET, as
trademarks to prove priority.  In order for a plaintiff to
prevail on a claim of likelihood of confusion based on its

Cancellation No. 92044725

ownership of common law rights in a mark, the mark must be
distinctive, inherently or otherwise, and plaintiff must
show priority of use. *See Otto Roth & Co. v. Universal
Foods Corp.*, 640 F.2d 1317, 209 USPQ 40 (CCPA 1981).
Respondent has not questioned the distinctiveness of
petitioner's HOUDINI, HOUDINI NORTHWEST BASKET, or HOUDINI
WALL BASKET marks; nor are there any other circumstances in
the case which would have put petitioner on notice of this
defense. As such, and particularly because respondent seeks
to register HOUDINI as a mark without benefit of Section
2(f), we find that petitioner's marks are inherently
distinctive. *See The Chicago Corp. v. North American
Chicago Corp.*, 20 USPQ2d 1715 (TTAB 1991). *See also Wetseal
Inc. v. FD Management Inc.*, 82 USPQ2d 1629 (TTAB 2007).
Thus, in order to establish priority, petitioner must show
that it made common law use of its HOUDINI, HOUDINI
NORHTWEST BASKET and/or HOUDINI WALL BASKET mark prior to
August 29, 2001. In a case involving common law rights,
"the decision as to priority is made in accordance with the
preponderance of the evidence." *Hydro-Dynamics Inc. v.
George Putnam & Company Inc.*, 811 F.2d 1470, 1 USPQ2d 1772,
1773 (Fed. Cir. 1987).

   In support of its claim of priority, petitioner's
president and founder, Timothy J. Dean, testified that since
1984 petitioner has used HOUDINI on and in connection with

Cancellation No. 92044725

gift baskets that include, *inter alia*, wine, cheese,

crackers, cutting boards, gourmet foods, chocolates, wine

glasses, wine accessories, corkscrews and cheese plates.[21]

Mr. Dean further testified that petitioner's use of HOUDINI

on gift baskets includes the following:

> In 1984, it would have been a sales sticker on the
> back saying 'Prepared by Houdini and Company.[22]
>
> We produce sales sheets and present gift baskets
> to our company and they're all under the Houdini
> mark.  All our gifts are labeled Houdini.[23]
>
> Q. Do the baskets – are the baskets identified in
> any way as coming from Houdini?
> A. At the retail level?
> Q. Yes.
> A. All of them have marks of Houdini on them.
> When they're, say, in a run of gift baskets at the
> store level, they'll be signs above them saying
> Houdini gift packs and describing what's in them
> with a price on them.
> Q. Have you ever been to a store where you saw
> the sign that said Houdini?
> A. Sure.  Yes.
> Q. Give an example.
> A. I do store tours all the time, go into Sam's or
> Costco.  You walk down the – they call them runs
> where they have the price above the items, they'll
> say Houdini.  They describe who the vendor is and
> then they describe the item.  And then they have
> the price of the item on the signage.[24]

In addition, Mr. Dean testified that the labels bearing

petitioner's HOUDINI mark were "placed in a prominent

position, usually somewhere on the basket where the

---

[21] Dean Testimony, p. 4-10.
[22] *Id.* at 6.
[23] *Id.* at 10.
[24] *Id.*

Cancellation No. 92044725

customers could see it."[25]  Petitioner has introduced as an
exhibit to Mr. Dean's testimony printed copies of labels
placed on petitioner's gift baskets, identifying the type of
basket, e.g., "Fetzer Two-Bottle Wine Basket," Holiday Box
of Treats," Tuscan Basket," etc.[26]  Two of the submitted
labels contain the word "Houdini" as part of their title,
namely, "HOUDINI NORTHWEST BASKET" and "HOUDINI WALL
BASKET."[27]  Mr. Dean testified that the submitted labels
were in use in 2000.[28]

Based upon the testimony of petitioner's president, and
the documentary evidence in the form of labels from 2000
affixed to petitioner's gift baskets, we find that
petitioner has proven by a preponderance of the evidence
that it made use of the HOUDINI mark, as well as the HOUDINI
NORTHWEST BASKET and HOUDINI WALL BASKET marks, on or in
connection with such gift baskets prior to respondent's
constructive date of first use.[29]  Accordingly we find that
petitioner has proven its claim of priority.

---

[25] Dean Testimony, p. 22-23.
[26] Dean Testimony, p. 22-24, Exhibit 16.
[27] *Id.*
[28] *Id.* at 23.  Petitioner introduced additional examples of use of
HOUDINI as a mark, including labels for use with various baskets,
all of which prominently display HOUDINI along with the name and
contents thereof, and the notation "Packed by Houdini Inc.
Fullerton CA 92835; and screen shots from its Internet website
displaying HOUDINI in connection with various gift baskets.
However, these examples of use of the HOUDINI mark were
subsequent to respondent's constructive first use date, and as
such they do not support petitioner's claim of priority.
[29] Inasmuch as petitioner has proven prior use of HOUDINI and
HOUDINI-formative marks as trademarks, we need not consider

Respondent argues that petitioner's testimony does not support petitioner's claim of priority because it is self-serving, and fails to demonstrate that petitioner uses HOUDINI as a mark in connection with any goods, but rather "establishes that Petitioner provides gift basket design services…."[30]  However, "[o]ral testimony, if sufficiently probative, is normally satisfactory to establish priority of use in a trademark proceeding."  *Powermatics, Inc. v. Globe Roofing Products Co.*, 341 F.2d 127, 144 USPQ 430, 432 (CCPA 1965).  *See also National Bank Book Co. v. Leather Crafted Products, Inc.*, 218 USPQ 826, 828 (TTAB 1993) (oral testimony may be sufficient to prove the first use of a party's mark when it is based on personal knowledge, it is clear and convincing, and it has not been contradicted); *Liqwacon Corp. v. Browning-Ferris Industries, Inc.*, 203 USPQ 305, 316 (TTAB 1979) (oral testimony may be sufficient to establish both prior use and continuous use when the testimony is proffered by a witness with knowledge of the facts and the testimony is clear, convincing, consistent, and sufficiently circumstantial to convince the Board of its probative value); *GAF Corp. v. Anatox Analytical Services, Inc.*, 192 USPQ 576, 577 (TTAB 1976) (oral testimony may establish prior use when the testimony is clear, consistent,

---

whether petitioner has made prior use of HOUDINI as a trade name or prior use that is analogous to trademark use.
[30] Brief, p. 21.

convincing, and uncontradicted). While the only documentary
evidence supporting the testimony regarding petitioner's
prior use of HOUDINI as a trademark is a set of labels from
2000, the testimony of its president was clear, convincing,
consistent and sufficiently circumstantial to persuade us of
its probative value.

### Likelihood of Confusion

Our likelihood of confusion determination under Section
2(d) is based on an analysis of all of the facts in evidence
that are relevant to the factors bearing on the likelihood
of confusion issue. *See In re E. I. du Pont de Nemours &
Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also Palm
Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee
En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In
re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65
USPQ2d 1201 (Fed. Cir. 2003); and *In re Dixie Restaurants
Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997). We
will concentrate our discussion of the issue of likelihood
of confusion on that mark of petitioner's which is closest
to the mark in the challenged registration, namely,
petitioner's HOUDINI mark.

### The Marks

We turn to the first *du Pont* factor, i.e., whether
respondent's and petitioner's marks are similar or
dissimilar when viewed in their entireties in terms of

Cancellation No. 92044725

appearance, sound, connotation and overall commercial
impression. *See Palm Bay Imports, Inc. v. Veuve Clicquot,
supra.* The test, under the first *du Pont* factor, is not
whether the marks can be distinguished when subjected to a
side-by-side comparison, but rather whether the marks are
sufficiently similar in terms of their overall commercial
impression that confusion as to the source of the goods
and/or services offered under the respective marks is likely
to result.

As noted, petitioner has proven by credible testimony
that it has made prior common law use of HOUDINI as a
trademark. Such mark is identical to respondent's HOUDINI
mark in every respect.

Furthermore, there is no evidence of record of third-
party use of HOUDINI for related, or even unrelated, goods
or services. Nor is there evidence that HOUDINI is
suggestive of petitioner's goods. As such, we find no
evidence that HOUDINI is a weak mark or that it should be
afforded only a narrow scope of protection. On the
contrary, HOUDINI appears to be a strong, if not arbitrary,
mark as applied to petitioner's goods.

In short, we find that respondent's mark is identical
to petitioner's HOUDINI mark. This *du Pont* factor heavily
favors petitioner.

Cancellation No. 92044725

The Goods

With respect to the goods, it is well-established that
the goods or services of the parties need not be similar or
competitive, or even offered through the same channels of
trade, to support a holding of likelihood of confusion.  It
is sufficient that the respective goods or services of the
parties are related in some manner, and/or that the
conditions and activities surrounding the marketing of the
goods or services are such that they would or could be
encountered by the same persons under circumstances that
could, because of the similarity of the marks, give rise to
the mistaken belief that they originate from the same
source.  *See Hilson Research, Inc. v. Society for Human
Resource Management*, 27 USPQ2d 1423 (TTAB 1993); and *In re
International Telephone & Telegraph Corp.*, 197 USPQ 910, 911
(TTAB 1978).  The issue, of course, is not whether
purchasers would confuse the goods or services, but rather
whether there is a likelihood of confusion as to the source
thereof.  *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984).

As identified in its registration, respondent's goods
are corkscrews.  Petitioner has introduced testimony and
evidence that it uses the identical HOUDINI mark on gift
baskets, including wine-themed gift baskets that contain
corkscrews, as well as wine glasses, cheese boards, wine
coolers and, of course, wine.  Thus, respondent's goods are

Cancellation No. 92044725

included among the type of goods that petitioner places in
its wine-themed gift baskets.  Petitioner has introduced
further evidence in the form of photographs of its gift
baskets[31] showing that the contents thereof are arranged in
such a manner as to be clearly visible to prospective
purchasers.  As such, a purchaser of petitioner's wine-
themed gift baskets sold under its HOUDINI mark would see
the corkscrews contained therein.  Because corkscrews are a
significant component of the gift baskets, the relatedness
of corkscrews and gift baskets containing corkscrews is
obvious.  Consumers of gift baskets, upon encountering
respondent's corkscrews sold under the identical mark, would
be likely to mistakenly assume a common source or
sponsorship.

We note that respondent's corkscrews are "lever pull"
corkscrews and that petitioner's gift baskets contain
smaller sommelier-type corkscrews.  However, in making our
determination regarding the relatedness of the parties'
goods, we must look to the goods as identified in the
involved registration.  *See Octocom Systems, Inc. v. Houston
Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787
(Fed. Cir. 1990).  Inasmuch as respondent's goods are
identified as corkscrews without any limitation as to type,
they must be presumed to include all types of corkscrews,

---

[31] Dean Testimony, Exhibit 20.

including the sommelier corkscrews contained in petitioner's gift baskets.

In view of the related nature of the parties' goods, this *du Pont* factor also favors petitioner.

Channels of Trade

Respondent argues that its goods move in different channels of trade from those in which petitioner's gift baskets are encountered. However, the testimony and evidence adduced at trial demonstrates that petitioner markets its gift baskets to liquor and wine stores, wineries and wholesale clubs and retail stores, including Sam's Club, Costco, Cost Plus, Target, Wal-Mart, Bed, Bath & Beyond, and B-J's.[32] Respondent markets its corkscrews primarily through large national retail and wine and liquor chains, including Target, Bed, Bath & Beyond, and Beverages & More.[33] Thus, from the testimony and evidence at trial, it is clear that not only do the parties market their goods through channels of trade that are identical in part, i.e., wine and liquor stores and national chains, but that they in fact market their goods to some of the same stores, including Target and Bed, Bath & Beyond.

As a result, this *du Pont* factor also favors petitioner.

---

[32] *Id.* at 6-7.
[33] Petitioner's Notice of Reliance, Exhibit 5.

Cancellation No. 92044725

### Conditions of Sale

The next du *Pont* factor discussed by the parties is that of the conditions of sale.  Respondent asserts that petitioner's gift baskets are marketed to wholesalers who resell its baskets to retail consumers; and that such wholesalers are careful and sophisticated users.  However, the ultimate purchasers of petitioner's gift baskets, as resold by wholesalers, retail stores, and wine and liquor stores, are the general public, who may not be particularly discriminating purchasers.  Indeed, for the general consumer, gift baskets containing corkscrews and corkscrews per se might well be the subject of impulse purchases made without a great deal of deliberation.  In addition, even if some degree of care were exhibited in making the purchasing decision, petitioner's HOUDINI mark is identical to that of respondent so that even careful purchasers are likely to assume that the marks identify goods emanating from a single source.  As a result, we find this du *Pont* factor also to favor petitioner.

### Actual Confusion

The final du *Pont* factor discussed by the parties is the lack of instances of actual confusion despite over five years of use by the parties of their respective marks.  Respondent asserts that the absence of actual confusion suggests no likelihood of confusion.  However, it is not

Cancellation No. 92044725

necessary to show actual confusion in order to establish
likelihood of confusion. *See Weiss Associates Inc. v. HRL
Associates Inc.* 902 F.2d 1546, 223 USPQ 1025 (Fed. Cir.
1990). Thus, while evidence of actual confusion strongly
supports a finding of likelihood of confusion, the absence
thereof does not require a finding of no likelihood of
confusion. *See In re Majestic Distilling Company, Inc.*, 315
F.3d 1311, 65 USPQ2d 1201, 1205 (Fed. Cir. 2003) ("The lack
of evidence of actual confusion carries little weight.")

Accordingly, this *du Pont* factor must be considered to
be neutral or to favor respondent only slightly.

### Conclusion

We have carefully considered all of the testimony and
evidence pertaining to priority of use and the relevant *du
Pont* factors, as well as all of the parties' arguments with
respect thereto, including any evidence and arguments not
specifically discussed in this opinion.

We conclude that petitioner has established priority of
use and that consumers familiar with petitioner's goods
under its common law HOUDINI mark would be likely to
believe, upon encountering respondent's HOUDINI mark for its
corkscrews, that the parties' goods originate with or are
associated with or sponsored by the same entity. In making
our determination, we have balanced the relevant *du Pont*
factors. The factors of the identity of the marks and the

**Cancellation No. 92044725**

relatedness of the goods weigh strongly in petitioner's favor.

DECISION:  The petition to cancel is granted, and Registration No. 2687530 will be cancelled in due course.