UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| METROKANE, INC., | Case No. 08-CV-5841 (NRB) |
| Plaintiff, | ECF Case |
| vs. |  |
| HOUDINI, INC., |  |
| Defendants. |  |

### DECLARATION OF EDWARD R. SCHWARTZ IN SUPPORT OF HOUDINI, INC.'S MOTION TO STAY OR TRANSFER

Edward R. Schwartz states:

1.      I represent Houdini, Inc. ("Houdini") in trademark litigation matters.  I make this declaration based on personal knowledge and could competently testify to the facts stated herein if called upon to do so.

2.      In July 2005, Houdini commenced a proceeding before the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office to cancel a registration for the trademark HOUDINI for corkscrews which had been issued to Metrokane, Inc. ("Metrokane").  The ultimate issue in that proceeding was whether Metrokane was entitled to a registration for HOUDINI, not whether either party was entitled to continue to use the mark.

3.      The main fact issues in the cancellation proceeding before the TTAB were which party had priority of use of the HOUDINI trademark and whether there was a likelihood of confusion caused by Metrokane's use of the mark vis-à-vis Houdini's use of the mark.  Metrokane also asserted that Houdini's petition for cancellation was barred by laches.  In a decision dated May 1, 2008, the TTAB ruled in Houdini's favor on all issues, granted Houdini's petition for cancellation and ordered cancellation of Metrokane's registration for HOUDINI.

4.      On May 9, 2008, Houdini commenced a civil action against Metrokane in the United States District Court for the Central District of California, Civil Action No. CV08-03076

PA (FMOx) asserting claims for trademark infringement and unfair competition based on Metrokane's use of the HOUDINI trademark. Houdini seeks an award of damages as well as injunctive relief. The complaint was served on Metrokane on May 13, 2008. A true copy of the Complaint is attached hereto as Exhibit A.

5.     After requesting and receiving Houdini's stipulation to a couple of extensions of time to respond to the Complaint, Metrokane filed an Answer to the Complaint in the California action on June 25, 2008, in which it largely denied Houdini's claim and asserted affirmative defenses of priority of use, likelihood of confusion and laches. Metrokane did not assert any counterclaims. A true copy of the Answer is attached hereto as Exhibit B.

6.     The main fact issues in the California action are which party had priority of use of the HOUDINI trademark, whether there is a likelihood of confusion caused by Metrokane's use of the mark vis-à-vis Houdini's use of the mark, and whether Houdini's claims are barred by laches.

7.     On July 7, 2008, Houdini filed a Motion for a Preliminary Injunction in the California case. The case has been fully briefed and the Court has taken the Motion under submission. True copies of Houdini's memorandum in support of the Motion, Metrokane's opposition to the Motion, and Houdini's reply brief are attached hereto as Exhibits C, D, and E, respectively.

Sworn to under the penalty of perjury this 31st day of July, 2008 in Pasadena, California.


                          _____s/ Edward R. Schwartz_____
                          Edward R. Schwartz


ERS PAS806421.1-*-07/31/08 10:12 AM

# EXHIBIT A

CONFORMING COPY

1  **EDWARD R. SCHWARTZ, CA Bar No. 147553**
   e-mail:  ers@cph.com
2  **CHRISTIE, PARKER & HALE, LLP**
   **350 West Colorado Boulevard, Suite 500**
3  **Post Office Box 7068**
   **Pasadena, California 91109-7068**
4  **Telephone: (626) 795-9900**
   **Facsimile: (626) 577-8800**
5
   Attorneys for Plaintiff,
6  Houdini, Inc.

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  HOUDINI, INC.,                        Case No. **CV08 - 03076**

12            Plaintiff,                  **COMPLAINT FOR:**

13      vs.                               1. **INFRINGEMENT OF AN**
                                             **UNREGISTERED**
14  METROKANE CORPORATION,                   **TRADEMARK; and**
                                          2. **COMMON LAW UNFAIR**
15            Defendant.                     **COMPETITION**

16

17

18  I.    **JURISDICTION.**

19        1.    This is an action for infringement of an unregistered trademark

20  pursuant to 15 U.S.C. § 1125(a) and unfair competition under the common law of

21  California.    This Court has supplemental jurisdiction over Plaintiff's state law

22  claim under 28 U.S.C. § 1267(a).

23        2.    Venue is proper under 28 U.S.C. § 1391(b) because Defendant

24  Metrokane Corporation resides in this judicial district.

25  II.   **PARTIES.**

26        3.    Plaintiff Houdini, Inc. is a corporation organized and existing under

27  the laws of the State of California having a principal place of business at 4225 N.

28  Palm Street, Fullerton, California 92835.

CHRISTIE, PARKER & HALE, LLP

-1-

EXHIBIT _A_
PAGE _3_

1    4. On information and belief, Defendant Metrokane Corporation is a

2 corporation organized and existing under the laws of New York having a

3 principal place of business at 150 East 58th Street, 17th Floor, New York, New

4 York 10155.

5 **III.** **FACTUAL BACKGROUND.**

6    5. Plaintiff has been in the business of making gift baskets since 1984.

7 Plaintiff designs, promotes and delivers gift baskets to wholesale and retail

8 customers.

9    6. Plaintiff creates various themed baskets, including wine themed gift

10 baskets, that may contain gourmet food, cheese, plates, wine, wine accessories,

11 wine glasses, wine chillers, cutting boards and/or corkscrews.  Plaintiff markets

12 such baskets under the trademark HOUDINI, as well as other trademarks

13 including HOUDINI NORTHWEST BASKET and HOUDINI WALL BASKET.

14    6. Plaintiff initially sold its gift baskets to liquor and wine stores, and

15 has expanded its customer base to include wineries as well as wholesale clubs and

16 retailers, including Pace Wholesale (now Sam's Club), Costco, Cost Plus, Target,

17 Wal-Mart, Bed, Bath & Beyond, and B-J's.  Plaintiff's wholesale customers then

18 resell the baskets to the general public.

19    7. Plaintiff markets and promotes its gift baskets at the National

20 Association of Specialty Food Retailers trade show and over the internet at

21 houdiniinc.com.

22    8. Plaintiff is presently the second largest gift basket company in the

23 United States, with annual sales of approximately one million baskets generating

24 considerable income.

25    9. Plaintiff has been careful, skillful and diligent in the conduct of its

26 business and has maintained uniform standards of high quality in its goods.  As a

27 result of these efforts, Plaintiff's HOUDINI trademark has acquired a favorable

28 reputation representing a goodwill which inures to Plaintiff's benefit.

CHRISTIE, PARKER & HALE, LLP

EXHIBIT A
PAGE 4

1        10.   On information and belief, Defendant has been in the business of

2    providing beverage, bar-ware accessory and house wear products since 1983.

3        11.   In April 2002, Defendant introduced a corkscrew under the

4    trademark HOUDINI. Defendant markets its HOUDINI corkscrews primarily

5    through large national retailers and wine and liquor chains, including Target, Bed,

6    Bath & Beyond, and Beverages & More.

7        12.   Defendant has recently expanded its use of the HOUDINI trademark

8    to wine accessories including coolers for wine, cooling buckets for wine, wine

9    bottle openers, wine drinking glasses, wine vacuum pumps, cutters for wine bottle

10   foil and wine racks.

11       13.   Defendant is the owner of United States Trademark Registration No.

12   2,687,530 for HOUDINI for corkscrews ("the '530 Registration") which issued on

13   February 11, 2003.

14       14.   On September 28, 2004, Plaintiff, by its attorneys, sent a letter to

15   Defendant demanding that Defendant cease its use of the HOUDINI mark.

16   Correspondence between counsel continued throughout February 2005 without

17   resolution of the dispute.

18       15.   On July 13, 2005, Plaintiff filed a petition with the United States

19   Patent and Trademark Office ("PTO") to cancel the '530 Registration. In a

20   decision dated May 1, 2008, the PTO granted Plaintiff's petition finding that

21   Plaintiff had established priority of use of the HOUDINI mark and that there was

22   a likelihood of confusion between the parties' respective uses of the HOUDINI

23   mark. A true copy of the decision is attached hereto as Exhibit A.

24       16.   On information and belief, Defendant continues to use the HOUDINI

25   mark in the manner described in paragraphs 10 and 12, above. Defendant's use of

26   the mark HOUDINI has been and continues to be without the consent or

27   authorization of Plaintiff.

28   **FIRST CLAIM FOR RELIEF**

CHRISTIE, PARKER & HALE, LLP

EXHIBIT _A_
PAGE _6_

**(Infringement of An Unregistered Trademark)**

17.    Plaintiff repeats and realleges paragraphs 1 through 16 hereinabove.

18.    Plaintiff's trademark HOUDINI is inherently distinctive and further has acquired distinctiveness as a result of its use by Plaintiff.

19.    Defendant's use of Plaintiff's unregistered trademark is likely to cause public confusion that Defendant's goods are sponsored or authorized by or affiliated with Plaintiff.

20.    The above-described acts of Defendant constitute infringement of an unregistered trademark and a false designation of origin in violation of 15 U.S.C. § 1125(a) in that Defendant has used in connection with its goods a trademark which is likely to cause confusion or mistake or to deceive that Defendant's goods are authorized or sponsored by, or are affiliated with Plaintiff and has caused such goods to enter into commerce which may be regulated by Congress.

21.    Plaintiff is being damaged and is likely to be damaged in the future by Defendant's infringement by reason of the likelihood that prospective purchasers and purchasers of Defendant's goods will be confused as to the source, sponsorship, or affiliation of Defendant's goods.

22.    Defendant has unfairly profited from the actions alleged herein and will continue to be unjustly enriched unless and until such conduct is enjoined.

23.    By reason of Defendant's acts alleged herein, Plaintiff has and will continue to suffer damage to its business goodwill.

24.    By reason of Defendant's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm unless and until Defendant's conduct is enjoined.

25.    On information and belief, Defendant's acts alleged herein were willful and taken in conscious disregard of Plaintiff's rights.

EXHIBIT _A_
PAGE _6_

CHRISTIE, PARKER & HALE, LLP

## SECOND CLAIM FOR RELIEF

### (For Common Law Trademark Infringement)

26.　　Plaintiff repeats and realleges paragraphs 1 through 25 hereinabove.

27.　　The above-described conduct of Defendant constitutes unfair competition under the common law of the State of California.

28.　　As a result of such actions, Plaintiff has been damaged in an amount to be proven at trial.

29.　　Because Defendant's conduct has been and continues to be intentional, willful, and in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages against Defendant.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.　　That this Court declare that the trademark HOUDINI is valid and is owned by Plaintiff;

2.　　That this Court declare that Defendant has infringed Plaintiff's trademark rights and has committed acts of unfair competition by its unauthorized use of the trademark HOUDINI;

3.　　That Defendant, its agents, employees, and representatives and all persons acting in concert or in privity with any of them be permanently enjoined from using the trademark HOUDINI alone or in combination with other words, symbols, or designs, or any mark confusingly similar thereto, in any advertising, web site, or for any other purpose;

4.　　That Plaintiff be awarded the greater of its damages or Defendant's profits resulting from its infringement of Plaintiff's trademark rights;

5.　　That damages resulting from Defendant's willful trademark infringement be trebled in accordance with the provisions of 15 U.S.C. § 1117;

6.　　That Plaintiff be awarded punitive damages under the common law of California;

EXHIBIT A
PAGE 7

CHRISTIE, PARKER & HALE, LLP

1   7.  That Plaintiff be awarded its attorney's fees, expenses and costs

2 incurred in connection with this case; and

3   8.  That Plaintiff be awarded such other relief as may be appropriate.

4

5            Respectfully submitted,

6            CHRISTIE, PARKER & HALE, LLP

7

8 DATED:  May 8, 2008     By

9            Edward R. Schwartz

             Attorneys for Plaintiff,

10           Houdini, Inc.

11

12

13 BLV PAS793743.1-*-05/8/08 3:41 PM

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A  -6-
PAGE 6

# EXHIBIT A

EXHIBIT A
PAGE

```
THIS OPINION IS NOT A
PRECEDENT OF
THE T.T.A.B.
```

Mailed:  May 1, 2008

## UNITED STATES PATENT AND TRADEMARK OFFICE

## Trademark Trial and Appeal Board

Houdini, Inc.
v.
Metrokane, Inc.

Cancellation No. 92044725

Edward R. Schwartz of Christie, Parker & Hale, LLP for Houdini, Inc.

Lee A. Goldberg and Nathaniel B. Buchek of Pearl Cohen Zedek Latzer, LLP for Metrokane, Inc.

Before Seeherman, Cataldo and Ritchie de Larena, Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

Houdini, Inc. ("petitioner") has petitioned to cancel Registration No. 2687530 for the mark HOUDINI, owned by Metrokane, Inc. ("respondent").[1]  The registration issued on February 11, 2003 on the Principal Register.  The goods are identified therein as "corkscrews," in International Class 21.

---

[1] Application Serial No. 78081594, which matured into the registration at issue, was filed on August 29, 2001.

Cancellation No. 92044725

In its amended petition for cancellation, petitioner asserts that since prior to respondent's first use of its mark, petitioner has continuously used in commerce the mark HOUDINI in connection with gift baskets containing a variety of products, including corkscrews.  Petitioner further asserts that it is the owner of two trademark applications for the mark HOUDINI, respectively for:  "gift baskets and gift packages containing food, beverages and/or household items, namely, corkscrews, coasters, wine glasses, mugs, dishes, cutting boards, cheese spreaders, bath brushes and bath sponges;" and "gift baskets and gift packages consisting primarily of wine."[2]  Petitioner asserts in addition that its applications have been refused registration by the Trademark Examining Operation under Section 2(d) of the Trademark Act on the basis that petitioner's marks are likely to cause confusion with the mark in respondent's Registration No. 2687530.  Petitioner alleges that by virtue of its use of the mark HOUDINI it has built up valuable goodwill therein which would be jeopardized by the continued registration of respondent's HOUDINI mark.  Petitioner further alleges that "as stated by the Trademark Office in refusing Petitioner's '517 Application and '512 Application," (amended notice of

---

[2] Application Serial Nos. 78655512 and 78655517 were filed on June 21, 2005.

EXHIBIT A
Page 8

EXHIBIT A
PAGE 11

Cancellation No. 92044725

opposition, p. 2) respondent's mark so resembles petitioner's previously used mark as to be likely, when applied to the parties' respective goods, to cause confusion or to cause mistake or to deceive.

Respondent's amended answer consists of a general denial of the allegations in the petition for cancellation. In addition, respondent asserts the affirmative defense of laches.

### The Record

The record in this case consists of the pleadings and the file of the involved registration.  In addition, during its assigned testimony period, petitioner took the testimony deposition, with accompanying exhibits, of the following individuals:  its President and founder, Timothy J. Dean; its Senior Sales Manager, Joe Weschler; its Chief Financial Officer, Daniel J. Maguire; and Stacy-Ann Goodwin, a paralegal with counsel for petitioner.  In addition, petitioner submitted a notice of reliance upon the file histories of its asserted applications; the file history of application Serial No. 78552461, owned by respondent; certain of petitioner's written discovery requests to respondent; and respondent's responses thereto. During its assigned testimony period, respondent took the testimony deposition of its Chief Financial and Operations Officer, Joel Grossman; and its Marketing Director, Robert

3

Cancellation No. 92044725

Larimer.  In addition, respondent filed a notice of reliance pursuant to Trademark Rule 2.122(e) upon certain of its written discovery requests to petitioner and petitioner's responses thereto.  Respondent also relies upon a copy of the declaration of Daniel M. Maguire which was filed in support of petitioner's motion for summary judgment. However, copies of papers filed in Board proceedings are not "official records" that may be introduced by notice of reliance.  *See, for example, Weyerhaeuser Co. v. Katz*, 24 USPQ2d 1230, 1232 (TTAB 1992).  *See also generally* TBMP §704.07 (2d ed. rev. 2004) and the authorities cited therein.  Furthermore, petitioner did not treat this evidence as being of record.  Accordingly, this exhibit is not properly of record and will be given no further consideration.[3]

Petitioner and respondent filed main briefs on the case, and petitioner filed a reply brief.

The parties have designated substantial portions of the record, as well as portions of their briefs on the case, as "confidential."  While we will attempt to avoid divulging truly confidential material in our opinion and will refer to it only in general fashion, we will not be hampered in our

---

[3] We hasten to add that even if such exhibit were of record, it would not change the result in this case.  Evidence substantially similar to that contained therein was submitted by petitioner through testimony and exhibits.

EXHIBIT A
Page 10

EXHIBIT A
PAGE 13

Cancellation No. 92044725

discussion by the parties' overly broad designation of
material as confidential.  We note in that regard that by
designating as confidential unduly expansive portions of the
record and briefs, the parties risk disclosure of certain of
those materials in this order.  We note in addition that it
is the policy of this tribunal that proceedings be public,
and parties to Board proceedings may not subvert that policy
by overly broad designations of materials submitted therein
as confidential.  Inasmuch as respondent's brief in
particular contains excessive designations of confidential
materials, the parties are hereby **ordered** to submit, within
thirty days from the mailing date of this decision, redacted
copies of their briefs in which only truly confidential
materials are so designated.

### Findings of Fact

Petitioner has been in the business of making gift
baskets since 1984.[4]  Petitioner designs, promotes and
delivers gift baskets to wholesale and retail customers.
Petitioner creates various themed baskets, including wine
themed gift baskets, that may contain gourmet food, cheese
plates, wine, wine accessories, wine glasses, wine chillers,
cutting boards and/or corkscrews.[5]  Petitioner markets such
baskets under the trademark HOUDINI, as well as other
trademarks including HOUDINI NORTHWEST BASKET and HOUDINI

---

[4] Dean Testimony, p. 4-5.

5

Cancellation No. 92044725

WALL BASKET. Petitioner initially sold its gift baskets to liquor and wine stores, and has expanded its customer base to include wineries as well as wholesale clubs and retailers, including Pace Wholesale (now Sam's Club), Costco, Cost Plus, Target, Wal-Mart, Bed, Bath & Beyond, and B-J's.[6] Petitioner's wholesale customers then resell the baskets to the general public.[7]

Petitioner markets and promotes its gift baskets at the National Association of Specialty Food Retailers trade show and over the Internet at houdiniinc.com.[8] Petitioner is the second largest gift basket company in the United States, with annual sales of approximately one million baskets generating considerable income.[9]

Respondent has been in the business of providing beverage, bar-ware accessory and house wear products since 1983.[10] In 1997, respondent developed a "lever pull" corkscrew which it first sold in 2000 under the trademark RABBIT.[11] After the success of its RABBIT corkscrew, and in order to compete with cheaper imitation products, respondent introduced the less expensive HOUDINI corkscrew in April

---

[5] Dean Testimony, p. 9; Maguire Testimony, p. 11.
[6] *Id.* at 6-7.
[7] Maguire Testimony, p. 12.
[8] Dean Testimony, p. 17-17, 64; Maguire Testimony, p. 22, Exhibit 24.
[9] Dean Testimony, p. 21-22.
[10] Larimer Testimony, p. 7.
[11] *Id.*; Grossman Testimony, p. 6.

EXHIBIT A
Page 12

EXHIBIT A
PAGE 15

Cancellation No. 92044725

2002.[12]  Since that time, revenue from sales of respondent's corkscrews under the HOUDINI mark has been considerable, and respondent has experienced substantial increases in sales each year since the introduction thereof.  Respondent markets its HOUDINI corkscrews primarily through large national retailers and wine and liquor chains, including Target, Bed, Bath & Beyond, and Beverages & More.[13]

### Petitioner's Standing

In view of the refusal to register petitioner's pleaded applications, copies of which were made of record, based upon a likelihood of confusion with respondent's involved registration, petitioner's standing has been established. *See Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982); *Cerveceria Modelo S.A. de C.V. v. R.B. Marco & Sons Inc.*, 55 USPQ2d 1298 (TTAB 2000); and *Hartwell Co. v. Shane*, 17 USPQ2d 1569 (TTAB 1990).  We note in addition that respondent does not dispute petitioner's standing to bring this proceeding.

### Laches

Prior to our consideration of petitioner's pleaded claim of priority and likelihood of confusion, we must first address respondent's affirmative defense of laches to determine whether petitioner's claim is barred thereby.

---

[12] *Id.* at 12, 14; *Id.* at 8.
[13] Petitioner's Notice of Reliance, Exhibit 5.

EXHIBIT A
Page 13

EXHIBIT *A*
PAGE *16*

Cancellation No. 92044725

It is settled that laches generally is available against a Section 2(d) claim of likelihood of confusion.[14] *See National Cable Television Association Inc. v. American Cinema Editors Inc.*, 973 F.2d 1572, 19 USPQ2d 1424 (Fed. Cir. 1991), in which the defense of laches was considered in connection with a cancellation proceeding brought under Section 2(d); and *Christian Broadcasting Network Inc. v. ABS-CBN International*, 84 USPQ2d 1560 (TTAB 2007) (because defense of laches found to apply, petition to cancel brought under Section 2(d) dismissed).

In order to prevail on the affirmative defense of laches, a defendant must establish that there was undue or unreasonable delay by the plaintiff in asserting its rights, and prejudice to the defendant resulting from the delay. *See Bridgestone/Firestone Research Inc. v. Automobile Club de l'Ouest de la France*, 245 F.3d 1359, 58 USPQ2d 1460, 1462 (Fed. Cir. 2001). "Mere delay in asserting a trademark-related right does not necessarily result in changed conditions sufficient to support the defense of laches. There must also have been some detriment due to the delay." *Id.*, 58 USPQ2d at 1463. With regard to delay, the focus is

---

[14]    The only exception is when confusion is inevitable, because any injury to the defendant caused by the plaintiff's delay is outweighed by the public's interest in preventing confusion. *See Turner v. Hops Grill & Bar Inc.*, 52 USPQ2d 1310 (TTAB 1999). That is not the situation here, since there are differences in the goods.

8

Cancellation No. 92044725

on reasonableness and the Board must consider any excuse offered for the delay. *See A. C. Aukerman Co. v. R. L. Chaides Construction Co.*, 960 F.2d 1020, 22 USPQ2d 1321, 1329 (Fed. Cir. 1992). With regard to prejudice, there must also have been some detriment due to the delay such as evidentiary prejudice or economic prejudice, and respondent must show that its prejudice resulted from the delay. *Id.* The mere passage of time does not constitute laches. *See Aquion Partners L.P. v. Envirogard Products, Ltd.*, 43 USPQ2d 1371, 1373, citing *Advanced Cardiovascular Systems v. SciMed Life Systems*, 988 F.2d 1157, 26 USPQ2d 1038, 1041 (Fed. Cir. 1993).

Respondent asserts that petitioner had notice of its challenged registration since its date of issuance; and that, although the registration for its HOUDINI mark issued on February 11, 2003, petitioner delayed filing its petition to cancel until July 13, 2005. Respondent has submitted evidence that in 2003 it sold considerable numbers of corkscrews under the HOUDINI mark and expended considerable sums of money on advertising therefor.[15] Respondent has further shown that the number of corkscrews sold under the HOUDINI mark essentially doubled in 2004 and again in 2005, and the advertising expenditures therefor during that time period were considerable. Respondent argues that "during

---

[15] Grossman testimony, Confidential Exhibit 26.

EXHIBIT *4*
PAGE *18*

EXHIBIT A
Page 15

Cancellation No. 92044725

the period of Petitioner's delay, Metrokane has successfully established the HOUDINI brand in connection with corkscrews and it is currently one of the most successful premium wine accessory brands in the United States."[16]  Respondent further argues that cancellation of its registration "would destroy this significant investment and the goodwill that Metrokane has established in the trademark."[17]  Finally, respondent argues that petitioner is silent as to the reason for its delay in bringing this cancellation action.

In its reply brief, petitioner argues that respondent has failed either to assert or introduce any evidence that it "expended monies on advertising its HOUDINI corkscrews because Houdini delayed in seeking cancellation of Metrokane's registration."[18]  Petitioner further argues that respondent's advertising expenditures "between the date of issue of its registration and before commencement of this proceeding could not have been in reliance on Houdini's delay in seeking cancellation since Metrokane states that it was not even aware of Houdini, Inc. during this time period."[19]

In this case, we find that petitioner had constructive notice of respondent's challenged registration as of the

---

[16] Respondent's brief, p. 43.
[17] *Id.*
[18] Reply brief, p. 10.
[19] *Id.*

Cancellation No. 92044725

February 11, 2003 date of issuance thereof. *See Teledyne Technologies, Inc. v. Western Skyways, Inc.*, 78 USPQ2d 1203 (TTAB 2006), *aff'd, Teledyne Technologies, Inc. v. Western Skyways, Inc.*, 208 Fed. Appx. 886, unpublished Nos. 2006-1336, 2006-1367 (Fed. Cir. December 6, 2006). There is nothing in the record to indicate that petitioner had actual notice of the registration or respondent's use of its HOUDINI mark prior to this date. Nor does respondent so allege. Thus, the length of petitioner's delay in filing the petition to cancel is just under two and one half years.

Because petitioner offers no explanation for its delay in bringing the instant cancellation action, we are precluded from finding that petitioner has a reasonable excuse therefor. Nonetheless, we do not find that the delay of two and one half years is of such length per se as to compel a finding that petitioner unduly delayed in seeking cancellation of respondent's trademark registration. *Cf. Bridgeston/Firestone, supra*, at 1362 (the passing of twenty-seven years after registration, combined with the absence of a reasonable excuse for petitioner's inaction held to constitute undue delay). In that regard, the fact that the Trademark Act provides for cancellation of a registration under Section 2(d) until such registration is five years old suggests that petitioner's delay of two and one half years,

11

Cancellation No. 92044725

i.e., half of the time provided by statute therefor, is not per se unreasonable.

With regard to prejudice, respondent asserts economic detriment and has submitted evidence regarding the increases in its sales and advertising expenditures during the period of the inaction.[20]  However, respondent has not demonstrated that it expended such effort and funds promoting and advertising its goods under the HOUDINI mark as a result of petitioner's inaction.  In other words, respondent has neither asserted nor introduced evidence that it changed its position to its detriment regarding advertising and promoting its HOUDINI corkscrews in reliance upon petitioner's delay.  *See Fishking Processors, Inc. v. Fisher King Seafoods, Ltd.*, 83 USPQ2d 1762, 1766 (TTAB 2007).  *Cf. Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 23 USPQ2d 1860, 1863 (Fed. Cir. 1992) (a nexus must be shown between the patentee's delay in filing suit and the expenditures; the alleged infringer must change his position "because of and as a result of the delay.")  Indeed, respondent's own marketing director has testified that respondent had not heard of petitioner prior to institution of this cancellation action.  As such, while respondent's evidence suggests that it has enjoyed a substantial measure

---

[20] Respondent does not assert any evidentiary prejudice due the passing of time, such as loss of documents, or the unavailability or fading memory of witnesses, etc.

12

Cancellation No. 92044725

of success with the corkscrews marketed under its HOUDINI mark and that it has incurred corresponding expenses in advertising the same, such evidence does not support its claim of detriment resulting from petitioner's relatively brief delay in bringing this proceeding. As a result, respondent has failed to demonstrate a nexus between petitioner's delay in filing its petition for cancellation and respondent's financial expenditures to advertise and market its corkscrews under its HOUDINI mark.

Accordingly, we find that respondent's affirmative defense fails for lack of proof.

We turn now to petitioner's pleaded grounds.

### Priority of Use

To establish priority on a likelihood of confusion claim brought under Trademark Act §2(d), a party must prove that, vis-à-vis the other party, it owns "a mark or trade name previously used in the United States … and not abandoned…." Trademark Act Section 2, 15 U.S.C. §1052. A party may establish its own prior proprietary rights in a mark through ownership of a prior registration, actual use or through use analogous to trademark use, such as use in advertising brochures, trade publications, catalogues, newspaper advertisements and Internet websites which create a public awareness of the designation as a trademark identifying the party as a source. *See* Trademark Act §§2(d)

13



Cancellation No. 92044725

and 45, 15 U.S.C. §§1052(d) and 1127. *See also T.A.B. Systems v. PacTel Teletrac*, 77 F.3d 1372, 37 USPQ2d 1879 (Fed. Cir. 1996), vacating *Pactel Teletrac v. T.A.B. Systems*, 32 USPQ2d 1668 (TTAB 1994).

It is well settled that in the absence of any evidence of earlier use, the earliest date upon which a respondent may rely is the filing date of its underlying application. *See* Trademark Act Section 7(c), 15 U.S.C. §1057(c). *See also Larami Corp. v. Talk to Me Programs, Inc.*, 36 USPQ2d 1840 (TTAB 1995). In this case, and as noted above, the application that matured into the registration at issue herein was accorded a filing date of August 29, 2001. Inasmuch as respondent has neither alleged nor introduced any evidence to support a finding that it made earlier use of its mark, we find that August 29, 2001 is the earliest date upon which respondent is entitled to rely for purposes of priority.

Inasmuch as petitioner has not pleaded ownership of any registered trademark, and further because its pleaded applications were filed subsequent to the filing date of the application that matured into respondent's registration, petitioner must rely on its common law use of HOUDINI, as well as HOUDINI NORTHWEST BASKET and HOUDINI WALL BASKET, as trademarks to prove priority. In order for a plaintiff to prevail on a claim of likelihood of confusion based on its

14



EXHIBIT A
PAGE 23

EXHIBIT A
Page 20

Cancellation No. 92044725

ownership of common law rights in a mark, the mark must be distinctive, inherently or otherwise, and plaintiff must show priority of use. *See Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40 (CCPA 1981). Respondent has not questioned the distinctiveness of petitioner's HOUDINI, HOUDINI NORTHWEST BASKET, or HOUDINI WALL BASKET marks; nor are there any other circumstances in the case which would have put petitioner on notice of this defense.  As such, and particularly because respondent seeks to register HOUDINI as a mark without benefit of Section 2(f), we find that petitioner's marks are inherently distinctive. *See The Chicago Corp. v. North American Chicago Corp.*, 20 USPQ2d 1715 (TTAB 1991).  *See also Wetseal Inc. v. FD Management Inc.,* 82 USPQ2d 1629 (TTAB 2007). Thus, in order to establish priority, petitioner must show that it made common law use of its HOUDINI, HOUDINI NORHTWEST BASKET and/or HOUDINI WALL BASKET mark prior to August 29, 2001.  In a case involving common law rights, "the decision as to priority is made in accordance with the preponderance of the evidence." *Hydro-Dynamics Inc. v. George Putnam & Company Inc.,* 811 F.2d 1470, 1 USPQ2d 1772, 1773 (Fed. Cir. 1987).

In support of its claim of priority, petitioner's president and founder, Timothy J. Dean, testified that since 1984 petitioner has used HOUDINI on and in connection with

EXHIBIT A
PAGE 24

EXHIBIT A
Page 21

Cancellation No. 92044725

gift baskets that include, *inter alia*, wine, cheese,

crackers, cutting boards, gourmet foods, chocolates, wine

glasses, wine accessories, corkscrews and cheese plates.[21]

Mr. Dean further testified that petitioner's use of HOUDINI

on gift baskets includes the following:

> In 1984, it would have been a sales sticker on the
> back saying 'Prepared by Houdini and Company.[22]
>
> We produce sales sheets and present gift baskets
> to our company and they're all under the Houdini
> mark. All our gifts are labeled Houdini.[23]
>
> Q. Do the baskets – are the baskets identified in
> any way as coming from Houdini?
> A. At the retail level?
> Q. Yes.
> A. All of them have marks of Houdini on them.
> When they're, say, in a run of gift baskets at the
> store level, they'll be signs above them saying
> Houdini gift packs and describing what's in them
> with a price on them.
> Q. Have you ever been to a store where you saw
> the sign that said Houdini?
> A. Sure. Yes.
> Q. Give an example.
> A. I do store tours all the time, go into Sam's or
> Costco. You walk down the – they call them runs
> where they have the price above the items, they'll
> say Houdini. They describe who the vendor is and
> then they describe the item. And then they have
> the price of the item on the signage.[24]

In addition, Mr. Dean testified that the labels bearing

petitioner's HOUDINI mark were "placed in a prominent

position, usually somewhere on the basket where the

---

[21] Dean Testimony, p. 4-10.
[22] *Id.* at 6.
[23] *Id.* at 10.
[24] *Id.*

16

Cancellation No. 92044725

customers could see it."[25]  Petitioner has introduced as an

exhibit to Mr. Dean's testimony printed copies of labels

placed on petitioner's gift baskets, identifying the type of

basket, e.g., "Fetzer Two-Bottle Wine Basket," Holiday Box

of Treats," Tuscan Basket," etc.[26]  Two of the submitted

labels contain the word "Houdini" as part of their title,

namely, "HOUDINI NORTHWEST BASKET" and "HOUDINI WALL

BASKET."[27]  Mr. Dean testified that the submitted labels

were in use in 2000.[28]

Based upon the testimony of petitioner's president, and

the documentary evidence in the form of labels from 2000

affixed to petitioner's gift baskets, we find that

petitioner has proven by a preponderance of the evidence

that it made use of the HOUDINI mark, as well as the HOUDINI

NORTHWEST BASKET and HOUDINI WALL BASKET marks, on or in

connection with such gift baskets prior to respondent's

constructive date of first use.[29]  Accordingly we find that

petitioner has proven its claim of priority.

---

[25] Dean Testimony, p. 22-23.
[26] Dean Testimony, p. 22-24, Exhibit 16.
[27] *Id.*
[28] *Id.* at 23.  Petitioner introduced additional examples of use of
HOUDINI as a mark, including labels for use with various baskets,
all of which prominently display HOUDINI along with the name and
contents thereof, and the notation "Packed by Houdini Inc.
Fullerton CA 92835; and screen shots from its Internet website
displaying HOUDINI in connection with various gift baskets.
However, these examples of use of the HOUDINI mark were
subsequent to respondent's constructive first use date, and as
such they do not support petitioner's claim of priority.
[29] Inasmuch as petitioner has proven prior use of HOUDINI and
HOUDINI-formative marks as trademarks, we need not consider

17

Cancellation No. 92044725

Respondent argues that petitioner's testimony does not support petitioner's claim of priority because it is self-serving, and fails to demonstrate that petitioner uses HOUDINI as a mark in connection with any goods, but rather "establishes that Petitioner provides gift basket design services…."[30]  However, "[o]ral testimony, if sufficiently probative, is normally satisfactory to establish priority of use in a trademark proceeding." *Powermatics, Inc. v. Globe Roofing Products Co.*, 341 F.2d 127, 144 USPQ 430, 432 (CCPA 1965).  *See also National Bank Book Co. v. Leather Crafted Products, Inc.*, 218 USPQ 826, 828 (TTAB 1993) (oral testimony may be sufficient to prove the first use of a party's mark when it is based on personal knowledge, it is clear and convincing, and it has not been contradicted); *Liqwacon Corp. v. Browning-Ferris Industries, Inc.*, 203 USPQ 305, 316 (TTAB 1979) (oral testimony may be sufficient to establish both prior use and continuous use when the testimony is proffered by a witness with knowledge of the facts and the testimony is clear, convincing, consistent, and sufficiently circumstantial to convince the Board of its probative value); *GAF Corp. v. Anatox Analytical Services, Inc.*, 192 USPQ 576, 577 (TTAB 1976) (oral testimony may establish prior use when the testimony is clear, consistent,

---

whether petitioner has made prior use of HOUDINI as a trade name or prior use that is analogous to trademark use.
[30] Brief, p. 21.

18

Cancellation No. 92044725

convincing, and uncontradicted). While the only documentary evidence supporting the testimony regarding petitioner's prior use of HOUDINI as a trademark is a set of labels from 2000, the testimony of its president was clear, convincing, consistent and sufficiently circumstantial to persuade us of its probative value.

### Likelihood of Confusion

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); and *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997). We will concentrate our discussion of the issue of likelihood of confusion on that mark of petitioner's which is closest to the mark in the challenged registration, namely, petitioner's HOUDINI mark.

The Marks

We turn to the first *du Pont* factor, i.e., whether respondent's and petitioner's marks are similar or dissimilar when viewed in their entireties in terms of



EXHIBIT A
PAGE 28

19

**EXHIBIT A**
**Page 25**

Cancellation No. 92044725

appearance, sound, connotation and overall commercial impression. *See Palm Bay Imports, Inc. v. Veuve Clicquot, supra*. The test, under the first *du Pont* factor, is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods and/or services offered under the respective marks is likely to result.

As noted, petitioner has proven by credible testimony that it has made prior common law use of HOUDINI as a trademark. Such mark is identical to respondent's HOUDINI mark in every respect.

Furthermore, there is no evidence of record of third-party use of HOUDINI for related, or even unrelated, goods or services. Nor is there evidence that HOUDINI is suggestive of petitioner's goods. As such, we find no evidence that HOUDINI is a weak mark or that it should be afforded only a narrow scope of protection. On the contrary, HOUDINI appears to be a strong, if not arbitrary, mark as applied to petitioner's goods.

In short, we find that respondent's mark is identical to petitioner's HOUDINI mark. This *du Pont* factor heavily favors petitioner.

EXHIBIT *A*
PAGE *27*

EXHIBIT A
Page 26

Cancellation No. 92044725

The Goods

With respect to the goods, it is well-established that the goods or services of the parties need not be similar or competitive, or even offered through the same channels of trade, to support a holding of likelihood of confusion.  It is sufficient that the respective goods or services of the parties are related in some manner, and/or that the conditions and activities surrounding the marketing of the goods or services are such that they would or could be encountered by the same persons under circumstances that could, because of the similarity of the marks, give rise to the mistaken belief that they originate from the same source.  *See Hilson Research, Inc. v. Society for Human Resource Management*, 27 USPQ2d 1423 (TTAB 1993); and *In re International Telephone & Telegraph Corp.*, 197 USPQ 910, 911 (TTAB 1978).  The issue, of course, is not whether purchasers would confuse the goods or services, but rather whether there is a likelihood of confusion as to the source thereof.  *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984).

As identified in its registration, respondent's goods are corkscrews.  Petitioner has introduced testimony and evidence that it uses the identical HOUDINI mark on gift baskets, including wine-themed gift baskets that contain corkscrews, as well as wine glasses, cheese boards, wine coolers and, of course, wine.  Thus, respondent's goods are



EXHIBIT _A_
PAGE _32_

21

EXHIBIT A
Page 27

Cancellation No. 92044725

included among the type of goods that petitioner places in its wine-themed gift baskets. Petitioner has introduced further evidence in the form of photographs of its gift baskets[31] showing that the contents thereof are arranged in such a manner as to be clearly visible to prospective purchasers. As such, a purchaser of petitioner's wine-themed gift baskets sold under its HOUDINI mark would see the corkscrews contained therein. Because corkscrews are a significant component of the gift baskets, the relatedness of corkscrews and gift baskets containing corkscrews is obvious. Consumers of gift baskets, upon encountering respondent's corkscrews sold under the identical mark, would be likely to mistakenly assume a common source or sponsorship.

We note that respondent's corkscrews are "lever pull" corkscrews and that petitioner's gift baskets contain smaller sommelier-type corkscrews. However, in making our determination regarding the relatedness of the parties' goods, we must look to the goods as identified in the involved registration. *See Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). Inasmuch as respondent's goods are identified as corkscrews without any limitation as to type, they must be presumed to include all types of corkscrews,

---

[31] Dean Testimony, Exhibit 20.

22


EXHIBIT A
PAGE 3

Cancellation No. 92044725

including the sommelier corkscrews contained in petitioner's gift baskets.

In view of the related nature of the parties' goods, this *du Pont* factor also favors petitioner.

<u>Channels of Trade</u>

Respondent argues that its goods move in different channels of trade from those in which petitioner's gift baskets are encountered. However, the testimony and evidence adduced at trial demonstrates that petitioner markets its gift baskets to liquor and wine stores, wineries and wholesale clubs and retail stores, including Sam's Club, Costco, Cost Plus, Target, Wal-Mart, Bed, Bath & Beyond, and B-J's.[32] Respondent markets its corkscrews primarily through large national retail and wine and liquor chains, including Target, Bed, Bath & Beyond, and Beverages & More.[33] Thus, from the testimony and evidence at trial, it is clear that not only do the parties market their goods through channels of trade that are identical in part, i.e., wine and liquor stores and national chains, but that they in fact market their goods to some of the same stores, including Target and Bed, Bath & Beyond.

As a result, this *du Pont* factor also favors petitioner.

_____

[32] *Id.* at 6-7.
[33] Petitioner's Notice of Reliance, Exhibit 5.

23


EXHIBIT A
PAGE 33

EXHIBIT A
Page 29

Cancellation No. 92044725

<u>Conditions of Sale</u>

The next du *Pont* factor discussed by the parties is that of the conditions of sale. Respondent asserts that petitioner's gift baskets are marketed to wholesalers who resell its baskets to retail consumers; and that such wholesalers are careful and sophisticated users. However, the ultimate purchasers of petitioner's gift baskets, as resold by wholesalers, retail stores, and wine and liquor stores, are the general public, who may not be particularly discriminating purchasers. Indeed, for the general consumer, gift baskets containing corkscrews and corkscrews per se might well be the subject of impulse purchases made without a great deal of deliberation. In addition, even if some degree of care were exhibited in making the purchasing decision, petitioner's HOUDINI mark is identical to that of respondent so that even careful purchasers are likely to assume that the marks identify goods emanating from a single source. As a result, we find this du *Pont* factor also to favor petitioner.

<u>Actual Confusion</u>

The final du *Pont* factor discussed by the parties is the lack of instances of actual confusion despite over five years of use by the parties of their respective marks. Respondent asserts that the absence of actual confusion suggests no likelihood of confusion. However, it is not

24


EXHIBIT A
PAGE 33

EXHIBIT A
Page 30

Cancellation No. 92044725

necessary to show actual confusion in order to establish likelihood of confusion. *See Weiss Associates Inc. v. HRL Associates Inc.* 902 F.2d 1546, 223 USPQ 1025 (Fed. Cir. 1990). Thus, while evidence of actual confusion strongly supports a finding of likelihood of confusion, the absence thereof does not require a finding of no likelihood of confusion. *See In re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65 USPQ2d 1201, 1205 (Fed. Cir. 2003) ("The lack of evidence of actual confusion carries little weight.")

Accordingly, this *du Pont* factor must be considered to be neutral or to favor respondent only slightly.

### Conclusion

We have carefully considered all of the testimony and evidence pertaining to priority of use and the relevant *du Pont* factors, as well as all of the parties' arguments with respect thereto, including any evidence and arguments not specifically discussed in this opinion.

We conclude that petitioner has established priority of use and that consumers familiar with petitioner's goods under its common law HOUDINI mark would be likely to believe, upon encountering respondent's HOUDINI mark for its corkscrews, that the parties' goods originate with or are associated with or sponsored by the same entity. In making our determination, we have balanced the relevant *du Pont* factors. The factors of the identity of the marks and the

25

EXHIBIT *A*
PAGE 34

EXHIBIT A
Page 31

Cancellation No. 92044725

relatedness of the goods weigh strongly in petitioner's favor.

DECISION:  The petition to cancel is granted, and Registration No. 2687530 will be cancelled in due course.

EXHIBIT _A_
PAGE _35_

EXHIBIT A
Page 32

# EXHIBIT B

1   DON J. PELTO, Cal. Bar No. 140499
    dpelto@sheppardmullin.com
2   DARREN M. FRANKLIN, Cal. Bar No. 210939
    dfranklin@sheppardmullin.com
3   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
        A Limited Liability Partnership
4       Including Professional Corporations
    333 South Hope Street, 48th Floor
5   Los Angeles, California 90071-1448
    Telephone: 213-620-1780
6   Facsimile: 213-620-1398

7   ROBERT J. SCHOENBERG (pro hac vice)
    rschoenberg@riker.com
8   RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
    One Speedwell Avenue
9   Morristown, New Jersey 07962-1981
    Telephone: 973-451-8511
10  Facsimile: 973-451-8604

11  Attorneys for Defendant
    METROKANE INC.
12

13              UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15

16  HOUDINI, INC.,                  Case No. CV 08-03076 PA (FMOx)

17              Plaintiff,          **ANSWER TO COMPLAINT AND
                                    AFFIRMATIVE DEFENSES;
18      v.                          DEMAND FOR JURY TRIAL**

19  METROKANE CORPORATION,          The Hon. Percy Anderson
                                    Crtrm.:   15
20              Defendant.
                                    [Complaint Filed: May 9, 2008]
21

22
            Defendant Metrokane Inc. ("Metrokane"), a New York corporation
23
    with its principal place of business in New York, New York, by way of Answer to
24
    the Complaint of Plaintiff Houdini, Inc. ("Plaintiff"), says:
25

26

27

28
                    EXHIBIT *B*
                    PAGE 36          -1-        ANSWER AND AFFIRMATIVE DEFENSES;
    W02-EAST:1DAF1\200102863.1                          DEMAND FOR JURY TRIAL

## AS TO THE PRELIMINARY ALLEGATIONS

1.      Metrokane makes no response to the allegations of Paragraph 1, as they state a legal conclusion and not facts.  To the extent that a response is required to said allegations, they are denied.

2.      Metrokane makes no response to the allegations of Paragraph 2, as they state a legal conclusion and not facts.  To the extent that a response is required to said allegations, they are denied except to admit that Metrokane transacts business in this judicial district.

3.      Metrokane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3.

4.      Metrokane admits the allegations of Paragraph 4.

5.      Metrokane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5.

6.      Metrokane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6.

6.      [Duplicate in Complaint].  Metrokane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 [duplicate].

7.      Metrokane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7.

8.      Metrokane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8.

9.      Metrokane denies that Plaintiff has created or retained any goodwill or reputation with respect to corkscrews or other wine accessories, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9.

ANSWER AND AFFIRMATIVE DEFENSES;
DEMAND FOR JURY TRIAL

1        10.    Metrokane admits that it has been in the business of providing

2 various beverage, barware and kitchen products since 1983 and wine accessories

3 since 1996.

4        11.    Metrokane admits that its Houdini brand corkscrew was first

5 introduced into the market in or about 2002, admits that it sells its Houdini brand

6 corkscrew through major national retailers such as Target, Linens 'N Things and

7 Kohl's, and through national wine and liquor chain stores, but denies the remaining

8 allegations of Paragraph 11.

9        12.    Metrokane denies the allegations of Paragraph 12 and states that

10 it has been selling its Houdini brand corkscrew since at least 2002 and has been

11 selling other wine accessories under the Houdini trademark since at least 2003.

12        13.    Metrokane admits the allegations of Paragraph 13.

13        14.    Metrokane admits that it exchanged correspondence with

14 Plaintiff concerning use of the Houdini mark in or around 2004-2005, admits that

15 Plaintiff failed to seek any relief from the district court at that time arising from said

16 allegations of infringement, and admits that the parties co-existed from that time

17 forward with no evidence of actual confusion by consumers in Metrokane's use of

18 the Houdini® mark and Plaintiff's use of its trade name and no evidence that either

19 party sustained any damages as a result thereof.

20        15.    Metrokane admits that a Petition to Cancel U.S. Registration No.

21 2,687,530 was filed on or about July 13, 2005, admits that the Trademark Trial and

22 Appeal Board issued a decision regarding said Petition on or about May 1, 2008 (the

23 "Decision"), admits that the Decision was not properly based upon the law or

24 evidence submitted by the parties and was contrary to existing trademark law, and

25 admits that said Decision is attached to the Complaint as Exhibit A.  However,

26 Metrokane denies the remaining allegations of Paragraph 15 and refers to the

27 Decision for its actual contents and the legal significance thereof.

28

   **EXHIBIT** *B*   -3-   ANSWER AND AFFIRMATIVE DEFENSES;
                   **PAGE** *38*                    DEMAND FOR JURY TRIAL

1      16.      Metrokane repeats and makes a part hereof its responses to the

2 allegations of Paragraphs 10 and 12 of the Complaint.  Additionally, Metrokane

3 denies that it needs either consent or authorization from Plaintiff to use its well-

4 known Houdini trademark in connection with corkscrews, barware and wine

5 accessories.

6              **AS TO THE FIRST CLAIM FOR RELIEF**

7      17.      Metrokane repeats and makes a part hereof its responses to

8 Paragraphs 1-16 of the Complaint.

9      18.      Metrokane denies the allegations of Paragraph 18.

10      19.      Metrokane denies the allegations of Paragraph 19.

11      20.      Metrokane denies the allegations of Paragraph 20.

12      21.      Metrokane denies the allegations of Paragraph 21.

13      22.      Metrokane denies the allegations of Paragraph 22.

14      23.      Metrokane denies the allegations of Paragraph 23.

15      24.      Metrokane denies the allegations of Paragraph 24.

16      25.      Metrokane denies the allegations of Paragraph 25.

17            **AS TO THE SECOND CLAIM FOR RELIEF**

18      26.      Metrokane repeats and makes a part hereof its responses to

19 Paragraphs 1-25 of the Complaint.

20      27.      Metrokane denies the allegations of Paragraph 27.

21      28.      Metrokane denies the allegations of Paragraph 28.

22      29.      Metrokane denies the allegations of Paragraph 29.

23              **FIRST AFFIRMATIVE DEFENSE**

24      30.      The Complaint fails to state a claim against Metrokane upon

25 which relief can be granted.

26              **SECOND AFFIRMATIVE DEFENSE**

27      31.      The Complaint must be dismissed because it was filed

28 prematurely and interferes with Metrokane's rights under 15 U.S.C. § 1071(b)(1),

ANSWER AND AFFIRMATIVE DEFENSES;
DEMAND FOR JURY TRIAL

EXHIBIT _B_
PAGE _39_

1  (4) to seek a forum in which to appeal and/or review the decision of the Trademark

2  Trial and Appeal Board, dated May 1, 2008, canceling U.S. Registration No.

3  2,687,530.

### THIRD AFFIRMATIVE DEFENSE

5        32.    The Complaint must be dismissed because the Court lacks

6  personal jurisdiction over Metrokane.

### FOURTH AFFIRMATIVE DEFENSE

8        33.    The Complaint must be dismissed because venue of this action is

9  not proper in this judicial district.

### FIFTH AFFIRMATIVE DEFENSE

11        34.    The Complaint must be dismissed and/or the relief sought denied

12  by reason of Plaintiff's unreasonable delay in filing this action and asserting its

13  purported claim for trademark infringement and other relief.

### SIXTH AFFIRMATIVE DEFENSE

15        35.    The Complaint must be dismissed because Plaintiff has not used

16  the "Houdini" mark in connection with corkscrews, barware and wine accessories;

17  rather, Plaintiff has used the mark solely in connection with its gift packaging

18  services.  That service combines into a basket various food and beverage products

19  bearing the marks of <u>other companies</u> or bearing <u>no brand</u> at all.

### SEVENTH AFFIRMATIVE DEFENSE

21        36.    The Complaint must be dismissed because Plaintiff has not used

22  its mark in connection with corkscrews, barware or wine accessories; rather,

23  Plaintiff has used the mark solely in connection with its trade name.

### EIGHTH AFFIRMATIVE DEFENSE

25        37.    The Complaint must be dismissed because Plaintiff possesses

26  neither common law nor statutory trademark rights in the phrase "Houdini," as used

27  in connection with corkscrews, barware or wine accessories.

28



EXHIBIT *B*
PAGE *42*

-5-

1    **NINTH AFFIRMATIVE DEFENSE**

2       38.    The Complaint must be dismissed because Plaintiff has not

3    suffered any damages as a result of the alleged infringement recited in the

4    Complaint.

5    **TENTH AFFIRMATIVE DEFENSE**

6       39.    The Complaint must be dismissed because there is no likelihood

7    of confusion by consumers of Metrokane's corkscrews, barware or wine accessories

8    with consumers of Plaintiff's assembled gift baskets that lack any brand

9    identification on or in connection with any corkscrew, barware or wine accessory

10   products.

11   **ELEVENTH AFFIRMATIVE DEFENSE**

12      40.    The Complaint must be dismissed because Plaintiff has

13   consented and acquiesced to Metrokane's use of the Houdini trademark on

14   corkscrews, barware and wine accessories.

15   **TWELFTH AFFIRMATIVE DEFENSE**

16      41.    The Complaint must be dismissed because Metrokane has

17   priority of use over Plaintiff with respect to the mark Houdini, as used in connection

18   with corkscrews, barware and wine accessories.

19   **THIRTEENTH AFFIRMATIVE DEFENSE**

20      42.    The Complaint must be dismissed because Metrokane has not

21   committed, and is not now committing, infringement of an unregistered trademark,

22   common law unfair competition, or any other act that would give rise to any liability

23   to Plaintiff.

24

25      WHEREFORE, Defendant Metrokane Inc. demands that judgment be

26   entered in its favor dismissing the Complaint with prejudice, together with costs of

27

28

W02-EAST:1DAF1\200102863.1          ANSWER AND AFFIRMATIVE DEFENSES;
                                    DEMAND FOR JURY TRIAL

EXHIBIT _B_
PAGE _41_

1  suit, attorney's fees and such other and further relief as the Court deems just and

2  equitable.

3

4  Dated:  June 25, 2008

5                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6

7                              By     /s/ Darren M. Franklin

8                                     DARREN M. FRANKLIN

9                                     Attorneys for Defendant

10                                    METROKANE INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT** $B$
**PAGE** 42

1

**<u>DEMAND FOR JURY TRIAL</u>**

2      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant

3   Metrokane Inc. hereby demands trial by jury of all issues triable as a matter of right

4   to a jury.

5

6   Dated:  June 25, 2008

7                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

9               By      /s/ Darren M. Franklin

10                              DARREN M. FRANKLIN

11                              Attorneys for Defendant

12                              METROKANE INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT C

1   EDWARD R. SCHWARTZ, CA Bar No. 147553
    e-mail:  ers@cph.com
2   CHRISTIE, PARKER & HALE, LLP
    350 West Colorado Boulevard, Suite 500
3   Post Office Box 7068
    Pasadena, California 91109-7068
4   Telephone: (626) 795-9900
    Facsimile: (626) 577-8800
5
    Attorneys for Plaintiff,
6   Houdini, Inc.

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  HOUDINI, INC.,                    Case No.  CV08-0376 PA (FMOx)

12          Plaintiff,                PLAINTIFF'S MEMORANDUM
                                      OF POINTS AND AUTHORITIES
13      vs.                           IN SUPPORT OF ITS MOTION
                                      FOR A PRELIMINARY
14  METROKANE CORPORATION,            INJUNCTION

15          Defendant.                DATE:    July 28, 2008
                                      TIME:    1:30 p.m.
16                                    CTRM:    15

17                                    Hon. Percy Anderson

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _C_
PAGE _44_

CHRISTIE, PARKER & HALE, LLP

I. INTRODUCTION. ................................................................................ 1

II. FACTS. ............................................................................................... 2

III. LEGAL STANDARDS. ...................................................................... 6

    A. Legal Standard Re Trademark Infringement. ............................ 6

    B. Legal Standards Re Preliminary Injunctive Relief. .................. 6

IV. ARGUMENT. ...................................................................................... 7

    A. There is a Substantial Likelihood That Plaintiff Will Prevail on The Merits of Its Claim For Trademark Infringement. ................. 7

        1. Plaintiff's Right to Use The Mark HOUDINI is Superior to Defendant's Right to Use The Identical Mark. ..................... 8

        2. The HOUDINI Mark is Distinctive and Therefore Protectable. .................................................................. 8

            a) The HOUDINI Mark is Distinctive. ............................... 8

                (1) The HOUDINI mark is not generic for gift baskets containing wine or for wine accessories. ................ 9

                (2) The HOUDINI mark is not descriptive of gift baskets containing wine or for wine accessories. ................ 9

                (3) The HOUDINI mark is inherently distinctive. ................................................. 10

        3. Houdini's Rights in The HOUDINI Mark Are Infringed by Metrokane's Unauthorized Use of the Identical Mark. ....... 10

            a) Defendant's Use of the HOUDINI Mark Comes Within the Scope of Protection of Plaintiff's Mark. ................ 11

            b) Plaintiff's and Defendant's Goods are Highly Related and Overlap. ....................................... 11

            c) The Parties' Marks Are Identical. ................................... 12

            d) The Absence of Known Instances of Actual Confusion Does Not Bar a Finding of a Likelihood of Confusion. .............................. 13

            e) Houdini's and Metrokane's Goods Are Distributed and Advertised in the Same Trade Channels. ................ 13

EXHIBIT _C_
PAGE _15_

1            f)     Although Potential Customers May Exercise Care, There is No Way They Can Avoid Confusion. ......................................... 13

g)     Defendant's Continued Use of HOUDINI is a Clear Attempt to Trade on Plaintiff's Reputation or Alternatively, With Clear Disregard of Houdini's Established Rights. ....................................... 14

h)     Metrokane Has Expanded its Use of the HOUDINI Mark to Include Even More Overlapping Goods. ...................................... 14

B.     Plaintiff Will Suffer Irreparable Harm From Defendant's Use of The HOUDINI Mark. ........................................................... 15

C.     There Are Serious Questions Going to The Merits and The Balance of Hardships Tips Decidedly in Plaintiff's Favor. ................ 15

V.     CONCLUSION ................................................ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT** _C_
**PAGE** 46

1

# TABLE OF AUTHORITIES

2

## CASES

3

*AMF, Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979)................................................................11, 14

4

*Abercrombie & Fitch Co. v. Hunting World,*
  537 F.2d 4 (2d Cir. 1976).........................................................................8,

5

6       9

7

*Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.,*
  944 F.2d 1446 (9th Cir. 1991).................................................................13

8

9

*Amcor Industrial, Inc.,*
  210 U.S.P.Q. 70 (T.T.A.B. 1981) ...........................................................12

10

11

*Application of E.I. Dupont de Nemours & Co.,*
  476 F.2d 1357 (C.C.P.A. 1973) ................................................................7

12

*Bristol-Myers Squibb Co. v. McNeil - P.P.C., Inc.,*
  973 F.2d 1033 (2nd Cir. 1992) .................................................................9

13

14

*In re Corning Glass Works,*
  229 U.S.P.Q. 65 (T.T.A.B. 1985) ............................................................11

15

*Devcon Corp. v. Woodhill Chemical Sales Corp.,*
  455 F.2d 830 (1st Cir. 1972) cert. denied 409 U.S. 845 ......................9

16

17

*Discovery Communications, inc. v. Animal Planet, inc.,*
  172 F. Supp. 2d 1282 (C.D. Cal. 2001) .................................................13

18

*E & J Gallo Winery v. Gallo Cattle Co.,*
  967 F.2d 1280 (9th Cir. 1992)...........................................................12, 13

19

20

*GoTo.com, Inc. v. Walt Disney Co.,*
  202 F.3d 1199; 1025 (9th Cir. 2002) .................................................7, 15

21

*K P Permanent Make-Up, Inc. v. Lasting Impressions Inc.,*
  328 F.3d 1061 (9th Cir. 2003)..................................................................10

22

23

*King Size, Inc. v. Frank's King Size Clothes, Inc.,*
  547 F. Supp. 1138 (S.D. Tex 1982) .........................................................9

24

*Parfums Givenchy, Inc. v. Drug Emporium, Inc.,*
  38 F.3d 477 (9th Cir. 1994), cert. denied 115 S.Ct. 1315....................6

25

*Rodeo Collections v. West Seventh,*
  812 F.2d 1215 (9th Cir. 1987)..................................................................15

26

27

*In re Save Venice New York, Inc.,*
  259 F.3d 1346 (Fed. Cir. 2001)...............................................................11

28

EXHIBIT _C_
PAGE _47_

*E. Remy Martin Co. v. Shawdas-Ross Intel Imports,*
    756 F.2d 1525 (11th Cir. 1985)....................................................16

*Self-Realization Fellowship Church v. Amanda Church of Self Realization,*
    59 F.3d 902 (9th Cir. 1995)........................................................9

*Tanner Motor Livery Ltd. v. Avis, Inc.,*
    316 F.2d 804 (9th Cir. 1963).......................................................7

*Teleflora, Inc. v. Florists Transworld Delivery Association,*
    217 U.S.P.Q. 1081 (C.D. Cal. 1981)..............................................9

*Tillamook County v. U.S. Army Corp of Engineers,*
    288 F.3d 1140 (9th Cir. 2002)......................................................7

*Two Pesos v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992).............................................................6, 8, 10

*Woodroasts Supplies v. Restaurants Unlimited, Inc.,*
    793 F. Supp. 90 (D. Minn. 1992)..................................................16

## STATUTES

15 U.S.C. § 1114 ........................................................................7

15 U.S.C. § 1051 ........................................................................7

## MISCELLANEOUS

*McCarthy on Trademarks and Unfair Competition,*
(4th Ed., 1996), §23:1 ................................................6, 8, 9, 10, 15

CHRISTIE, PARKER & HALE, LLP

EXHIBIT *C*
PAGE *48*

## I. **INTRODUCTION.**

The immediate injunctive relief which Plaintiff Houdini, Inc. ("Houdini") requests is essential to protect Plaintiff's identity and to protect the public from confusion caused by Defendant's expanding use of Plaintiff's house mark HOUDINI.

Houdini has used HOUDINI as a trade name continuously since its formation as a sole proprietorship in 1984 and then as its corporate name. Since its formation, Houdini has been in the business of distributing gift baskets, many of which include wine and wine accessories such as corkscrews, wine glasses, and wine bottle foil cutters. Houdini's gift baskets are sold at large warehouse stores such as Costco and Sam's Club and retailers such as Target and Bed Bath & Beyond, as well as at liquor stores such as Beverages & More.

Houdini uses its Houdini name on all of its invoices, promotional literature, web site, signage, and on labels attached to each of its gift baskets. Retailers such as Costco identify their display of Houdini's products by name -- HOUDINI gift baskets. Further, the name of some of Houdini's gift baskets as shown on labels prominently attached to the basket include the HOUDINI mark such as HOUDINI CONTINENTAL COLLECTION and HOUDINI BOTTLE PICNIC BASKET.

Houdini is presently the second largest distributor of gift baskets in the country. Houdini's products are of a very high quality and as a result, repeat customers, both on the wholesale and retail level, are the norm. Indeed, consumers who have purchased Houdini's products at retail commonly contact Houdini directly in subsequent years for their holiday gifts.

In 2002, Metrokane introduced a corkscrew under the trademark HOUDINI. Metrokane distributes its products in retail stores such as Target and Bed Bath & Beyond and at liquor stores such as Beverages & More. Metrokane has more recently expanded its use of the HOUDINI trademark to other wine

1    accessories including wine glasses and wine bottle foil cutters.

2        Several factual issues are clear:

3        1.      Houdini has priority of use of HOUDINI as a trade name and

4    trademark;

5        2.      Houdini has used HOUDINI in connection with the sale of gift

6    baskets which include wine, corkscrews, wine glasses and wine bottle foil cutters

7    whereas Metrokane uses HOUDINI in connection with the sale of corkscrews,

8    wine glasses and wine foil cutters; and

9        3.      Both the trade and consumers recognize HOUDINI as a designation

10   of the source of Houdini's products.

11       Plainly, use of the identical term HOUDINI by Houdini and Metrokane to

12   designate products which are related and/or complementary is likely to cause

13   confusion or mistake as to the source or affiliation of Metrokane's product -- that

14   is, it is likely that a consumer in a store such as Target, Bed Bath & Beyond, or

15   Beverages & More who sees a HOUDINI gift basket containing bottles of wine

16   and wine accessories and then a HOUDINI corkscrew or HOUDINI wine glasses

17   will be mistaken that the products emanate from the same source.  This confusion

18   will irreparably harm Houdini because it will have lost control over the mark by

19   which it is known to the public and the goodwill attached thereto.  The need for

20   immediate injunctive relief to prevent extensive, irreparable harm is clear.

21   **II.    FACTS.**[1]

22       Houdini was founded as a sole proprietorship in 1984 and was incorporated

23   _____

24   [1]  The facts are supported by the declaration of Edward R. Schwartz ("Schwartz
     Decl.") to which is attached the testimony of Timothy Dean ("Dean"), Daniel M.
25   Maguire ("Maguire"), Joseph Wechsler ("Wechsler"), and  Stacy-Ann Goodwin
     ("Goodwin") from the cancellation proceeding between Houdini and Metrokane
26   in the United States Patent and Trademark Office ("PTO") as well as by exhibits
     and Metrokane's responses to interrogatories from that proceeding.  References to
27   testimony will identify the witness and the page from the witness's transcript, e.g.,
28   Dean p. 1.

CHRISTIE, PARKER & HALE, LLP

1   in 1989.  (Schwartz Decl., Exh. A; Dean p. 4)  Houdini started by making gift

2   baskets for wine shops and liquor stores.  Its gift baskets often contained wine,

3   wine accessories, wine glasses, or corkscrews.  (*Id.*, Dean pp. 4-5)

4       Since commencement of the company in 1984, Plaintiff has used its

5   company name HOUDINI on all correspondence and sales sheets.   In fact,

6   according to Houdini's founder, the HOUDINI name was used "for any business

7   dealings we had." (*Id.*, Dean p. 5)  Each of Houdini's gift baskets have a sticker

8   applied on the gift basket stating "Prepared by Houdini and Company." (*Id.*,

9   Dean pp. 5-6)

10      Houdini's initial customers were liquor stores and wine shops and Houdini

11  then expanded to wholesale clubs and large retailers.  (*Id.*, Dean p.7)  In 1988,

12  Houdini obtained its first large customer, Pace Wholesale, which was

13  subsequently purchased by Sam's Club (Wal-Mart).   Houdini's business kept

14  growing and Price Club became a customer in 1989.  Major companies such as

15  Costco, Cost Plus, Beverages & More, Target, Wal-Mart, Bed, Bath & Beyond

16  subsequently became customers for Houdini's gift baskets.  (*Id.*, Dean p. 6)

17  These wholesale customers resell the baskets to the general public -- to people

18  who buy gifts.  (Schwartz Decl., Exh. B, Maguire p. 12)   Today, Houdini's

19  biggest customers are Sam's Club, Costco, and B-J's.   Houdini also sells to

20  wineries which then resell Houdini's wine gift baskets.  (Schwartz Decl., Exh. A,

21  Dean p. 7-8)  Houdini still sells to individual liquor stores. (Schwartz Decl., Exh.

22  B, Maguire p. 12)

23      Houdini's business is designing, promoting and delivering gift baskets to

24  wholesale customers such as Costco and Sam's Club and to retailers such as

25  Albertson's, Smart & Final, Pier One, and Cost Plus.  (*Id.*, Maguire p. 5)  Houdini

26  decides what assortment of products go into its gift baskets -- gourmet foods,

27  chocolates, wine accessories, cheese accessories, or spa items.  (Schwartz Decl.,

28  Exh. A, Dean p. 8)  Such products commonly include gourmet foods, cheese

CHRISTIE, PARKER & HALE, LLP

EXHIBIT *C*    3
PAGE *51*

plates, corkscrews, wine chillers, wine glasses, champagne glasses, cutting boards or wine charms. (*Id.*, Dean p. 9; Schwartz Decl., Exh. B, Maguire p. 11) A cost sheet is created when a basket is first designed and then will be given to a wholesale customer. (*Id.*, Maguire p. 19)

Houdini uses HOUDINI on everything the company does -- on sales sheets presented to wholesale customers, on labels attached to gift baskets, on all correspondence, and on signage. Houdini's operators answers the phone "HOUDINI." (Schwartz Decl., Exh. A, Dean p. 10)

Consumers who buy or receive Houdini's gift baskets know that Houdini is the source because all of Houdini's gift baskets bear a label which states "Packed by Houdini, Inc." (*Id.*, Dean p. 13, Schwartz Decl, Exh. G, Schwartz Decl., Exh. B, Maguire p. 17, 20-21; See specimen labels attached to Schwartz Decl., Exhs. I, J) In addition, Houdini's gift baskets often have HOUDINI in the name of the basket although the individual products within the baskets are not marked HOUDINI. These gift basket names include HOUDINI Continental Collection, HOUDINI Celebration, HOUDINI Bottle Picnic Basket, HOUDINI Antinoi "Santa Cristina" Gift Basket, HOUDINI Grand Celebration Basket, HOUDINI Beringer 3 Pk, HOUDINI Italian Bowl Gift Set, and HOUDINI Lancaster Gift Basket. These labels are placed prominently on the baskets so that customers can see them. (Schwartz Decl., Exh. A, Dean pp. 14, 22-25,; Schwartz Decl., Exh. B, Maguire pp. 15-16, 44.) Further, large customers such as Sam's Club or Costco commonly have point of sale markers above Houdini's gift baskets saying "HOUDINI" gift baskets. (Schwartz Decl., Exh. A, Dean pp. 10-11; 64; Schwartz Decl., Exh. B, Maguire p. 13) In Costco, Houdini's wine baskets are sold in the wine section. These baskets commonly contain accessories include corkscrews, cutting boards, and wine glasses. (Schwartz Decl., Exh. A, Dean pp. 11-12)

Houdini markets its gift baskets at the National Association of Specialty

EXHIBIT *C*
PAGE *55*
4

CHRISTIE, PARKER & HALE, LLP

Food Retailers trade show. Products sold or promoted at the show include gourmet foods, wines, baskets, and wine accessories including corkscrews, wine charms, and wine glasses. (*Id.*, Dean pp. 14-15) Houdini also promotes its gift baskets over the Internet at houdiniinc.com. (*Id.*, Dean pp. 16-17; Schwartz Decl., Exh. B, Maguire p. 22, Schwartz Decl., Exh. F)

Houdini is the second largest gift basket company in the United States with annual sales of approximately 1 million baskets. (Schwartz Decl., Exh. A, Dean pp. 21-22) Houdini's sales have grown based on quality, value and deliverability. (Schwartz Decl., Exh. B, Maguire pp. 26-27) The company is known as Houdini. According to Houdini's president, "In the industry, everyone knows who we are," (Schwartz Decl., Exh. A, Dean p. 15) and Houdini's chief financial officer testified that "We have a very good reputation. Pristine reputation for quality and value." (Schwartz Decl., Exh. B, Maguire p. 27)

Houdini receives telephone calls from individuals directly who have seen Houdini's gift baskets at stores. These are repeat customers who may be businessmen who buy multiple gift baskets at a time or just anyone who wants to buy a present. These customers know that the gift baskets which they saw or received came from Houdini because of the labels on the baskets with the HOUDINI name. Customers know that Houdini has corkscrews, wine charms, wine glasses available to put in its wine baskets. (Schwartz Decl., Exh. A, Dean pp. 17-18, 22, 35-36; Schwartz Decl., Exh. C, Wechsler pp. 5-6)

Houdini gets 5 - 10 new small retailer customers a year. The new customers always contact Houdini since Houdini only actively pursues the larger retailers. Houdini sells them gift baskets which sometimes include wine accessories including corkscrews. (*Id.*, Wechsler pp. 8-9)

There are numerous federal trademark registrations for marks for goods which contain corkscrews and wine or cheese. (Schwartz Decl., Exh. D, Goodwin p. 5, Schwartz Decl., Exh. G) In addition, various wineries sell corkscrews. (*Id.*,

EXHIBIT *C*
PAGE *53*                    5

CHRISTIE, PARKER & HALE, LLP

Goodwin pp. 6-18; Schwartz Decl., Exh. H)

Houdini has two pending applications with the PTO to register HOUDINI for products relating to wine or wine accessories. (See Schwartz Decl., Exhs. I, J) Both of these applications have been rejected as being confusingly similar to Metrokane's HOUDINI mark. (Schwartz Decl., par. 7)

Metrokane is principally a manufacturer and seller of wine accessories such as corkscrews, wine racks, and foil cutters and mechanical juicers, barware and related housewares. (Schwartz Decl., Exh. K, p.2) Metrokane first used the mark HOUDINI for corkscrews on January 13, 2002 and in commerce on April 16, 2002. (*Id.*, p.3) The channels of trade for Metrokane's products include department stores and retailers such as Target and Bed Bath & Beyond and wine stores such as Beverages & More. (*Id.* Exh. B thereto)

## III.   <u>LEGAL STANDARDS.</u>

### A.   <u>Legal Standard Re Trademark Infringement.</u>

"Likelihood of confusion" is the basic test for trademark infringement -- that is, whether the accused mark is likely to cause confusion or mistake as to the source of defendant's goods or whether those goods are affiliated, sponsored, or associated with plaintiff's goods. *See: Parfums Givenchy, Inc. v. Drug Emporium, Inc.,* 38 F.3d 477, 484 (9th Cir. 1994), *cert. denied* 115 S.Ct. 1315 (The purpose of the Lanham Act is to prevent consumer confusion or deception about the origin or make of a product.); *McCarthy on Trademarks and Unfair Competition, (4th Ed., 1996)*, §23:1 ["Likelihood of confusion is the basic test of common law and federal statutory trademark infringement:]; *Two Pesos v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992) ['It is, of course, also undisputed that liability [for trademark infringement] . . . requires proof of the likelihood of confusion."].

### B.   <u>Legal Standards Re Preliminary Injunctive Relief.</u>

The purpose of a preliminary injunction is to preserve the last uncontested

EXHIBIT *C*
PAGE *57*    6

status which preceded the pending controversy. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2002) citing *Tanner Motor Livery Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)   A party is entitled to preliminary injunctive relief if it shows:

> (1)   a combination of likelihood of success on the merits and the possibility of irreparable injury; or

> (2)   that serious questions going to the merits are raised and the balance of hardship tips sharply in the moving party's favor. *Id.* at 1204-05; *Tillamook County v. U.S. Army Corp of Engineers*, 288 F.3d 1140, 1143 (9th Cir. 2002).

As will be demonstrated below, Plaintiff Houdini has a strong likelihood of success on the merits of its trademark infringement claim and will suffer incalculable, irreparable injury if injunctive relief is not immediately granted. Alternatively, Plaintiff has clearly raised serious grounds for adjudication and the balance of hardships tips decidedly in his favor.   Consequently, immediate injunctive relief is appropriate.

**IV.   ARGUMENT.**

> **A.   There is a Substantial Likelihood That Plaintiff Will Prevail on The Merits of Its Claim For Trademark Infringement.**

The goal of the framers of the Lanham Act, 15 U.S.C. § 1051, et seq., was to secure to the owner of a trademark the goodwill of his business and at the same time protect the buying public against spurious and falsely marked goods. *Application of E.I. Dupont de Nemours & Co.*, 476 F.2d 1357, 1360 (C.C.P.A. 1973).   Plaintiff's trade name and trademark is HOUDINI.   Consequently, Houdini's claim for trademark infringement centers on whether Metrokane's use of the mark HOUDINI is likely to cause confusion or mistake or to deceive consumers as to the source of Defendant's goods or as to affiliation, sponsorship, or association of Defendant's goods with Plaintiff. *See:* 15 U.S.C. § 1114

**EXHIBIT** *C* 7
**PAGE** 53

1    As demonstrated below, the likelihood of such confusion is beyond doubt

2    and therefore, there is a high likelihood that Plaintiff Houdini will succeed on its

3    claim of infringement.

4         **1.    Plaintiff's Right to Use The Mark HOUDINI is Superior to**

5              **Defendant's Right to Use  The Identical Mark.**

6    A prerequisite to a claim of trademark infringement is that the party

7    claiming injury must have "superior" trademark rights -- that is, the claimant must

8    have priority of use.  When a merchant has established a trademark right by use

9    on or in association with a product before anyone else, the right to use it in

10   connection with that product becomes an exclusive right and the mark is his

11   property. McCarthy, § 2:14. In the present case, Plaintiff has used the HOUDINI

12   name and mark continuously since 1984 whereas Defendant only adopted the

13   mark in 2002.  Consequently, Plaintiff has priority of use and therefore superior

14   trademark rights in HOUDINI mark.

15        **2.    The  HOUDINI  Mark  is  Distinctive  and  Therefore**

16             **Protectable.**

17   A trademark is protectable if it is distinctive, either inherently or through

18   acquisition of secondary meaning. *Two Pesos*, 505 U.S. at 769.

19             **a)    The HOUDINI Mark is Distinctive.**

20   Trademarks are classified in categories of increasing distinctiveness:

21   (1) generic; (2) descriptive: (3) suggestive; and (4) arbitrary or fanciful. *Two*

22   *Pesos*, 505 U.S. at 768 (approving of the formulation for categorizing the

23   distinctiveness of mark set forth in *Abercrombie & Fitch Co. v. Hunting World*,

24   537 F.2d 4, 9 (2d Cir. 1976).).  Suggestive, arbitrary, and fanciful marks are

25   protectable without secondary meaning; descriptive marks are not.  Generic terms

26   are never protectable as trademarks. *See: Two Pesos*, 505 U.S. at 768-769.

27

28

CHRISTIE, PARKER & HALE, LLP

**(1)** **The HOUDINI mark is not generic for gift baskets containing wine or for wine accessories.**

Under the *Abercrombie* test, Plaintiff's HOUDINI mark is plainly not generic, i.e., the common name of the goods -- that is, HOUDINI is not the common name for gift baskets containing wine or wine accessories such as corkscrews or wine glasses. Examples of generic terms are "Easter Basket" for Easter floral bouquets, *Teleflora, Inc. v. Florists Transworld Delivery Association*, 217 U.S.P.Q. 1081 (C.D. Cal. 1981) and "Self-Realization" for a type of organization dedicated to spiritual attainment in the manner taught by yoga, *Self-Realization Fellowship Church v. Amanda Church of Self Realization*, 59 F.3d 902 (9th Cir. 1995).

**(2)** **The HOUDINI mark is not descriptive of gift baskets containing wine or for wine accessories.**

A mark is "descriptive" if it is descriptive of the intended purpose, function or use of the goods, the size of the goods, the provider of the goods, the class of users of the goods, a desirable characteristic of the goods, the nature of the goods or the end effect upon the user. *McCarthy*, § 11:16 at 11-21 - 23. Examples of descriptive marks are: "P.M." for an analgesic for night time use; *See: Bristol-Myers Squibb Co. v. McNeil - P.P.C., Inc.* 973 F.2d 1033 (2nd Cir. 1992); KING SIZE for larger men's clothes, *See: King Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F.Supp. 1138 (S.D. Tex 1982); and 5-MINUTE for glue which sets in five minutes; *See: Devcon Corp. v. Woodhill Chemical Sales Corp.*, 455 F.2d 830 (1st Cir. 1972) *cert. denied* 409 U.S. 845. Plaintiff's HOUDINI mark does not meet any of the foregoing requirements as to Plaintiff's products and therefore is not descriptive as a matter of law.

**(3)** **The HOUDINI mark is inherently distinctive.**

It is irrelevant whether the HOUDINI mark is deemed to be "suggestive" because it may suggest qualities of Plaintiff's goods (which it does not) or categorized as being "arbitrary" because it bears no relationship to the goods (*McCarthy* § 11:11 at 11-15) because both "arbitrary" and "suggestive" marks are inherently distinctive as a matter of law. *Two Pesos*, 505 U.S. at 768. *See: McCarthy,* § 11:12 at 11-16. ["Arbitrary marks are sometimes difficult to distinguish from 'suggestive' marks. However, for legal purposes, there is little, if any, reason to make the distinction, and the cases hardly ever bother to do so."] Consequently, HOUDINI is a protectable mark because it is inherently distinctive.

**3.** **Houdini's Rights in The HOUDINI Mark Are Infringed by Metrokane's Unauthorized Use of the Identical Mark.**

Since Plaintiff's HOUDINI mark is proprietary, i.e., distinctive, the remaining issue in determining whether Plaintiff's rights are infringed by Defendant's use of the HOUDINI mark is whether there is a likelihood that an appreciable number of ordinary consumers or potential consumers are likely to be misled or confused as to the source of the goods in question -- that is, whether actual or potential customers would be likely to erroneously believe that Defendant's goods offered under the HOUDINI mark are authorized, sponsored by, or affiliated with Plaintiff.

Determination of the likelihood of confusion issue requires a weighing of various factors. These factors include: (a) the strength of Plaintiff's mark; (b) the proximity of the goods; (c) the similarity of the marks; (d) evidence of actual confusion; (e) the marketing channels used; (f) the type of services and the degree of care likely to be exercised by the purchaser; (g) Defendant's intent in selecting and/or using the mark; and (h) likelihood of expansion of product lines. *K P Permanent Make-Up, Inc. v. Lasting Impressions Inc.*, 328 F.3d 1061, 1073 (9th

Cir. 2003);  *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-349 (9th Cir. 1979). In the present case, a likelihood of confusion is certain.

    a)   <u>**Defendant's Use of the HOUDINI Mark Comes**</u>
       <u>**Within the Scope of Protection of Plaintiff's Mark.**</u>

  As discussed above, Plaintiff's HOUDINI mark is subject to exclusive appropriation because it is distinctive.  Plainly, Defendant's use of the identical mark comes within the scope of protection to be accorded Plaintiff's mark.

    b)   <u>**Plaintiff's and Defendant's Goods are Highly**</u>
       <u>**Related and Overlap.**</u>

  The standard for evaluating whether the parties' respective goods favor a finding of a likelihood of confusion is clearly established.

> [F]or the purpose of determining the likelihood of source confusion of trademarks, the goods need not be identical or even competitive, it being sufficient that they are so related and/or conditions surrounding their marketing are such that they are likely to be encountered in the marketplace by the same relevant purchasers who, because of the relatedness of the goods and the marks' similarities, would believe, mistakenly, that they share a common source or are associated with the same producer.

*In re Corning Glass Works,* 229 U.S.P.Q. 65, 66 (T.T.A.B. 1985).  *See: McCarthy,* § 24:6 at 4-16.  ["The modern rule of law gives the trademark owner protection against use of its mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner."]  *See:  In re Save Venice New York, Inc.* 259 F.3d 1346, 1355 (Fed. Cir. 2001)  ["The related goods test measures whether a reasonably prudent consumer

EXHIBIT *C*
PAGE *59*   11

would believe that non-competitive but related goods sold under similar marks derive from the same source, or are affiliated with, connected with, or sponsored by the same trademark owner."]

In the present case, Metrokane uses the HOUDINI trademark for corkscrews, wine glasses, wine foil cutters and other wine accessories. Houdini uses its HOUDINI mark for gift baskets which contain bottles of wine, many of which also include wine accessories, such as corkscrews, wine coolers, and wine glasses. As such, Houdini's and Metrokane's goods for which the HOUDINI mark is used are in some cases directly competitive and in others are related or complementary. *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ["Where goods are related or complementary, the danger of consumer confusion is heightened." Wine and cheese held to be complementary because they are served and promoted together; the products are often sold together in the same package; and they are sold in the same section of retail stores.] Indeed, many wineries sell corkscrews and the existence of a multitude of registrations for marks for wine and corkscrews attest to the complementary nature of bottles of wine and corkscrews. This factor plainly favors a finding of a likelihood of confusion. *Id.*; *See Amcor Indus., Inc.*, 210 U.S.P.Q. 70, 78 (T.T.A.B. 1981) ["In a situation . . . where both parties are using the identical designation . . . the relationship between the goods on which the parties use their marks need not be as great or as close as in the situation where the marks are not identical or strikingly similar."]

### c)   The Parties' Marks Are Identical.

The parties each use the identical mark -- HOUDINI. This factor strongly favors a likelihood of confusion.

EXHIBIT *C*
PAGE *60*   12

CHRISTIE, PARKER & HALE, LLP

        **d)**     <u>**The Absence of Known Instances of Actual Confusion Does Not Bar a Finding of a Likelihood of Confusion.**</u>

The test of trademark infringement is likelihood of confusion, not actual confusion. *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991); *Discovery Communications, inc. v. Animal Planet, inc.* 172 F.Supp. 2d 1282, 1289 (C.D. Cal. 2001)  The absence of evidence of actual confusion "need not create an inference that there is no likelihood of confusion. *Gallo*, 967 F.2d at 1292.

        **e)**     <u>**Houdini's and Metrokane's Goods Are Distributed and Advertised in the Same Trade Channels.**</u>

Houdini's gift baskets are sold in retail stores and in liquor stores. Similarly, Metrokane sells its HOUDINI products in retail stores and in liquor stores.  Indeed, the parties' respective products are sometimes sold in the same stores including Target, Bed, Bath & Beyond, and Beverages & More. Houdini's wine gift baskets are sold in the wine section of these stores as are wine accessories such as corkscrews.  Plainly, there is a likelihood that a consumer who sees a HOUDINI gift basket and then either a HOUDINI corkscrew or HOUDINI wine glasses is likely to mistakenly believe that these products emanate from the same or a related source.

        **f)**     <u>**Although Potential Customers May Exercise Care, There is No Way They Can Avoid Confusion.**</u>

There is presently no evidence as to the degree of care exercised by potential customers for the parties' products.  Consequently this factor is neutral.

EXHIBIT *C*
PAGE *64*    13

CHRISTIE, PARKER & HALE, LLP

1      **g)  Defendant's Continued Use of HOUDINI is a Clear**
2        **Attempt to Trade on Plaintiff's Reputation or**
3        **Alternatively, With Clear Disregard of Houdini's**
4        **Established Rights.**

5      There can be no doubt that Defendant has been aware of Plaintiff's
6   HOUDINI mark since at least as early as 2004 when Houdini sent a cease and
7   desist letter to Metrokane.  When Metrokane refused Houdini's demand, Houdini
8   initiated a proceeding in the PTO seeking to cancel Metrokane's registration for
9   HOUDINI.  In the spring of 2008, the PTO ruled in Houdini's favor that there was
10  a likelihood of confusion and cancelled Metrokane's registration.  Defendant's
11  continued use of the mark after the PTO ruling evidences Defendant's bad faith.
12  Such wrongful intent strongly supports the grant of an injunction enjoining
13  Defendant's inequitable conduct.  *Sleekcraft*, 599 F.2d at 348-349.

14     **h)  Metrokane Has Expanded its Use of the HOUDINI**
15       **Mark to Include Even More Overlapping Goods.**

16     Metrokane commenced use of HOUDINI for corkscrews in 2002 and
17  expanded use of the mark to foil cutters, wine vacuum pumps, wine chillers and
18  wine racks in 2005.  Houdini also sells wine accessories, including foil cutters
19  and wine glasses in its gift baskets under the HOUDINI trademark, thereby
20  increasing the likelihood of confusion.

21     There is only one possible conclusion from the foregoing analysis --
22  consumer confusion caused by Defendant's use of the HOUDINI mark is not only
23  likely, but inevitable.  Plainly, there is a high likelihood that Plaintiff will succeed
24  on the merits of its claim of trademark infringement.

25

26

27

28

EXHIBIT *C*
PAGE *62*  14

CHRISTIE, PARKER & HALE, LLP

**B.**  **Plaintiff Will Suffer Irreparable Harm From Defendant's Use of The HOUDINI Mark.**

Once a trademark owner has shown that consumers are likely to confuse Defendant's mark with its mark, a presumption of irreparable injury to the service mark owner follows as a matter of course.  As stated by the Ninth Circuit, "Once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue."  *GoTo.com* 202 F.3d at 1025; *Rodeo Collections v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987).

Defendant's use of HOUDINI clearly undermines the customer goodwill that Plaintiff has developed as a result of substantial effort.  *See:  McCarthy* § 30:49 and cases cited.  ["Other elements of irreparable injury may comprise plaintiff's tangible goodwill, which is almost impossible to accurately ascertain in dollars."]  The evidence presented supports the presumption that Plaintiff will sustain irreparable and immeasurable harm to its goodwill should Defendant be permitted to continue using the HOUDINI mark.  Consequently, since Plaintiff has met its burden of showing a likelihood of success on the merits and that it will suffer irreparable harm if Defendant's infringement is not enjoined, a preliminary injunction should be issued.

**C.**  **There Are Serious Questions Going to The Merits and The Balance of Hardships Tips Decidedly in Plaintiff's Favor.**

Because Plaintiff has shown that it is likely to succeed on the merits and is threatened with irreparable harm, it is not necessary to consider the alternate standard for issuance of preliminary injunctive relief; namely, whether serious questions are raised going to the merits of the litigation and the balance of hardships tips decidedly in favor of Plaintiff.  Nevertheless, Plaintiff easily satisfies the alternative test.

Plainly, Plaintiff has raised serious questions going to the merits of the

EXHIBIT *C*
PAGE *63*        15

1  litigation.  See Section IV. A above.  Therefore, the only remaining issue is the

2  "balance of hardships."

3  The balance of hardships decidedly favors Plaintiff.  The investment and

4  goodwill incurred by Plaintiff in promoting and marketing its goods during the

5  past twenty-four years will be irreparably and immeasurably damaged by

6  Defendant's unauthorized use of the HOUDINI mark.  Indeed, it is well

7  established that the balance of hardships weighs sharply in favor of a trademark

8  owner who has invested considerable time in the development of its products and

9  promotion of its mark because it stands so much to lose by unauthorized use of

10  such mark. *Woodroasts Supplies v. Restaurants Unlimited, Inc.*, 793 F. Supp. 90,

11  918 (D. Minn. 1992); *See:  E. Remy Martin Co. v. Shawdas-Ross Intel Imports*,

12  756 F.2d 1525 (11th Cir. 1985)  Grant of an injunction precluding Defendant

13  from swamping the goodwill created by Plaintiff by Defendant's expanding

14  promotional activities is needed to preserve the status quo ante.

15  **V.    CONCLUSION**

16  Public policy favors granting an injunction to protect Plaintiff's goodwill

17  and to avoid consumer deception.  Since Defendant's unauthorized use of

18  Plaintiff's trademark is clearly likely to cause confusion and deception, an

19  injunction enjoining Defendants' use of the HOUDINI mark pending trial is in

20  order.

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

DATED:  July 7, 2008            By ___/s/ Edward R. Schwartz_____
                                        Edward R. Schwartz
                                        Attorneys for Plaintiff,
                                        Houdini, Inc.

1

2

# CERTIFICATE OF SERVICE

3

4     I certify that on July 7, 2008, I electronically filed the document described

5     as PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN

6     SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION with the

7     Clerk of the Court using the ECF system which will send notification of such

      filing to the parties.

8

9

10                                        /s/ Betty L. Venuti
                                          Betty L. Venuti
11

12

13    BLV PAS801879.1-*-07/7/08 4:32 PM

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _C_
PAGE _23_

EXHIBIT D

1   DON J. PELTO, Cal. Bar No. 140499
    dpelto@sheppardmullin.com
2   DARREN M. FRANKLIN, Cal. Bar No. 210939
    dfranklin@sheppardmullin.com
3   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
4     Including Professional Corporations
    333 South Hope Street, 48th Floor
5   Los Angeles, California 90071-1448
    Telephone: 213-620-1780
6   Facsimile: 213-620-1398

7   ROBERT J. SCHOENBERG (pro hac vice)
    rschoenberg@riker.com
8   RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
    One Speedwell Avenue
9   Morristown, New Jersey 07962-1981
    Telephone: 973-451-8511
10  Facsimile: 973-451-8604

11  Attorneys for Defendant
    METROKANE INC.
12

13                 UNITED STATES DISTRICT COURT

14       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15

16  HOUDINI, INC.,                    Case No. CV 08-03076 PA (FMOx)

17            Plaintiff,              **MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN OPPOSITION
18       v.                           TO PLAINTIFF'S MOTION FOR A
                                      PRELIMINARY INJUNCTION**
19  METROKANE CORPORATION,
                                      Hearing
20            Defendant.             Date: August 4, 2008
                                      Time: 1:30 p.m.
21                                    Ctrm: 15, Hon. Percy Anderson

22

23

24

25

26

27
                                     EXHIBIT D
28                                   PAGE 66

                                     -0-

W02-EAST:1DAF1\200108305.1          MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
                                    TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1

## TABLE OF CONTENTS

2                                                                                    Page

3

I. INTRODUCTION ...........................................................................................1

4

5

II. STATEMENT OF FACTS ...........................................................................2

6

    A.    Metrokane – Development of the HOUDINI Brand .........................2

7

    B.    Metrokane's Sales Revenues and Advertising Expenses ......................4

8

    C.    Plaintiff Houdini, Inc. .......................................................................5

9

III. PROCEDURAL HISTORY ........................................................................6

10

11

IV. THE PRELIMINARY INJUNCTION STANDARD IS NOT MET ...............7

12

    A.    Legal Standard .................................................................................7

13

    B.    Plaintiff's Delay Demonstrates a Lack of Irreparable Injury .................9

14

    C.    Plaintiff Has Failed to Demonstrate a Probability of Success on
           the Merits ........................................................................................10

15

16

           1.    Laches Defeats Plaintiff's Infringement Claim..........................11

17

                 a.    Plaintiff's Mark Is Weak .............................................12

18

                 b.    Plaintiff Failed to Enforce Its Mark .................................14

19

20

                 c.    Plaintiff Would Suffer No Harm if this Motion is
                     Denied........................................................................14

21

                 d.    Metrokane Adopted the HOUDINI Mark in Good

22

                     Faith.........................................................................15

23

                 e.    Plaintiff and Metrokane Do Not Compete ......................15

24

                 f.    Metrokane Would Suffer Severe Harm if the Motion

25

                     Is Granted.................................................................16

26

           2.    There Is No Likelihood of Confusion .......................................17

27

                 a.    Plaintiff's Mark Is Weak .............................................18

28

EXHIBIT *D*

PAGE *62*

-i-

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

|   | b. | Metrokane's HOUDINI Line of Barware Is Not "Proximate" to Plaintiff's Gift Basket Design Services ....................................................... 18 |
|   | c. | The Marks Are Not Similar in Presentation .................... 20 |
|   | d. | There Is No Evidence of Actual Consumer Confusion ......................................................... 21 |
|   | e. | The Marketing Channels Used By the Parties Are Different .......................................................... 22 |
|   | f. | The Pocket Corkscrews in Some of Plaintiff's Baskets Do Not Compare to Metrokane's HOUDINI Lever Pull Corkscrews ........................... 23 |
|   | g. | Metrokane Adopted the HOUDINI Mark in Good Faith ............................................................... 24 |
|   | h. | There Is No Likelihood that Either Party Will Expand Its Use of "Houdini" to Compete with the Other Party ........................................................ 24 |
| D. | | The Balance of Hardships Weighs Against a Preliminary Injunction .................................................. 24 |

V. CONCLUSION ........................................................................ 25

EXHIBIT 6
PAGE 68

-ii-

W02-EAST:1DAF1\200108305.1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    TABLE OF AUTHORITIES

2    **CASES**

3
4    AMF, Inc. v. Sleekcraft Boats,
        599 F.2d 341 (9th Cir. 1979) ........................................ 17, 18, 21, 24
5
     Abend v. MCA, Inc.,
6        863 F.2d 1465 (9th Cir. 1988) ................................................ 9

7    Adir Int'l, LLC v. Unicomer S.A. de C.V.,
8        Case No. 07-1314 (C.D. Cal., Nov. 19, 2007) ....................... 9, 17

9    Apple Computer, Inc. v. Formula Int'l, Inc.,
10       725 F.2d 521 (9th Cir. 1984) ................................................ 17

11   Arnold, Schwinn & Co. v. Evans Products Co.,
12       302 F.2d 765 (C.C.P.A. 1962) .............................................. 21

13   Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
14       174 F.3d 1036 (9th Cir. 1999) ......................................... 21, 23

15   California Cooler v. Loretto Winery, Ltd.,
16       774 F.2d 1451 (9th Cir. 1985) .............................................. 20

17   Campbell Soup Co. v. ConAgra, Inc.,
18       977 F.2d 86 (3rd Cir. 1992) ................................................... 8

19   Canon, Inc. v. GCC Int'l Ltd.,
20       450 F. Supp. 2d 243 (S.D.N.Y. 2006) ..................................... 9

21   Caribbean Mar. Serv. Co. v. Baldridge,
22       844 F.2d 668 (9th Cir. 1988) ................................................. 8

23   Church v. Huntsville,
24       30 F.3d 1332 (11th Cir. 1994) ............................................... 8

25   E&J Gallo Winery v. Gallo Cattle Co.,
26       967 F.2d 1280 (9th Cir. 1992) ....................................... 19, 21, 24
27

28
                                    EXHIBIT _D_
                                    PAGE _69_
                          -iii-

eBay, Inc. v. MercExchange, L.L.C.,
    547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) ..................................... 8, 9

Eliminator Custom Boats v. American Marine Holdings, Inc.,
    2007 U.S. Dist. LEXIS 96414 (C.D. Cal. Nov. 5, 2007) ....................................... 11

Erico Int'l Corp. v. Doc's Marketing, Inc.,
    2007 WL. 108450 (N.D. Ohio Jan. 9, 2007) .......................................................... 9

E-Systems, Inc. v. Monitek, Inc.,
    720 F.2d 604 (9th Cir. 1983) ........................................................................ 11, 12

Grupo Gigante SA DE CV v. Dallo & Co., Inc.,
    391 F.3d 1088 (9th Cir. 2004) ............................................................................ 16

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
    304 F.3d 829 (9th Cir. 2002) .............................................................................. 11

King of the Mtn. Sports, Inc. v. Chrysler Corp.,
    185 F.3d 1084 (10th Cir. 1999) .......................................................................... 20

Merle Norman Cosmetics, Inc. v. Martin,
    1990 WL. 131758 (9th Cir. 1990) ........................................................................ 8

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................................ 9

Miller v. Glenn Miller Prods.,
    318 F. Supp. 2d 923 (C.D. Cal. 2004), aff'd, 454 F.3d 975 (9th Cir. 2006) ........... 12

Oakland Tribune, Inc. v. Chronicle Pub. Co.,
    762 F.2d 1374 (9th Cir. 1985) ........................................................................ 8, 11

Reno Air Racing Ass'n, Inc. v. McCord,
    452 F.3d 1126 (9th Cir. 2006) ........................................................................ 9, 12

Rhoades v. Avon Products, Inc.,
    504 F.3d 1151 (9th Cir. 2007) ............................................................................ 10

Salt Lake Tribune Publishing v. AT&T Corp.,
    320 F.3d 1081 (10th Cir. 2003) ............................................................................ 7

-iv-

EXHIBIT _D_

*Save our Sonoran, Inc. v. Flowers, Inc.*,
    408 F.3d 1113 (9th Cir. 2005) ............................................................. 8

*Shelton v. National Collegiate Athletic Ass'n*,
    539 F.2d 1197 (9th Cir. 1976) ............................................................. 7

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
    305 F.3d 894 (9th Cir. 2002) ............................................................. 17

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*,
    465 F.3d 1102 (9th Cir. 2006) ....................................................... 11, 12

*Tillamook County v. U.S. Army Corp. of Engineers*,
    288 F.3d 1140 (9th Cir. 2002) ............................................................. 8

*Whittaker Corp. v. Execuair Corp. et al.*,
    736 F.2d 1341 (9th Cir. 1984) ........................................................... 16


**STATUTES**

15 U.S.C. § 1051(b) ............................................................................. 6

15 U.S.C. §§ 1063(a), 1064, 1067(a) ................................................. 10

15 U.S.C. § 1072 .......................................................................... 10, 11

15 U.S.C. §§ 1116, 1119, 1121(a) ...................................................... 10

15 U.S.C. Sec. 1071(b) ......................................................................... 7

Cal. Bus. & Prof. Code § 17208 .................................................... 11, 12

Cal. Civ. Proc. Code § 343 ............................................................ 11, 12

W02-EAST:1DAF1\200108305.1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# I. __INTRODUCTION__

Defendant Metrokane Inc. ("Metrokane") submits this Brief in opposition to Plaintiff's motion for a preliminary injunction enjoining Metrokane's use of its HOUDINI mark in connection with lever pull corkscrews and other barware.

By filing this motion, Plaintiff seeks to convince this Court that there is an exigency to which Plaintiff allegedly has only now awoken. Since April 2002, Metrokane has built a successful line of barware products around its HOUDINI brand, obtaining federal registration of its HOUDINI mark in February 2003. Thus, (i) for the six years that Metrokane has used that mark in commerce, (ii) the five years since Plaintiff had constructive notice of Metrokane's ownership of the mark, (iii) and the four years, at least, that Plaintiff has had actual notice of that use, Plaintiff was content to sit back while both businesses successfully pursued their trades. Indeed, even when Plaintiff ultimately decided to commence legal proceedings against Metrokane in July 2005, it failed to pursue injunctive relief. Yet despite this delay, it now comes running into this Court proclaiming a fierce urgency and demanding emergency relief. Plaintiff has overslept, and its unreasonable delay should sound a death knell, not only for its claim of irreparable harm, but also for its probability of success on the merits of its infringement claim.

Nor is Plaintiff's delay the only basis to deny this Motion. Plaintiff has also failed to present any specific evidence to support its assertions that Metrokane's use of the HOUDINI mark will inevitably generate consumer confusion or harm to its "goodwill." In fact, the evidence suggests precisely the opposite. During the past six years that Metrokane has used the mark in commerce, there has not been a single incident of consumer confusion, and Plaintiff's business has not suffered but rather continued to thrive and grow. Viewed in this light, Plaintiff's brazen attempt to force Metrokane to shut down its successful HOUDINI line should be rejected, particularly at this early stage of the case.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# II. STATEMENT OF FACTS

## A.    Metrokane – Development of the HOUDINI Brand

Metrokane is a leading manufacturer of corkscrews and other beverage accessories, and sells these products under its well-known trademarks RABBIT® and HOUDINI. Since the introduction of its first "lever pull" corkscrew in 2000 under the RABBIT® trademark, Metrokane has sold millions of corkscrews and has become virtually synonymous with premium corkscrews.

In 2001, Metrokane developed a new premium lever pull corkscrew but at a lower price point than the RABBIT®. While considering names that would relate to RABBIT®, Bob Larimer, Metrokane's Marketing Director, recalled that his children had a rabbit that they named "Houdini" due to its ability to escape from various enclosures. The new product line was branded HOUDINI based on this connection, and because it "works like magic" by requiring significantly less physical exertion and coordination to remove the cork. At the time the product was named, Mr. Larimer had never heard of Plaintiff Houdini, Inc. (Declaration of Robert Larimer ("Larimer Decl."), ¶ 3.)

The HOUDINI corkscrew was first introduced at a trade show in January 2002 and shipped nationwide to customers in April 2002. Every package also contained a "HOUDINI Foil Cutter" with the HOUDINI name imprinted on it. (*Id.*, ¶ 4.)

The product met with great success, and Metrokane promptly introduced other wine accessory products under the HOUDINI family of marks. In 2002, Metrokane sold the "HOUDINI Wine Tool Kit," which contained a lever corkscrew, foil cutter, wine/champagne sealer and drip-stop ring. In 2003, Metrokane added to the HOUDINI brand family with the introduction of the "HOUDINI Wine Preserver," a vacuum pump with 2 stoppers. In 2004, Metrokane introduced the "HOUDINI Gift Set," which contained the lever pull corkscrew, a foil cutter, wine/champagne sealer and drip-stop ring. All of these products were designed, produced and brought to market before Metrokane ever heard of Houdini, Inc. (*Id.*, ¶ 6.)

W02-EAST:1DAF1\200108305.1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    The HOUDINI corkscrew is currently sold in a clear plastic case which

2    prominently displays the HOUDINI trademark in stylized lettering on both the front

3    and back of the package, along with the METROKANE trademark (*id.,* ¶ 7):




13    The HOUDINI corkscrew has an MSRP of $30.00, while the HOUDINI ZIP KIT,

14    which includes a foil cutter, additional spiral and accessories, retails for $50.00. The

15    HOUDINI Wine Preserver lists for $12.00, as shown below. (*Id.,* ¶ 8.)





23    By comparison to these premium products and pricing, the simple pocket

24    corkscrew that Plaintiff drops into certain gift baskets as a "trinket" costs it around

25    $1.00. (*See* Declaration of Robert J. Schoenberg ("Schoenberg Decl."), Exhibit 2,

26    attaching Deposition of Daniel M. Maguire, at 38:21-25.)

W02-EAST:1DAF1\200108305.1                MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
                                          TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**B.** <u>Metrokane's Sales Revenues and Advertising Expenses</u>

Sales of Metrokane's HOUDINI corkscrew products were brisk from the start. From July to December of 2002, Metrokane sold 40,946 HOUDINI corkscrew products, worth over $1,000,000. In its first year, Metrokane spent approximately $30,000 to $40,000 on advertising the HOUDINI corkscrew in major print publications such as *Ladies Home Journal*, *Good Housekeeping*, and *Redbook*. Shortly thereafter, Metrokane spent between $100,000 and $150,000 on a print campaign in these same publications advertising HOUDINI corkscrew products. (Declaration of Joel Grossman ("Grossman Decl."), ¶ 3.)

In 2003, sales of HOUDINI corkscrew products totaled more than $1,600,000 on the sale of nearly 103,000 units. That year, Metrokane spent more than $150,000 advertising the HOUDINI brand on cable television nationwide. (*Id.*, ¶ 4.)

In 2004, sales of HOUDINI corkscrew products increased to $2.2 million on the sale of 161,870 units. Cable advertising for the HOUDINI corkscrew increased to $183,324 in 2004. In 2005, sales of the HOUDINI corkscrew products further increased to 425,755 units worth more than $3,800,000. Since 2002, consumers have been able to purchase HOUDINI brand products online using Metrokane's website and, more recently, through Amazon.com. (*Id.*, ¶ 5.)

Sales of HOUDINI corkscrew products in 2006-2008 reflect yet further growth and consumer recognition. All told, Metrokane has sold <u>more than $10,000,000</u> worth of corkscrews and products under the HOUDINI trademark. (*Id.*, ¶ 6.)

The primary retailers of Metrokane's HOUDINI corkscrews and related products are the large national retailers Kohl's, Target and Linens 'N Things. Other retailers, such as Costco, Inc., have purchased the higher-end RABBIT® corkscrews, but <u>not</u> Metrokane's HOUDINI corkscrew products. (Larimer Decl., ¶ 9.)

Metrokane has <u>never</u> received a report of consumer or retailer confusion concerning its products and those sold by Plaintiff herein. (*Id.*, ¶ 10.)

EXHIBIT *D* -4-
PAGE 25

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  ## C.    Plaintiff Houdini, Inc.

2    Plaintiff's use of the trade name "Houdini, Inc." is exclusively through its

3  wholesale design and distribution services made available to a handful of large

4  national warehouse type stores and not intended to be used in retail sales.[1]  Plaintiff's

5  wholesale business is seasonal: It designs, assembles and distributes gift baskets,

6  pursuant to wholesale customer specifications and requirements, <u>primarily for the</u>

7  <u>Christmas season.</u>  (*See* Schoenberg Decl., Exhibit 3, Maguire Dep., Tr. 7:21 – 8:2).

8    Plaintiff does not claim to manufacture or place its "Houdini" brand on

9  corkscrews, nor does it produce or place its brand on wine or wine accessories.

10  Instead, its wholesale customers have the option of choosing from numerous name

11  brand items to include in the basket, such as Ghirardelli® chocolate, Starbucks® coffee

12  and Beringer® wines.  The resulting gift baskets are typically named after the most

13  prominent brand name product in the basket, such as "Indulgent Ghirardelli

14  Treasures," "Antinori 'Santa Cristina' Gift Basket" or "Beringer 3 Pk."  (Schwartz

15  Decl., Exhibit E, page 61.)  In its wine themed baskets, "you'll typically find two

16  bottles of wine, some cheese, crackers and <u>little trinkets</u> like wine charms or cheese

17  knife, a plate [or] corkscrew."  (Schoenberg Decl., Exhibit 2, Maguire Dep., Tr. 11:5-

18  10) (emphasis added).)

19    Importantly, Plaintiff's motion papers offer no proof that any gift baskets sold

20  prior to April 16, 2002 contained a corkscrew with the "Houdini" trade name affixed

21  thereto.  To the contrary, Plaintiff's CFO testified that the small UPC labels attached

22  to the bottom or side of the baskets <u>were first created in 2004</u>, two years <u>after</u>

23  Metrokane first sold its HOUDINI corkscrews nationwide (April 2002).  (*See*

24  Schwartz Decl., Exhibit B, page 33, Tr. 16:4-13, referring to the two pages of labels

25  attached to the Schwartz Decl. as Exhibit E).

26

---

27  [1]  Plaintiff's CFO testified that his company does "not [sell] under the name Houdini" to

28  consumers.  Rather, it "sell[s] products to consumers under the name Wine Country Gift
Baskets.  That's our retail store."  (Schoenberg Decl., Exh. 2, Maguire Dep., Tr. 23:7-11.)

EXHIBIT _D_
PAGE _26_

1    On the Plaintiff's web site, *www.houdiniinc.com*, no corkscrews or any other

2    related items are displayed. The Houdini website consists of little more than a

3    welcome page and a link to its sister company, Wine Country Gift Baskets.  All other

4    links on the page to food or gift products are nonfunctional.  (Schoenberg Decl., ¶ 8.)

5    Despite the six years that Metrokane has used the Houdini trademark with

6    corkscrews, Plaintiff admits that it can cite <u>no instance of actual confusion</u> between

7    Metrokane's HOUDINI trademark and Plaintiff's trade name.  (Pl. Br. at 13.)

8    ### III.  PROCEDURAL HISTORY

9    Metrokane filed an application to register the HOUDINI trademark on August

10    29, 2001, under 15 U.S.C. § 1051(b), based on an intent to use the mark in connection

11    with "corkscrews" in International Class 21.  Metrokane's application was approved

12    by the PTO Trademark Examining Attorney and published for opposition on

13    December 18, 2001 in the PTO's Official Gazette.  No oppositions were filed against

14    the application.  The PTO granted Metrokane's application and issued Registration

15    No. 2687530 (the "'530 Registration") to Metrokane on February 11, 2003, based on

16    first use on January 13, 2002, and first use in commerce on April 16, 2002.  (*See*

17    Schoenberg Decl., ¶¶ 4-5, Exh. 1.)

18    On September 28, 2004, Plaintiff's counsel sent Metrokane a letter demanding

19    that it cease and desist use of the HOUDINI mark, thus demonstrating the last arguable

20    point in time that Plaintiff had actual knowledge of Metrokane's use of the mark.

21    On June 21, 2005, Plaintiff filed its own applications with the PTO to register

22    the mark "Houdini," as used in connection with "gift baskets and gift packages

23    containing food, beverages and/or household items, namely, corkscrews, coasters,

24    wine glasses, mugs, dishes, cutting boards, cheese spreaders, bath brushes and bath

25    sponges" (Serial No. 78655512), and "gift baskets and gift packages consisting

26    primarily of wine" (Serial No. 78655517).  Plaintiff's applications were rejected by

27    the PTO Trademark Examining Attorney on the grounds that its claimed "Houdini"

28    marks were likely to cause confusion with Metrokane's pre-existing '530 Registration.

EXHIBIT _D_   -6-

PAGE _22_

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    On July 13, 2005, Plaintiff filed with the Trademark Trial and Appeal Board

2 ("TTAB") a Petition to Cancel Metrokane's '530 Registration, claiming prior use of

3 the "Houdini" mark in connection with its gift basket design services.  The Petition

4 was assigned Cancellation No. 92044725.  On May 1, 2008, TTAB issued its decision

5 granting Plaintiff's petition for cancellation of the '530 Registration.

6    Just days after TTAB issued its ruling, on May 9, 2008 – more than six years

7 after Metrokane first used its HOUDINI mark in commerce in connection with

8 corkscrews and five years after the issuance of Metrokane's '530 Registration –

9 Plaintiff filed this Complaint seeking *for the first time* to enjoin Metrokane's use of

10 the HOUDINI mark.

11    On June 27, 2008, Metrokane timely filed an appeal of the TTAB decision,

12 pursuant to 15 U.S.C. Sec. 1071(b), which is pending before the United States District

13 Court for the Southern District of New York, Civil Action No. 08-5841 (NRB).

14    **IV.  THE PRELIMINARY INJUNCTION STANDARD IS NOT MET**

15    Given the number of years that Metrokane has used its HOUDINI mark in

16 commerce without actual confusion, the successful brand that it has built around that

17 mark, Plaintiff's constructive and actual knowledge of that use, and Plaintiff's failure

18 to present proof of imminent harm or quantification of damages allegedly incurred,

19 there is no basis for the Court to grant preliminary injunctive relief that would

20 effectively close down Metrokane's HOUDINI line of barware products.

21 A.    **Legal Standard**

22    A preliminary injunction is an "extraordinary remedy." *Shelton v. National*

23 *Collegiate Athletic Ass'n*, 539 F.2d 1197, 1199 (9th Cir. 1976), and "'the right to

24 relief must be clear and unequivocal.'" *Salt Lake Tribune Publishing v. AT&T Corp.*,

25 320 F.3d 1081, 1099 (10th Cir. 2003).  Here, Plaintiff has failed to demonstrate that

26 such a drastic remedy is warranted.

27    The Ninth Circuit has described the test for preliminary injunctive relief in two

28 ways.  Under the traditional criteria, a plaintiff must show:  (1) a strong likelihood of

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1 success on the merits; (2) irreparable injury to the movant if relief is not granted; (3) a

2 balance of hardships favoring the movant; and (4) advancement of the public interest

3 (in certain cases). *Save our Sonoran, Inc. v. Flowers, Inc.*, 408 F.3d 1113, 1120 (9th

4 Cir. 2005). Alternatively, a court may grant the injunction if the movant demonstrates

5 either: (1) a probability of success on the merits combined with a possibility of

6 irreparable harm if the relief is denied; or (2) serious questions regarding the merits

7 have been raised and the balance of the hardships tip sharply in the movant's favor.

8 *Id.*; *Tillamook County v. U.S. Army Corp. of Engineers*, 288 F.3d 1140, 1143 (9th Cir.

9 2002). These two formulations "represent two points on a sliding scale in which the

10 required degree of irreparable harm increases as the probability of success decreases."

11 *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

12      Under any formulation of the test, the movant must demonstrate the existence

13 of a significant threat of irreparable harm that is "immediate." *Caribbean Mar. Serv.*

14 *Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Oakland*, 762 F.2d at 1376.

15 Mere risk of irreparable harm in the indefinite future is insufficient; the harm must be

16 imminent. *Church v. Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994); *Campbell Soup*

17 *Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3rd Cir. 1992). Any presumption of

18 irreparable injury is rebutted by delay in seeking a preliminary injunction because a

19 party's "long delay before seeking a preliminary injunction implies a lack of urgency

20 and irreparable harm." *Oakland Tribune*, 762 F.2d at 1377; *see also Merle Norman*

21 *Cosmetics, Inc. v. Martin*, 1990 WL 131758 at *2 (9th Cir. 1990) ("[I]n spite of the

22 fact that appellant may prevail on the merits, the fact that it waited for several years to

23 sue on the debt counsels against issuing a preliminary injunction . . . .").

24      In asserting irreparable harm, Plaintiff relies upon case law holding that, where

25 a plaintiff in an infringement action establishes a likelihood of confusion, irreparable

26 harm is presumed. (Pl. Br. at 15.) This case law, however, precedes the United States

27 Supreme Court's recent landmark holding in *eBay, Inc. v. MercExchange, L.L.C.*, 547

28 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), in which the Supreme Court

**EXHIBIT _D_-8-**
**PAGE _77_**

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1 specifically rejected any categorical rule that permanent injunctive relief is

2 automatically available once a patent holder establishes infringement and validity. To

3 the contrary, such relief should depend upon equitable considerations that are

4 incorporated into the test for a preliminary injunction. *Id.* at 393-94. The Court

5 furthermore suggested that its ruling was not limited to patent cases, but should be

6 applied in other cases governed by traditional principles of equity. *Id.* at 394.[2]

7       While the *eBay* decision involved a request for a permanent injunction, many

8 district courts interpreting *eBay* have concluded that its holding is even more relevant

9 in the context of a preliminary injunction, which requires a showing of likelihood of

10 success on the merits rather than actual success.[3] In *Adir Int'l, LLC v. Unicomer S.A.*

11 *de C.V.*, Case No. 07-1314, at *39 n.103 (C.D. Cal., Nov. 19, 2007), the Hon.

12 Margaret M. Morrow, U.S.D.J., held: "If irreparable harm cannot be presumed in the

13 case of a trademark holder who has conclusively demonstrated to the trier of fact that

14 his mark has been infringed, a fortiori it should not be presumed in the case of a

15 trademark holder who has shown only likely infringement based on the under-

16 developed factual record available at the preliminary injunction stage."

17       Here, Plaintiff's Motion must be denied because it fails to demonstrate both

18 irreparable harm and a likelihood of success on its trademark infringement claim.

19 **B.**    **Plaintiff's Delay Demonstrates a Lack of Irreparable Injury**

20       Plaintiff's delay in bringing this case alone defeats its assertions of irreparable

21 harm. Metrokane has used the HOUDINI mark in commerce in connection with its

22 lever pull corkscrews and barware since April 2002. (Larimer Decl., ¶ 4.) Even if

23

---

24 [2] *See also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006) (citing the *eBay* holding within the context of a request for a permanent injunction); *Abend v.*

25 *MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988) ("[A]n injunction is a 'harsh and drastic' discretionary remedy, never an absolute right."); *Metro-Goldwyn-Mayer Studios, Inc.*, 518 F.

26 Supp. 2d 1197, 1211 (C.D. Cal. 2007) (finding, in a post-*eBay* copyright infringement case, that there is no presumption of irreparable harm based on a finding of liability).

27 [3] *See, e.g., Erico Int'l Corp. v. Doc's Marketing, Inc.*, 2007 WL 108450 at *7 (N.D. Ohio

28 Jan. 9, 2007); *Canon, Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 254 (S.D.N.Y. 2006).

-9-

EXHIBIT *D*
PAGE *80*

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1 Plaintiff did not become immediately aware of Metrokane's use of the mark at that

2 point, the issuance of the '530 Registration in February 2003 put Plaintiff on

3 constructive notice. *See* 15 U.S.C. § 1072 ("Registration of a mark on the principal

4 register provided by this Act . . . shall be constructive notice of the registrant's claim

5 of ownership thereof."). Thus, February 2003 marks *the latest point* that Plaintiff

6 should have known of Metrokane's use of the HOUDINI mark. Rather than

7 immediately seeking to enjoin Metrokane's use of the mark at that time, Plaintiff

8 allowed five years to pass before seeking injunctive relief. During that time,

9 Metrokane dramatically expanded the marketing and sales of its Houdini corkscrews

10 and related barware. (Grossman Decl., ¶¶ 4-6.) This is the antithesis of irreparable

11 harm. Nor does Plaintiff define any new imminent harm warranting immediate relief.

12       The deliberate nature of Plaintiff's delay in seeking injunctive relief is

13 underscored by its decision to seek cancellation of Metrokane's '530 Registration in

14 July 2005 *before the TTAB rather than in a federal court*. The TTAB does not have

15 the authority to grant injunctions or award damages based on claims of trademark

16 infringement; its jurisdiction is limited to the issuance, renewal and cancellation of

17 trademark registrations. *See Rhoades v. Avon Products, Inc.*, 504 F.3d 1151 (9th Cir.

18 2007) (TTAB cannot award injunctive or damages relief on an infringement claim);

19 15 U.S.C. §§ 1063(a), 1064, 1067(a). Federal district courts, by contrast, have the

20 authority to both enjoin the use of a mark and cancel its registration. *See* 15 U.S.C.

21 §§ 1116, 1119, 1121(a). Thus, upon learning of Metrokane's use of HOUDINI, had

22 Plaintiff felt a genuine threat of irreparable harm, it could have sought *both remedies*

23 by pursuing Metrokane in federal court at that time. Its conscious decision to pursue

24 Metrokane in a forum that cannot grant injunctive relief or award damages is a

25 revealing testament to the absence of any "irreparable harm."

26 **C.**   **Plaintiff Has Failed to Demonstrate a Probability of Success on the Merits**

27       Under the sliding scale standard for a preliminary injunction, Plaintiff's failure

28 to demonstrate irreparable harm requires a particularly strong showing that it will

1  succeed on the merits of its infringement claim.  *Oakland Tribune*, 762 F.2d at 1376.

2  That showing, however, is also absent here.  Plaintiff's unreasonable delay in bringing

3  this claim not only undercuts its assertions of irreparable harm, but, more broadly,

4  evidences laches, which provides a complete defense to the infringement claim.  Even

5  if laches were not evident from the factual record, Plaintiff has failed to demonstrate

6  that purchasers of Metrokane's HOUDINI premium barware products would be

7  confused into thinking that those products are sold by a gift basket company.

8      **1.**    **Laches Defeats Plaintiff's Infringement Claim**

9          Laches is an equitable time limitation on a party's right to bring suit, based on

10  the maxim that "one who seeks the help of a court of equity must not sleep on his

11  rights."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir.),

12  *cert. denied*, 537 U.S. 1047 (2002).  It is well established that laches is a defense to

13  Lanham Act claims.  *Id.*

14          The limitations period for laches starts at the time a plaintiff knows or should

15  have known about its potential cause of action.  *Tillamook Country Smoker, Inc. v.*

16  *Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).  Here, such

17  period would have commenced, at the latest, upon the issuance of Metrokane's '530

18  Registration in February 2003, at which time Plaintiff was on constructive notice of

19  Metrokane's claim to ownership of the mark.  *See E-Systems, Inc. v. Monitek, Inc.*,

20  720 F.2d 604, 607 (9th Cir. 1983) (using the registration date as the beginning of the

21  laches period); 15 U.S.C. § 1072.

22          Given the absence of a limitations period in the Lanham Act, to determine when

23  the laches period expires, courts determine the limitations period for the most closely

24  analogous action under state law.  *Tillamook*, 465 F.3d at 1108.  If the plaintiff files

25  suit outside that period, there is a presumption that laches has been demonstrated.  *Id.*

26          In California, the companion statutes to the Lanham Act are California Business

27  and Professions Code § 17208 and California Civil Procedure Code § 343, which set a

28  *four year* statute of limitations.  *See, e.g., Eliminator Custom Boats v. American*

W02-EAST:1DAF1\200108305.1      MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  *Marine Holdings, Inc.*, No. ED CV 06-15-VBP (Ex), 2007 U.S. Dist. LEXIS 96414,

2  at *7 (C.D. Cal. Nov. 5, 2007) ("Here, the claims are for trademark infringement and

3  unfair competition. The four-year period is therefore more closely analogous to the

4  claims at issue here.") (citing both Cal. Civ. Proc. Code § 343 and Cal. Bus. & Prof.

5  Code § 17208); *Miller v. Glenn Miller Prods.,* 318 F. Supp. 2d 923, 942 n.11 (C.D.

6  Cal. 2004) (same), *aff'd,* 454 F.3d 975 (9th Cir. 2006). Because Plaintiff failed to

7  seek an injunction until more than *five years* had passed after constructive notice of

8  Metrokane's use of the HOUDINI mark, its claims are beyond the statute of

9  limitations for trademark infringement and, therefore, laches must be presumed.

10        The court must then balance six factors to determine whether the plaintiff's

11  delay in filing suit was unreasonable, thus barring the suit: (1) the strength and value

12  of the trademark rights asserted; (2) the plaintiff's diligence in enforcing the mark; (3)

13  the harm to the plaintiff if relief is denied; (4) good faith ignorance by the defendant;

14  (5) competition between the parties; and (6) the extent of harm suffered by the

15  defendant because of the plaintiff's delay. *Tillamook,* 465 F.3d at 1108; *E-Systems,*

16  720 F.2d at 607. All of these factors weigh in Metrokane's favor.

17        **a.**    **Plaintiff's Mark Is Weak**

18        As the sole basis for the purported strength of its mark, Plaintiff submits the

19  undisputed fact that "Houdini" is a "distinctive" mark in the context of gift basket

20  design and distribution services (as it is in the context of corkscrews and other

21  barware). (Pl. Br. at 11.) This does not end the inquiry, however. As explained in

22  the preeminent treatise on trademarks: "The ultimate test of relative strength is the

23  distinctiveness of a mark *in the mind and perception of the relevant consumer group.*"

24  MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION, § 11:85 (2001) (emphasis

25  added); *see also Reno Air Racing Ass'n,* 452 F.3d at 1136 ("the legal question is not

26  whether the marks look similar to us but whether they look similar to ordinary

27  consumers" of the products) (quoting *Scandia Down Corp. v. Euroquilt, Inc.,* 772

28  F.2d 1423, 1428-29 (7th Cir. 1985)).

EXHIBIT *D* -12-

W02-EAST:1DAF1\200108305.1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    Here, Plaintiff has not presented any evidence to suggest that the reasonable

2  consumer should associate "Houdini" with Plaintiff's gift baskets.  Importantly, all of

3  Plaintiff's retail sales are handled through the website of its sister company, WCGB,

4  *www.winecountrygiftbaskets.com*.  (*See* Schwartz Decl., Ex. F.)  Plaintiff does not sell

5  gift baskets under the "Houdini" name on that site; indeed nowhere on that site can the

6  "Houdini" name be found.  Accordingly, to the extent that Plaintiff claims use of the

7  name "Houdini," it can only be in connection with the sale of its design, assembly and

8  distribution services to its wholesale customers, who in turn sell the gift baskets in

9  their stores to the consuming public.

10    Plaintiff's wholesale corporate customers, such as Costco and Sam's Club, are

11  sophisticated and familiar with their vendors.  They not only order baskets from

12  Plaintiff on a regular basis, but also participate in the process of selecting the type,

13  content and price of baskets they believe would be most attractive to their shoppers.

14  Their ongoing interactions and negotiations with Plaintiff as a vendor, and resulting

15  familiarity with its design services, render them unlikely to confuse Plaintiff with a

16  manufacturer of barware and other housewares such as Metrokane.  Nor has Plaintiff

17  presented any evidence that Costco, Sam's Club, or any other wholesaler has actually

18  experienced such confusion.

19    In an attempt to prove that it used its trade name in connection with corkscrews

20  before Metrokane sold its first HOUDINI corkscrew in April 2002, Plaintiff offers a

21  sheet of UPC labels, marked as Exhibit E to the Schwartz Declaration.  (Schwartz

22  Decl., ¶ 3; Pl. Br. at 4.)  But Plaintiff's CFO testified that the UPC labels were <u>first</u>

23  <u>created in 2004</u>, two years after Metrokane first sold its HOUDINI corkscrew

24  nationwide (April 2002).  (*See* Schwartz Decl., Exhibit B, page 33, Tr. 16:4-13).

25    Nor is there any evidence showing that these labels were placed "prominently"

26  on the basket for the average consumer to see and appreciate.  Given that the labels

27  shown in Exhibit E are small in actual size (1.75" by 2.75"), use the "Houdini" name

28  in particularly small font, and bear the product's UPC symbol, it remains to be seen

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  why any reasonable consumer would notice the contents of the label, rather than

2  focusing on the name brand products contained in the basket.

3       Plaintiff has also failed to provide any example of the "point of sale markers"

4  that certain wholesale sellers of Plaintiff's baskets purportedly used before April 2002.

5  (Pl. Br. at 4.)  Accordingly, it is impossible for this Court to determine their size,

6  prominence, or purpose and, therefore, their conspicuousness to the consuming public.

7  Finally, Plaintiff does not even claim to engage in any promotion or advertising of its

8  gift baskets to the consuming public under the name "Houdini" that would generate an

9  association in the public's mind with its gift basket services.  Nor has Plaintiff

10  presented any survey evidence of such an association.

11          **b.**    **Plaintiff Failed to Enforce Its Mark**

12       By delaying the commencement of this suit for five years following

13  constructive notice of Metrokane's use of the mark, Plaintiff was anything but diligent

14  in policing its mark.  Plaintiff's action before the TTAB does not mitigate this failure.

15  As discussed above, by electing to pursue cancellation of the '530 Registration before

16  the TTAB (which cannot impose injunctive relief) rather than in a federal court

17  (which can grant cancellation, injunctive relief and damages), Plaintiff went out of its

18  way to delay the claim that it now belatedly brings before this Court.

19          **c.**    **Plaintiff Would Suffer No Harm if this Motion is Denied**

20       Although Plaintiff claims that its goodwill will suffer without a preliminary

21  injunction (Pl. Br. at 14), it has presented no evidence to support that claim, or to

22  demonstrate any damages it has suffered over the past six years that Metrokane has

23  used the HOUDINI mark in commerce, expanded its HOUDINI line of barware

24  products, and dramatically increased its advertising and sales.  To the contrary, the

25  evidence shows that, despite Metrokane's six years of use, Plaintiff has become or

26  remained the "second largest distributor of gift baskets in the country."  (Pl. Br. at 1.)

27  Indeed,  Plaintiff brags about its expansion over time and the growth of its annual

28  sales to "approximately 1 million baskets . . . based on quality, value and

1  deliverability." (Pl. Br. at 5). Plaintiff's Chief Financial Officer proudly attests that

2  Plaintiff "has a very good reputation. Pristine reputation for quality and value." (*Id*.)

3  And despite those six years of Metrokane's use of the mark, Plaintiff presents not a

4  single instance of actual confusion by a customer mistaking one party for the other or

5  otherwise suggesting any damage to Plaintiff's "pristine" reputation. The inevitable

6  conclusion is that if preliminary injunctive relief is denied, Plaintiff will suffer

7  absolutely nothing and will continue to operate a successful gift basket company.

8           **d.**    **Metrokane Adopted the HOUDINI Mark in Good Faith**

9          Nor has Plaintiff presented any evidence suggesting that Metrokane adopted the

10  HOUDINI mark with knowledge of Plaintiff's use or in any bad faith attempt to harm

11  Plaintiff's business. To the contrary, in his Declaration, Metrokane Marketing

12  Director Bob Larimer attests that he selected the HOUDINI name for Metrokane's

13  line of barware based on (i) the name of his children's pet, (ii) because the corkscrew

14  worked "like magic," and (iii) to complement Metrokane's existing RABBIT® line of

15  corkscrew products. (Larimer Decl., ¶ 3.) Metrokane was not aware of Plaintiff's

16  existence until it received a letter from Plaintiff's attorney, dated September 28, 2004.

17  (*See* Schwartz Decl., Ex. K, at 145.) This is not surprising, given that Metrokane's

18  August 29, 2001 application to register the HOUDINI mark was met with no

19  opposition either from the PTO examiner or any third party upon the publication of

20  the proposed mark in the PTO Official Gazette in December 2001. (Schoenberg

21  Decl., ¶¶ 4-5, Exh. 1).

22           **e.**    **Plaintiff and Metrokane Do Not Compete**

23          The parties' businesses are not competitive in any respect. Metrokane's

24  HOUDINI line is "hardware" for wine drinkers. It includes a premium lever pull

25  corkscrew in a Lucite® storage case, foil cutters, metal wine stand to use in

26  conjunction with the corkscrew, wine rack, wine preserver, stoppers, and an eight-

27  piece "Zip Kit" that includes most of these items. (Larimer Decl., ¶¶ 6-8.)

28

**EXHIBIT** *D* -15-

**PAGE** *86*

1   By contrast, Plaintiff designs, assembles and distributes a wide variety of

2   themed gift baskets which contain baby-related items, personal care items (such as

3   lotions, creams, and other spa items), consumable goods (such as gourmet foods,

4   coffee, soda and wines), and "trinkets" that assist the purchaser in consuming the

5   items in the basket.  (Schwartz Decl., Ex. F; *www.winecountrygiftbaskets.com*.)

6   Plaintiff does not manufacture any of the items in the basket, but rather entices

7   purchasers with well known name brands such as Ghirardelli® and Godiva®

8   Chocolate, Starbucks® Coffee, Coca-Cola® and Mondavi® Wine that are

9   aesthetically packaged into the basket.   (Schwartz Decl., Ex. F.)  Although Plaintiff

10  may include a cheap pocket corkscrew in some of its wine baskets to assist the

11  purchaser in opening the wine bottles packaged in the basket (Schoenberg Decl.,

12  Exhibit 2, Maguire Dep., Tr. 11:5-10), Plaintiff is certainly not in the business of

13  selling barware – particularly not barware of the premium quality and stylized design

14  characteristic of Metrokane's HOUDINI line.  Accordingly, the parties are not

15  competitors.

16          **f.       Metrokane Would Suffer Severe Harm if the Motion Is Granted**

17          While Plaintiff would continue its "business as usual" if injunctive relief were

18  denied, Metrokane's multi-million dollar HOUDINI line would be effectively "closed

19  for business."  A defendant can make the required showing of prejudice by proving

20  "that it has continued to build a valuable business around its trademark during the time

21  that the plaintiff delayed the exercise of its legal rights."  *Grupo Gigante SA DE CV v.*

22  *Dallo & Co., Inc.*, 391 F.3d 1088, 1105 (9th Cir. 2004); *Whittaker Corp. v. Execuair*

23  *Corp. et al.*, 736 F.2d 1341, 1347 (9th Cir. 1984) (defendant sufficiently demonstrated

24  detrimental reliance by continuing its existing business practices and by purchasing

25  equipment and parts to expand its business).

26          This standard is certainly met here.  Plaintiff's requested relief would require

27  Metrokane to pull all the HOUDINI products currently on store shelves, dispose of

28  thousands of them that physically bear the HOUDINI mark on the product itself and

EXHIBIT D -16-

PAGE 82

W02-EAST:1DAF1\200108305.1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1   dispose of all the product cases and packaging. Even more importantly, Metrokane

2   would permanently lose the business of its major customers, which amounts to

3   millions of dollars annually, devastating Metrokane financially and making it difficult

4   for Metrokane to stay in business. (Larimer Decl., ¶ 12.) It would be the height of

5   inequity to permit Plaintiff to shut down Metrokane's successful HOUDINI product

6   line and its entire business – effectively granting it *permanent* injunctive relief – based

7   on what Judge Morrow properly described as "the under-developed factual record

8   available at the preliminary injunction stage." *Adir, supra* at 9.

9        Based on the foregoing, all of the six factors in the laches analysis lead to the

10   conclusion that Plaintiff's unjustifiable delay defeats its infringement claim.

11       **2.**     **There Is No Likelihood of Confusion**

12        Even if Plaintiff's claim survived Metrokane's laches defense – which it should

13   not – Plaintiff is still unlikely to prevail on its claim that Metrokane's use of the

14   HOUDINI mark would likely create confusion as to the source of its barware.

15        The test for likelihood of confusion was articulated in *AMF, Inc. v. Sleekcraft*

16   *Boats*, 599 F.2d 341 (9th Cir. 1979), which set forth the following eight non-exclusive

17   factors for consideration: (i) the strength of the mark; (ii) the proximity of the

18   services; (iii) the similarity of the marks; (iv) evidence of actual confusion; (v) the

19   marketing channels used; (vi) the type of services and degree of care likely to be

20   exercised by a purchaser; (vii) the intent of the defendant; and (viii) the likelihood of

21   expansion of the product lines. *Id.* In the Ninth Circuit, these factors must not be

22   rigidly weighed but must be balanced and adjusted to fit each case: "The list of

23   factors is not a scorecard – whether a party 'wins' a majority of the factors is not the

24   point." McCarthy § 24.39 (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d

25   894 (9th Cir. 2002)). In particular, in the court's consideration of preliminary

26   injunctive relief (as opposed to at trial), it need not consider all the *Sleekcraft* factors,

27   in light of the undeveloped nature of the factual record at this stage of the case. *Apple*

28   *Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521 (9th Cir. 1984).

EXHIBIT D 17

PAGE 88

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    Consideration of these factors shows that, based upon the factual record before

2    this court, there is no likelihood of confusion warranting preliminary injunctive relief.

3    Because the following discussion of the *Sleekcraft* factors necessarily overlaps with

4    certain aspects of the laches analysis set forth above, Metrokane will reference those

5    prior discussions, rather than reiterate them, to avoid burdening the Court with

6    duplicative argument.

7              **a.    Plaintiff's Mark Is Weak**

8    For the reasons set forth in pages 12-14, *supra*, there is no reason to believe that

9    the consumer public associates the "Houdini" name with gift baskets, and as such, the

10   mark is weak with respect to individual consumers. Although Plaintiff's large

11   wholesale purchasers are certainly far more likely to associate "Houdini" with

12   Plaintiff's gift basket design business, they are also far too sophisticated to confuse

13   Plaintiff with Metrokane's HOUDINI line of barware.

14             **b.    Metrokane's HOUDINI Line of Barware Is Not "Proximate"**

15                    **to Plaintiff's Gift Basket Design Services**

16   This factor assesses to what extent the purchasing public could reasonably

17   believe that the parties' products came from the same source if sold under the same or

18   similar marks. *Sleekcraft,* 599 F.2d at 348 n.10, 350. Such a belief is less likely to be

19   reasonable where, as here, the products are not competing. *Id.* at 348.

20   As discussed above, Plaintiff and Metrokane are not competitors. Metrokane

21   makes corkscrews, wine accessories, other barware, and housewares. Plaintiff designs

22   and assembles gift baskets of many varieties that it fills with food, beverages, and

23   other consumable items manufactured by other companies, many of whom, like

24   Starbucks®, Godiva®, Ghirardelli®, and Coca-Cola®, have very strong marks in the

25   products that Plaintiff packages into its baskets. Due to the significant differences in

26   the businesses of Plaintiff and Metrokane, it defies logic to suggest that consumers

27   would think that Plaintiff, a gift basket company (Pl. Br. at 1), has now started

28   manufacturing and selling lever pull corkscrews and other premium barware, rather

W02-EAST:1DAF1\200108305.1        MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
                                  TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  than the "trinkets" it stuffs into some baskets.  Nor it is reasonable to suggest that

2  consumers would think that Metrokane, a company that has always made premium

3  quality corkscrews and other barware, would start selling food, wine and spa products.

4       For this reason, Plaintiff's reliance on *E&J Gallo Winery v. Gallo Cattle Co.*,

5  967 F.2d 1280 (9th Cir. 1992), is misplaced.  In *Gallo*, the famous Gallo winery, owned

6  by brothers Ernest and Julio Gallo, sued the youngest brother, Joseph Gallo, who had

7  established Gallo Cattle Company and started selling consumer-size packages of

8  cheese for the retail market under the GALLO name.  *Id.* at 1285.  The Court found

9  that wine and cheese are "complementary goods" because they are "frequently served

10  and promoted together in wine and cheese tastings and parties," and as a result there

11  was a heightened danger of consumer confusion where a business that makes wine

12  and a business that makes cheese share the same GALLO name.  *Id.* at 1291.

13       That is not the case here.  There is nothing complementary by nature about

14  Metrokane's barware and Plaintiff's food, wine and spa gift baskets.  While some of

15  the gift baskets that Plaintiff assembles may contain wine and wine accessories

16  (including $1 pocket corkscrews), Plaintiff, unlike the plaintiff in *Gallo*, does not

17  make the wine or the accessories or place its trade name on the accessories.  Nor is

18  there any basis for consumers to believe – or any proof that they do believe – that

19  Plaintiff makes wine or wine-related barware.  As Plaintiff's UPC labels state, the

20  baskets are merely "Packed by" Plaintiff.  (Schwartz. Decl., Ex. E.)

21       Plaintiff's entire claim can be boiled down to the simple notion that, because it

22  packs wine and wine accessories into some of its baskets, no other company can use

23  the "Houdini" name in connection with wine-related items.  By this logic, Plaintiff

24  should also be able to prevent others from selling a "Houdini" bath sponge because

25  Plaintiff includes bath sponges manufactured by a third party in some of its spa

26  baskets.  Likewise, it should be able to bar the sales of a "Houdini" stuffed animal

27  because it packs stuffed animals into its "new baby" and "teddy bear" baskets, or a

28  "Houdini" mug because it uses mugs in other gift baskets.  Plaintiff has failed to

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  provide any authority for its remarkable view that packing thousands of different third

2  party products into its gift baskets entitles it to trademark rights in connection with

3  each of those products.

4         **c.    The Marks Are Not Similar in Presentation**

5         While the marks at issue in this case both involve the word "Houdini," there are

6  significant differences in the way the parties present the marks to the consumer public

7  that would preclude consumer confusion.  In analyzing the similarity of the marks, the

8  court must view the marks as a whole, "as they appear in the marketplace."

9  *California Cooler v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985).

10        Notably, the evidence presented by Plaintiff shows that the "Houdini" name

11  barely appears to consumers "in the marketplace" at all.  Plaintiff does not use a

12  "Houdini" logo on any of its gift baskets.  The UPC labels merely show "Houdini" in

13  a non-stylized, generic font, together with the all-telling message, "Packed by

14  Houdini, Inc.," in a nearly unreadable tiny font size below the UPC Code.  (Schwartz

15  Decl., Exh. E.)  While Plaintiff also claims that the name "Houdini" is used in "point

16  of sale markers" that may be located above the gift baskets on store shelves, it has

17  failed to produce such a marker, describe its dimensions, the size of its print, its

18  proximity to the baskets, or otherwise demonstrate to the Court why the "markers"

19  should generate a public familiarity with "Houdini" in connection with gift baskets.

20        Metrokane, by contrast, uses its HOUDINI mark in a logo that is prominently

21  displayed in stylized, bold lettering on the cases and packaging of its HOUDINI line

22  of wine accessories, and on the Metrokane web pages that are dedicated to its

23  HOUDINI products.  (*See* Grossman Decl., Exhs. 1-2.)  The HOUDINI logo is also

24  printed directly onto some of the wine accessories, such as the foil cutters and wine

25  preservers.  (*See supra* at 3.)

26        As a matter of law, conflicting marks consisting of both words and design

27  elements must be compared in their entireties to determine likelihood of confusion.

28  *King of the Mtn. Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084 (10th Cir. 1999)

EXHIBIT *D*
PAGE *97*
-20-

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1 (because marks are to be compared in their entireties, even if the "dominant" parts of

2 the conflicting word-design marks are their identical words, the marks as a whole are

3 not confusingly similar).[4]  Under this standard, there is no doubt that the marks are

4 sufficiently different to prevent any likelihood of confusion between Plaintiff's gift

5 basket business and Metrokane's HOUDINI line of wine-related barware.

6  **d.**     **There Is No Evidence of Actual Consumer Confusion**

7      Plaintiff is forced to concede in its moving papers that there is a complete

8 "absence of evidence" of actual consumer confusion between Metrokane's HOUDINI

9 barware and Plaintiff's gift baskets.  (Pl. Br. at 13.)  Despite its sales of

10 "approximately 1 million" gift baskets (*id.* at 5), Plaintiff cannot point to a single

11 telephone call to its offices by a confused consumer seeking to purchase a lever pull

12 corkscrew or other barware.  It cannot produce a single email mistakenly sent to its

13 employees, or reference a single instance where a representative from a wholesale

14 customer submitted an order for Metrokane barware instead of gift baskets.  Nor has

15 Plaintiff submitted any survey evidence demonstrating the existence of such

16 confusion.  *See Gallo*, 967 F.2d at 1292.

17      The absence of evidence of actual confusion is particularly telling, given that

18 Metrokane has used the HOUDINI mark in commerce in connection with its barware

19 – with impressive and increasing sales, promotion and profit – for *over six years*.   *See*

20 *Sleekcraft*, 599 F.2d at 353 (the absence of actual confusion is weighed "heavily"

21 when "the particular circumstances indicate such evidence should have been

22 available").  As the Ninth Circuit recognized in *Brookfield Communications, Inc. v.*

23 *West Coast Entertainment Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999), "We cannot

24 think of more persuasive evidence that there is no likelihood of confusion between

25

26 _____

27 [4] This is in contrast to the comparison of two word-design marks with *similar design*
elements but *different words*, where a likelihood of confusion is more readily found.  *See,*

28 *e.g., Arnold, Schwinn & Co. v. Evans Products Co.*, 302 F.2d 765 (C.C.P.A. 1962).

W02-EAST:1DAF1\200108305.1        MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    these two marks than the fact that they have been simultaneously used for five years

2    without causing any consumers to be confused as to who makes what."

3        The absence of instances of actual confusion here therefore not only highlights

4    the lack of imminent irreparable harm to Plaintiff, but also provides the best evidence

5    that there is no likelihood of consumer confusion.

6              e.    **The Marketing Channels Used By the Parties Are Different**

7        Plaintiff broadly and wrongly asserts that, because both Plaintiff's gift baskets

8    and Metrokane's HOUDINI products are sold "in retail stores and in liquor stores,"

9    that is sufficient to conclude that their marketing channels converge.  A more careful

10   analysis reveals that is not the case.

11       First, the bulk of Plaintiff's sales are to wholesalers like Costco, Sam's Club

12   and BJ's Wholesale Club, who provide specifications for the contents and pricing of

13   the baskets they are ordering, and then resell the baskets to the public.  (Pl. Br. at 3.).

14   Accordingly, Plaintiff's wholesale customers provide input to Plaintiff regarding the

15   final product.  Metrokane's distribution of its barware to retail stores involves no such

16   collaborative process.

17       Second, the parties place markedly different emphasis on advertising.  Plaintiff

18   advertises its gift baskets only at the National Association of Food Retailers trade

19   show (Pl. Br. at 4-5), which is attended primarily by those employed in the food

20   industry.  On the opposite end of the spectrum, Metrokane devotes significant

21   resources to advertising its HOUDINI corkscrew and other barware in marketing

22   channels that are highly visible to the average American.  In its first sales year,

23   Metrokane devoted almost $40,000 to advertising the HOUDINI corkscrew in

24   national publications such as *Ladies Home Journal*, *Good Housekeeping* and

25   *Redbook*.  (Grossman Decl., ¶ 3.)  The following year, it spent between $100,000 and

26   $150,000 on an advertising campaign in these same journals for the HOUDINI

27   corkscrew products.  (*Id.*)  Metrokane spent over $160,000 in 2003 and over $180,000

28   in 2004 to advertise the HOUDINI brand on nationwide cable television.  The

EXHIBIT _D-22-_

PAGE _97_

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
                                    TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  HOUDINI corkscrew has also been featured in publications such as *Inc.* magazine.

2  (*Id.*, ¶¶ 4-5.)

3      In addition to selling its HOUDINI line at national retailers such as Kohl's,

4  Target and Linens 'N Things, Metrokane also sells its HOUDINI products through

5  Amazon.com's massive online store, which attracts approximately 50 million U.S.

6  consumers to its website monthly.  *See siteanalytics.compete.com/amazon.com*;

7  Grossman Decl., Exh. 2 (Metrokane HOUDINI products on Amazon.com).  Plaintiff,

8  by contrast, does not sell its baskets online under the name "Houdini."

9      Thus, to the extent that the average consumer would ever notice Plaintiff's use

10  of "Houdini," it would be on the UPC label placed in some inconspicuous location on

11  a gift basket, or on what Plaintiff vaguely calls "point of sale markers," the use and

12  appearance of which Plaintiff has not disclosed.  That same consumer can find

13  Metrokane's HOUDINI mark prominently displayed on the products, their packaging,

14  in major retail stores, online at Amazon.com, and advertised in major national print

15  and cable television media.  Thus, while both parties' products may be sold in retail

16  and liquor stores, the evidence suggests anything but similar channels of trade.

17      **f.    The Pocket Corkscrews in Some of Plaintiff's Baskets Do Not**

18          **Compare to Metrokane's HOUDINI Lever Pull Corkscrews**

19      In an attempt to prevail on this motion and its infringement claim, Plaintiff

20  attempts to leave the Court with the impression that consumer confusion <u>may</u> arise

21  from the fact that a few of Plaintiff's wine-themed gift baskets may contain a

22  corkscrew.  (Pl. Br. at 12.)  A proper comparison of the corkscrews, however, reveals

23  that, in truth, there is simply no comparison.  The Metrokane HOUDINI brand

24  corkscrew, like Metrokane's RABBIT® brand corkscrew, is a piece of hardware that

25  utilizes a lever to withdraw the cork from the wine bottle with little effort from the

26  user.  It retails for $30.00.  The HOUDINI Zip Kit, which contains a corkscrew and

27  other wine-related barware, retails for $50.00.  On the other hand, the corkscrews that

28  Plaintiff places in some of its gift baskets as "trinkets" are simple pocket corkscrews

1    that cost Plaintiff approximately $1.00 and are merely incidental to the famous name-

2    brand wine and food items featured in the gift baskets.  Thus, in terms of quality, the

3    two types of corkscrews are "apples and oranges."

4           **g.**     **Metrokane Adopted the HOUDINI Mark in Good Faith**

5         As discussed above, Metrokane did not adopt the HOUDINI mark for its line of

6    barware out of any disregard for or intent to harm Plaintiff's business.  Because

7    Plaintiff cannot dispute this, it attempts to paint Metrokane as a "bad actor" for

8    continuing to use the mark after Plaintiff prevailed in its cancellation proceeding

9    before the TTAB only two months ago.  (Pl. Br. at 14.)  The Ninth Circuit is clear,

10   however, that the only relevant "intent" is the defendant's intent in "selecting the

11   mark," not in continuing to use it after learning of another's use.  *Sleekcraft*, 599 F.2d

12   at 348, 354; *Gallo*, 967 F.2d at 1293.  This factor weighs in Metrokane's favor.

13          **h.**     **There Is No Likelihood that Either Party Will Expand Its Use**

14              **of "Houdini" to Compete with the Other Party**

15        Due to the complete dissimilarity between Plaintiff's and Metrokane's

16   businesses, it is highly unlikely that either would expand its use of "Houdini" into the

17   other's area of business.  Metrokane has no intention of expanding its HOUDINI line

18   to include the sale of gift baskets of consumable items such as gourmet food,

19   beverages and spa items.  (Larimer Decl., ¶ 11.)  Nor has Plaintiff expressed any

20   intention to expand its gift basket business to include selling lever pull corkscrews and

21   other high quality barware directly to consumers.   This factor therefore also weighs

22   against any likelihood of confusion.

23   **D.**    **The Balance of Hardships Weighs Against a Preliminary Injunction**

24        Through this motion, Plaintiff seeks to shut down Metrokane's entire

25   HOUDINI line, force Metrokane to forfeit the considerable goodwill it has earned

26   from that brand, forego the significant time and resources it has expended over the

27   years to promote its brand in the national media, and expend significant new sums to

28   devise a new brand identity for the HOUDINI line of barware.  Plaintiff asks the Court

---

W02-EAST:1DAF1\200108305.1

EXHIBIT *D*

PAGE 95

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  to grant this extraordinary relief despite its own inexcusable delay in filing this lawsuit

2  and motion.  Worse still, Plaintiff asks the Court to grant this relief based on nothing

3  more than speculation.  While Plaintiff claims that its goodwill in the HOUDINI mark

4  "will be irreparably and immeasurably damaged" by Metrokane's use of the

5  HOUDINI mark (Pl. Br. at 16), it has failed to provide any evidence that such use of

6  that mark has damaged Plaintiff's goodwill in any way.

7       The Court is thus presented with a remarkably tilted "balance" of harms.  If

8  Plaintiff's application is denied, Plaintiff will continue to engage in a highly

9  successful and reputable gift basket design company in the same way that it always

10  has.  But if this application is granted, Metrokane will have to shut down its

11  HOUDINI brand, incur millions of dollars in losses and face the destruction of the

12  business itself.  Metrokane respectfully submits that, based on the sparse factual

13  record that Plaintiff has provided to this Court, it has fallen far short of justifying the

14  "extraordinary remedy" of preliminary injunctive relief.

15                    V.  **CONCLUSION**

16       For the foregoing reasons, Defendant Metrokane respectfully requests that this

17  Court deny Plaintiff's Motion in its entirety.

18

19  Dated:  July 21, 2008          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

20

21            By    */s/ Darren M. Franklin*

22                         DARREN M. FRANKLIN
                           Attorneys for Defendant
23                         METROKANE INC.

24

25

26

27

28

W02-EAST:1DAF1\200108305.1     EXHIBIT _D_      MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
                               PAGE _96_        TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**
**PAGE 97**

W02-EAST:1DAF1\200108305.1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# EXHIBIT E

1    **EDWARD R. SCHWARTZ, CA Bar No. 147553**
     e-mail:  ers@cph.com
2    **CHRISTIE, PARKER & HALE, LLP**
     **350 West Colorado Boulevard, Suite 500**
3    **Post Office Box 7068**
     **Pasadena, California 91109-7068**
4    **Telephone: (626) 795-9900**
     **Facsimile: (626) 577-8800**
5
     Attorneys for Plaintiff,
6    Houdini, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   HOUDINI, INC.,                    Case No.  CV08-03076 PA (FMOx)

12              Plaintiff,             **PLAINTIFF'S REPLY IN
                                       SUPPORT OF ITS MOTION FOR
13         vs.                         A PRELIMINARY INJUNCTION**

14   METROKANE CORPORATION,            **DATE:  August 4, 2008**
                                       **TIME:  1:30 p.m.**
15              Defendant.             **CTRM:  15**

16                                     **Hon. Percy Anderson**

17

18

19

20

21

22

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP

EXHIBIT E
PAGE 98

I.     INTRODUCTION. ..................................................................................... 1

II.    FACTS. ...................................................................................................... 2

III.   ARGUMENT. ............................................................................................ 3

       A.   Houdini Did Not Unreasonably Delay In Asserting Its
            Trademark Rights Against Metrokane. ....................................... 3

            1.   Plaintiff's HOUDINI Trademark is Strong. ..................... 4

            2.   Houdini Has Diligently Enforced its Mark. ...................... 4

            3.   The Distinctiveness of Houdini's House Mark is Being
                 Diluted by Metrokane's Use of The Identical Mark. ......... 6

            4.   Metrokane's Intent in Adopting and Continuing to Use
                 The Houdini Mark. ............................................................ 7

            5.   The Parties' Products Are Competitive, Related and
                 Complementary. ................................................................. 7

            6.   Metrokane Has Not Been Harmed by Houdini's Delay
                 in Asserting Its Rights. ...................................................... 8

       B.   The Harm to Houdini From Metrokane's Use of The
            Trademark Houdini is Not Speculative. ...................................... 9

       C.   The Evidence Shows That There is a Likelihood of Confusion
            Caused By The Parties' Use of The Identical Mark For
            Competing, Related And Complementary Products. .................. 10

IV.    CONCLUSION. ...................................................................................... 11

i

EXHIBIT 5
PAGE 99

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Adir International, LLC v. Unicomer S.A. de CV*
    Case No. CV07-01314 (C.D. Cal. 2007) ..............................3, 9, 10

4

*Campbell Soup Co. v. Con Agra, Inc.,*
    977 F.2d 86 (3d Cir. 1992) ...............................................10

5

*Caribbean Maritime Serv. Co. v. Baldridge,*
    844 F.2d 668 (9th Cir. 1988) ...............................................9

6

7

*E & J Gallo Winery v. Gallo Cattle Co.,*
    12 U.S.P.Q. 2d 1657 (E.D. Cal 1984), modified, affd., 955 F.2d
    1327 (9th Cir. 1992) ...............................................5

8

9

*Guess? Inc. v. Tres Hermanos,*
    993 F. Supp. 1277 (C.D. Cal 1997) ...............................................5

10

*Oakland Tribune, Inc. v. Chronicle Public Co.,*
    762 F.2d 1374 (9th Cir. 1985) ...............................................9, 10

11

12

*Ocean Garden, Inc. v. Mark Trade Co.,*
    953 F.2d 500 (9th Cir. 1991) ...............................................5

13

*Parfums Givenchy, Inc. v. Drug Emporium, Inc.,*
    38 F.3d 477 (9th Cir. 1994) cert denied, 115 S.Ct. 1315 ..............6

14

15

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery
    Association,*
    465 F.3d 1102 (9th Cir. 2006) ...............................................4

16

17

*Whiteman v. Walt Disney Productions, Inc.,*
    263 F.2d 229 (9th Cir. 1958) ...............................................8

18

19

## STATUTES

20

15 U.S.C. § 1057(b) ...............................................6

21

15 U.S.C. § 1127 ...............................................6

22

## MISCELLANEOUS

23

*McCarthy, Trademarks and Unfair Competition* ..............................4, 5, 9

24

25

26

27

28

EXHIBIT E
PAGE 105

## I. **INTRODUCTION**.

Defendant Metrokane opposes Plaintiff Houdini's Motion For a Preliminary Injunction on three bases:  1) laches; 2) lack of proof of imminent irreparable injury; and 3) no likelihood of confusion.   However, laches requires an unreasonable delay by a plaintiff in asserting its rights together with detrimental reliance by the defendant on the delay.  In the present case, Metrokane asserts that Houdini waited five years, i.e, from February 2003[1] to May 2008 before commencing the present action.  By so alleging, Metrokane conveniently ignores the fact that the parties were engaged in settlement discussions from September 2004 through March 2005 and legal proceedings in the United States Patent and Trademark Office (the "PTO") from July 2005 through May 2008.   Houdini commenced this action within days after the conclusion of the PTO proceeding.  As such, Houdini has not unreasonably delayed in asserting its claims.  Further, Metrokane asserts that it was unaware of Houdini until it received a cease and desist letter from Houdini's attorney in September 2004.   Since Houdini has consistently asserted its rights from that date to the present, Metrokane can show no direct harm resulting from Houdini's alleged delay in asserting its rights and indeed does not even allege that it detrimentally relied on the alleged delay by Plaintiff.  Consequently, Metrokane's claim of laches must be denied.

Similarly, Metrokane's assertion that this Court should ignore the long-standing principle in the Ninth Circuit that a presumption of irreparable harm is created by a strong showing of a likelihood of success on the merits in a trademark infringement case is without merit.   As support for its position, Metrokane cites a ruling by Judge Morrow who specifically states that she has no guidance from the Ninth Circuit as to whether the Supreme Court's recent

---

[1]   The February 2003 date is based on constructive notice of Metrokane's registration of the HOUDINI trademark.  Houdini actually learned of Metrokane's use of Houdini in September 2004. (Plumley Decl., ¶ 2)

1

CHRISTIE, PARKER & HALE, LLP

decision concerning permanent injunction in a patent case applies to a preliminary injunction in a trademark case.[2] Judge Morrow opined that it did and found that in that case the Plaintiff had not demonstrated "that its mark has been weakened to any appreciable degree."[3] In contrast, Metrokane admits that it expanded its line of HOUDINI branded goods during the PTO proceeding with an exponential growth of its sales during this timeframe. Contrary to the *Adir International* case, Metrokane's expanding use of the HOUDINI mark clearly weakens the distinctiveness of Houdini's house mark.

Lastly, Metrokane presents the same facts and the same arguments which it presented to the PTO when it opposed Houdini's claim that there was a likelihood of confusion caused by the parties' contemporaneous use of the identical trademark for goods which are clearly related or complementary -- i.e., Houdini's gift baskets containing wine and Metrokane's wine accessories such as corkscrews and wine glasses. After three years of a hotly contested proceeding, including the PTO equivalent of a trial, the PTO ruled that there was a likelihood of confusion based on the same evidence presented to this Court. As such, Houdini has shown a strong likelihood of success on its claim of trademark infringement. Metrokane's arguments should be rejected and a preliminary injunction should issue.

## II. FACTS.

Before replying to Metrokane's arguments, Houdini is constrained to point out two blatantly erroneous/misleading statements by Metrokane.

    1.    "Plaintiff's use of the trade name 'Houdini, Inc.' is exclusively

---

[2] Patent infringement is very different from trademark infringement. Patent infringement can always be remedied by a monetary award wherein this is not true for damage to a trademark owner's goodwill where calculation of such harm is difficult.

[3] *Adir International, LLC v. Unicomer S.A. de CV*, Case No. CV07-01314 at 41 MMM (CTx) (C.D. Cal Nov. 19, 2007)

2

CHRISTIE, PARKER & HALE, LLP

EXHIBIT E
PAGE 102

1    through its wholesale design and distribution services made available to a handful

2    of large national warehouses type stores and not intended to be used in retail

3    sales." Metrokane Opp. p.5, lines 2-4.

4         **COMMENT:**    Houdini sells gift baskets, not design and distribution

5    services.  It sells these gift baskets, all of which have labels identifying Houdini,

6    Inc. as the source and some of which have HOUDINI in their name, to a wide

7    range of customers for resale at their retail stores.  These customers include

8    Target, Bed, Bath & Beyond, Beverages & More, Pier One, Albertson's, and

9    Smart & Final. See Schwartz Decl.[4], Exh. A, p.6, Exh. B, p.5.

10        2.    "Plaintiff's motion papers offer no proof that any gift baskets sold

11   prior to April 16, 2002 contained a corkscrew with the "HOUDINI" trade name

12   offered therein."

13        **COMMENT**:    While it is true that Houdini did not affix the HOUDINI

14   trade name to corkscrews, Houdini has affixed the HOUDINI name to gift baskets

15   containing wine and sometimes wine accessories since 1985, long prior to

16   Metrokane's first use of the HOUDINI mark in 2002.  See Schwartz Decl., Exh.

17   A, pp. 5-6.

18   **III.   ARGUMENT.**

19        A.    **Houdini Did Not Unreasonably Delay In Asserting Its**

20              **Trademark Rights Against Metrokane.**

21        Laches is an equitable defense analogous to a statute of limitations.  In

22   deciding whether laches exists, the following factors  must be considered:  1) the

23   strength of plaintiff's trademark; 2) plaintiff's diligence in enforcing the mark; 3)

24   the harm to plaintiff if relief is denied; 4) whether defendant acted in good faith

25   ignorance of plaintiff's rights; 5) competition between the parties; and 6) the harm

26

27   [4]  The Declaration of Edward R. Schwartz ("Schwartz Decl.") was submitted in
     support of Plaintiff's Motion.  A Supplemental Declaration of Edward R.
28   Schwartz is submitted herewith.

CHRISTIE, PARKER & HALE, LLP

EXHIBIT *E*
PAGE *103*

1    suffered by defendant because of plaintiff's delay. *Tillamook Country Smoker,*
2    *Inc. v. Tillamook County Creamery Association*, 465 F.3d 1102, 1108 (9th Cir.
3    2006)   A consideration of these factors demonstrates that Metrokane's laches
4    defense should be denied.

5                  1.    **Plaintiff's HOUDINI Trademark is Strong.**

6          "Strength" of a mark has two aspects -- inherent strength of the trademark
7    and its commercial strength.   As discussed in Houdini's opening brief, the
8    HOUDINI mark is a strong trademark because it is inherently distinctive for gift
9    baskets and gift packages containing wine and wine accessories.   Further, the
10   mark is commercially strong because Houdini has used its name HOUDINI as a
11   source of its products for over twenty years, i.e., since 1985, and is one of the
12   largest sellers of gift baskets in the United States.   As a result of this continuous
13   use, the HOUDINI mark is well known in its field.   Schwartz Decl., Exh. A, p.
14   15, Exh. B, p. 27.

15                 2.    **Houdini Has Diligently Enforced its Mark.**

16         It is uncontroverted that:  1) Metrokane's registration for HOUDINI issued
17   in February 2003;  2) Houdini did not actually know of Metrokane's use of the
18   HOUDINI trademark until September 2004; 3) Houdini sent Metrokane a cease
19   and desist letter within days of learning of Metrokane's use of the HOUDINI
20   mark; 4) settlement discussions and letters were exchanged by the parties'
21   respective counsel through March 2005; 5) Houdini contested Metrokane's
22   registration of the HOUDINI mark by instituting a cancellation proceeding in the
23   PTO in July 2005; 6) the cancellation proceeding was hotly contested for three
24   years with the PTO rendering a decision after trial dated May 1, 2008; and
25   7) Houdini commenced this action on May 9, 2008.

26         Houdini's delay in commencing this action from September 2004 through
27   March 2005 was justified by the existence of settlement negotiations between the
28   parties. *See: McCarthy, Trademarks and Unfair Competition*, § 31:15 at 31-53

EXHIBIT *E*
PAGE *104*

CHRISTIE, PARKER & HALE, LLP

1    ["Delay in filing suit for infringement will not count for laches if during that time

2    the parties were engaged in good faith settlement negotiations."] citing *inter alia*,

3    *E & J Gallo Winery v. Gallo Cattle Co.*, 12 U.S.P.Q. 2d 1657 (E.D. Cal 1984),

4    modified, affd., 955 F.2d 1327 (9th Cir. 1992); *Ocean Garden, Inc. v. Mark*

5    *Trade Co.*, 953 F.2d 500 (9th Cir. 1991); *Guess? Inc. v. Tres Hermanos*, 993

6    F.Supp. 1277 (C.D. Cal 1997).

7        In addition, Houdini's delay in commencing this action from July 2005

8    through May 2008 is justified by the contested cancellation proceeding between

9    the parties in the PTO. *McCarthy*, § 31:16 at 31-54-55 ["The filing of an

10   opposition proceeding against an alleged infringer's pending registration will

11   generally constitute a sufficient reason for waiting to file an infringement suit in

12   federal court.   That is, the opposer can wait for the return of the opposition

13   proceeding before deciding whether to file an infringement suit in court.  As one

14   court rendered:  "While a successful opposition only acts to prevent registration

15   and not use, as a practical matter, it puts the defendant on notice that, at the least,

16   the plaintiff is not gong to 'sleep on its rights,' and indeed, in our view, goes even

17   further and puts the defendant on notice that the opposer also protects its use of

18   the confusingly similar mark."]

19       As such, the delay in Houdini's rights was actually from the date of

20   constructive notice based on Metrokane's registration in February 2002 to the date

21   of Houdini's cease and desist letter to Metrokane in September 2004 --

22   approximately 2½ years, less than the corresponding statutes of limitations of 3

23   and 4 years alleged by Metrokane. See Metrokane's Opp. at 11-12.

24       Metrokane nevertheless asserts that Houdini waited five years before

25   seeking an injunction.  As stated above, most of the alleged delay was taken up by

26   the PTO proceeding to determine whether Metrokane's registration for HOUDINI

27   should be cancelled.  The basic issues in that proceeding, as here, were whether

28   Houdini had superior rights to the HOUDINI mark and if there was a likelihood

CHRISTIE, PARKER & HALE, LLP

EXHIBIT *E*
PAGE *105*

1   of confusion between the parties' marks.   Metrokane also asserted a laches

2   defense.  (See Complaint, Exh. A)  The existence of a federal registration of a

3   mark on the Principal Register of the PTO evidences ownership of the mark as a

4   matter of law.   15 U.S.C. § 1057(b)   As such, Houdini could not show a

5   likelihood of success on the merits of its claim for trademark infringement -- a

6   basic proof required for a preliminary injunction -- while Metrokane's registration

7   for HOUDINI was in full force and effect.  Only after the PTO ruled in Houdini's

8   favor and ordered cancellation of Metrokane's mark could Houdini seek a

9   preliminary injunction with a reasonable basis for believing that it could

10  demonstrate a likelihood of success on the merits.[5]  Upon receipt of such ruling,

11  Houdini commenced this action within days and promptly prepared and filed its

12  motion for a preliminary injunction.   As such, Houdini did not unreasonably

13  delay in bringing this motion.

14              **3.    The Distinctiveness of Houdini's House Mark is Being**

15                  **Diluted by Metrokane's Use of The Identical Mark.**

16          A trade name is a name used by a person to identify his business.   15

17  U.S.C. § 1127.  A trademark is a word or name used by a person to identify and

18  distinguish his goods from those sold by others.  *Id.*  This is why the basic proof

19  in a trademark infringement action is whether defendant's use of a trademark is

20  likely to cause confusion with the plaintiff's mark.  *See: Parfums Givenchy, Inc.*

21  *v. Drug Emporium, Inc.*, 38 F.3d 477, 484 (9th Cir. 1994) cert denied, 115 S.Ct.

22  1315.

23          In the present case, Houdini uses the term HOUDINI both as a trade name

24  and as a trademark and the harm which it has suffered and continues to suffer, is

25  the loss of distinctiveness of its name by Metrokane's use of the identical term for

26  _____

27  [5]  Although Houdini could have sought cancellation of Metrokane's registration in

     a civil action, Houdini still could not have reasonably sought a preliminary

28  injunction until after the Court had ruled that the registration should be cancelled.

CHRISTIE, PARKER & HALE, LLP

EXHIBIT *E*
PAGE *111*

1   competing, related and complementary goods. Indeed, Metrokane's claim of

2   increasing advertising and sales is a strong reason why an injunction is needed

3   now rather than after trial, presumably in a year or so.

4       **4.    Metrokane's Intent in Adopting and Continuing to Use**

5             **The Houdini Mark.**

6       Metrokane claims that it did not learn of Houdini's existence until it

7   received a cease and desist letter from Houdini in September 2004. See

8   Metrokane's Opp. at 15. However, Metrokane plainly would have discovered

9   Houdini's existence if it had done any reasonable investigation before it adopted

10  the HOUDINI mark in 2002. In response to interrogatories in the PTO

11  proceeding as to whether Metrokane conducted any search or obtained any

12  opinion of counsel concerning the availability of the HOUDINI mark, Metrokane

13  responded "The subject matter of this interrogatory is under investigation by

14  obtaining the facts of former counsel and this response will be supplemented in

15  due course." See Schwartz Supplemental Decl., ¶ 2, 3, Exh. B, C, Int. Nos. 9-11.

16  However, Metrokane never did supplement its responses or produce any

17  documents concerning these matters as requested by Houdini. See *Id.*, Exh. B, C.

18  Document Request Nos. 4-6. Therefore, it can be assumed that it did not conduct

19  a search and did not obtain an opinion of counsel. Such willful blindness does

20  not evidence good faith nor does Metrokane's continued use of the HOUDINI

21  mark after commencement of the PTO proceeding and after the PTO rendered its

22  decision that Houdini has superior rights in the HOUDINI mark and that

23  Metrokane's use of the mark was likely to cause confusion.

24      **5.    The Parties' Products Are Competitive, Related and**

25            **Complementary.**

26      Houdini sells gift baskets and packages containing wine and sometimes

27  wine accessories. Metrokane uses HOUDINI as a trademark for wine accessories

28  such as wine glasses, wine bottles, foil cutters and corkscrews. Plainly, such uses

CHRISTIE, PARKER & HALE, LLP

7

EXHIBIT *E*
PAGE *112*

1    are related or competitive.  Further, Metrokane has commenced sale of HOUDINI
2    gift packages for wine accessories in which the purchaser inserts a bottle of wine.
3    See Schwartz Supplemental Decl., ¶ 4, Exh. D.  Plainly, this product is directly
4    competitive with Houdini's gift packages containing bottles of wine and wine
5    accessories.

6        **6.    Metrokane Has Not Been Harmed by Houdini's Delay in**
7             **Asserting Its Rights.**

8        Houdini first asserted its claim of superior rights in the HOUDINI mark in
9    September 2004 and Metrokane asserts that it did not know of Houdini prior to
10   that date.   In response to Houdini's claim, Metrokane communicated with
11   Houdini's counsel and subsequently contested Houdini's claim before the PTO.
12   During this entire period, Metrokane continued to do business as usual and indeed
13   expanded its use of the HOUDINI mark.  As such, Metrokane did not rely on
14   Houdini's delay to its detriment.  The importance of this absence of detrimental
15   reliance dooms Metrokane's claim of laches.  As the Ninth Circuit stated:

16           Mere passage of time cannot constitute laches, but if the
17           passage of time can be shown to have lulled defendant
18           with a false sense of security, and the defendant acts in
19           reliance thereon, laches may, in the discretion of the
20           trial court, be found.

21   *Whiteman v. Walt Disney Productions, Inc.*, 263 F.2d 229, 231 (9th Cir. 1958)

22

23   In the present case, there was no such lull -- the parties have been vigorously
24   contesting their respective rights in the PTO for the past three years.

25       In sum, Houdini did not unreasonably delay in asserting its rights and
26   Metrokane did not prejudicially rely on the delay.  Fundamental fairness favors
27   allowing Houdini's claims to be adjudicated on their merits.

28

CHRISTIE, PARKER & HALE, LLP

EXHIBIT *E*
PAGE *108*

**B.** **The Harm to Houdini From Metrokane's Use of The Trademark Houdini is Not Speculative.**

The harm to Houdini from Metrokane's use of Houdini's trade name and trademark for competitive and/or related or complementary products is clear -- Houdini has lost control of the name by which it is known to its customers and the public. The dilution of the distinctiveness of Houdini's HOUDINI mark as a result of Metrokane's increasing advertising and sales of its HOUDINI products is clearly evidenced by Metrokane's statement that its HOUDINI trademark is "well-known" (Metrokane's Opp. at 2, lines 3-5) and that the sales growth of Metrokane's products is a result of consumer recognition of Metrokane's HOUDINI products. (Metrokane Opp., p.4, lines 19-21) As such, even if there is no presumption of irreparable injury as Metrokane asserts, the evidence of damage to the distinctiveness of Houdini's name and mark, i.e, Houdini's goodwill -- is shown by Metrokane's own allegations. Indeed, to the extent that Metrokane alleges that consumers recognize HOUDINI as designating the source of Metrokane's products is true, this may be a case of reverse confusion. See: *McCarthy*, § 23:10 at 23-47 ["[R]everse confusion occurs when the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user. . . ."]

Further, it should be noted that none of the cases cited by Metrokane as requiring proof of imminent irreparable harm involves trademark infringement other than the *Adir International* case. See Metrokane Opp. at 8-9. Specifically, *Caribbean Mar. Serv. Co. v. Baldridge*, 844 F.2d 668 (9th Cir. 1988) related to whether female porpoise observers on a fishing boat would interfere with fishing operations on the boat. (*Id.* at 675) *Oakland Tribune, Inc. v. Chronicle Pub. Co.* 762 F.2d 1374 (9th Cir. 1985) involved alleged monopolization of a newspaper market by exclusive feature contents. [Notably, the Court assumed that loss of

9

CHRISTIE, PARKER & HALE, LLP

EXHIBIT *E*
PAGE *114*

1  reputation, competitiveness and goodwill constitute irreparable injury but found

2  that the circumstances in issue did not demonstrate such injury.  *Id.* at 1377]; and

3  *Campbell Soup Co. v. Con Agra, Inc.*, 977 F.2d 86  (3d Cir. 1992) involved a

4  request by homeless people to enjoin enforcement of an alleged policy of

5  isolating, harassing and arresting them.  The alleged irreparable harm in those

6  cases is purely speculative whereas the damage to a trademark owner's goodwill

7  by virtue of an infringement is clear.

8      Even in the one trademark case cited by Metrokane, Judge Morrow

9  acknowledged that the Ninth Circuit did not opine whether the presumption of

10  irreparable harm continues in trademark cases (See *Adir* p. 39., n. 103) and found

11  that a preliminary injunction in that case was not warranted because "Adir's

12  evidence simply does not demonstrate that its mark has been weakened to any

13  appreciable degree." *Id.* at 41.  In contrast, the evidence presented by Metrokane

14  shows that it has made a substantial effort to have the public recognize HOUDINI

15  as the designation of Metrokane's products.  Indeed, Metrokane asserts that its

16  expanding efforts have been successful.  As such, the evidence clearly

17  demonstrates that Houdini's mark has been weakened and will be weakened

18  further if a preliminary injunction does not issue.

19  **C.**  **The Evidence Shows That There is a Likelihood of Confusion**

20  **Caused By The Parties' Use of The Identical Mark For**

21  **Competing, Related And Complementary Products.**

22      Houdini argued its position concerning the likelihood of confusion issue in

23  its principal brief and will not repeat those arguments here.  However, Houdini

24  refers the Court to the PTO decision wherein those very issues were analyzed by

25  the PTO.  See: Complaint, Exh A.  The PTO's analysis rebuts Metrokane's present

26  arguments which it also made to the PTO.

27      However, a few statements made by Metrokane on the likelihood of

28  confusion do require response.

10

CHRISTIE, PARKER & HALE, LLP

EXHIBIT *E*
PAGE *110*

1.   "Plaintiff and Metrokane are not competitors.  Metrokane makes corkscrews, wine accessories, other bar ware, and housewares.  Plaintiff designs and assembles gift baskets of many varieties that it fills with food, beverages, and other consumable items. . . ."  Metrokane Opp. at 18, lines 20-23.

**COMMENT:**   Metrokane mischaracterizes Houdini's business by conveniently omitting the fact that many of Houdini's gift baskets and gift packages contain wine, some with accessories such as wine glasses and foil cutters.  Further, Metrokane's sale of gift packages containing wine accessories in which a consumer inserts a wine bottle is clearly in direct competition with Houdini.  Compare Schwartz Supplemental Decl., Exhs. A and D.

2.   "The marketing channels used by the parties are different."  Metrokane Opp. at 22, line 6.

**COMMENT:**   Houdini's gift baskets containing wine and Metrokane's HOUDINI corkscrews, wine glasses and wine bottle foil cutters are sold in Beverages & More, Target and Kohls as well as in liquor stores.  See Schwartz Decl., Exh. A, pp. 6-9, Exh. B, pp. 5, 11, 12.  Plainly the marketing channels overlap.

3.   "There is no likelihood that either party will expand its line of 'Houdini' to compete with the other party."  Metrokane Opp. at 24, lines 13-14.

**COMMENT:**   While Metrokane identifies various HOUDINI wine accessories which it sells, it fails to inform the Court that it sells a "Houdini Add-A-Wine Gift Set" in direct competition with Houdini.   See Schwartz Supplemental Decl., Exh. D.

## IV.   CONCLUSION.

Plaintiff Houdini has shown that there is a likelihood that it will succeed on its claim of trademark infringement and that the damage to its goodwill as represented by its house mark HOUDINI is being irreparably damaged by Metrokane's use of HOUDINI.  Further, Metrokane's claim of laches is without

11

EXHIBIT E
PAGE 111

1  merit since Houdini did not unreasonably delay in asserting its rights and

2  Metrokane did not detrimentally rely on the purported delay. A preliminary

3  injunction is in order.

4

5                                          Respectfully submitted,

6                                          CHRISTIE, PARKER & HALE, LLP

7

8  DATED: July 28, 2008            By _____

9                                          Edward R. Schwartz
                                           Attorneys for Plaintiff,
10                                         Houdini, Inc.

11
   BLV PAS805739.1-*-07/28/08 4:26 PM
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT E
PAGE 112

1

2

### CERTIFICATE OF SERVICE

3

4     I certify that on July 28, 2008, I electronically filed the document described as

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY**

**INJUNCTION** with the Clerk of the Court using the ECF system which will send notification

of such filing to the parties.

7

8

9

                                        *Betty L. Venuti*
10                                      Betty L. Venuti

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT E
PAGE 113